JOHN NEIL McNICHOLAS, ESQ.
CA Bar No.: 138304
McNICHOLAS LAW OFFICE
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
(310) 545-0780
(310) 546-6831- FAX
john@mcnicholaslawoffice.com
Attorney for Defendant,
Aaron Eason

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON EASON,<br><br>Defendant. | Case No. CR 18-00759-CJC-4<br><br>**DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO HIS RELEASE PENDING TRIAL** |

Defendant, AARON EASON, by and through his attorney of record, John Neil McNicholas, hereby submits the following reply to the government's opposition to his request to be released pending trial. DATED this 27th day of December, 2018.

McNICHOLAS LAW OFFICE

By /s/
JOHN NEIL McNICHOLAS, ESQ.
Attorney for Defendant,
AARON EASON

1

## I. INTRODUCTION

Prior to his arrest and detention on the instant charges two months ago, Aaron Eason was a law-abiding member of his community, the town of Anza, in the Central District of California. He was the sole provider for his teenage daughter. He also helped his father in maintaining the family property. Aaron Eason attended a San Diego event in March, 2017 that was peaceful. Eason attended the Huntington Beach event after that. Despite being struck in the face by Antifa-sprayed mace, he did not engage in fisticuffs at Huntington Beach.

There were over a thousand people at the April 15, 2017 Berkeley free speech rally. Of the thousand or so people in attendance, twenty were arrested. Robert Rundo was the only defendant arrested that day. The majority of people arrested were left wing agitators wearing masks or carrying weapons. [1] The most obvious reason that a riot erupted at Berkeley was the lack of law enforcement presence in the streets when two huge groups began to clash. Aaron Eason's presence in Berkeley did not cause the riot. Unquestionably, without Antifa's efforts to silence free speech and assembly, by throwing M-80s, smoke bombs and other small exploding devices, there would not have been a riot at Berkeley on April 15, 2017. The only physical confrontations involving Aaron Eason in Berkeley on April 15, 2017 commenced when he was attacked. See government Exhibit 11 and Defendant's Exhibit 19 as well as Exhibit 13A-F in support of the opening brief. Aaron Eason attended another Berkeley rally only a few weeks later. Nobody affiliated with R.A.M. attended. It was peaceful. Perhaps that was because at this event, left wing groups and Antifa were ordered by police to remain across the street

---

[1] https://www.berkeleyside.com/2017/04/17/exactly-turned-downtown-berkeley-battlefield-april-15

from the park where the right wingers were conducting their organized event.[2]

A few months later Eason went to an anti-Sharia event in San Bernardino. Although R.A.M. members were there, Eason was not affiliated with the group in any way, contrary to the government's continuous assertion. Aaron Eason would like to be politically active and stated that in various social media posts referred to by the government.  Aaron Eason has no intent to commit violent acts or otherwise violate laws in order to be politically active.

## II.  AARON EASON IS NOT A DANGER TO THE COMMUNITY

Mr. Eason and the government have laid out their positions on the nature and circumstances of the offenses charged. It is Eason's opinion that he should not have been charged with a federal offense for his actions associated with his attendance at the various political rallies, speeches and marches. The weight of the evidence against Mr. Eason is only strong if the crime alleged is engaging in fisticuffs at one political event. But for the crimes charged in the indictment, the government is going after the wrong man. The history and characteristics Eason, including his character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse all weigh heavily in favor of his release. None of those factors were addressed by the magistrate judge at either hearing.  The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release are only relevant if the Court can link Mr. Eason's thoughts and world views as allegedly written by him, to the intent to commit a serious and dangerous crime. 18 U.S.C. § 3142(g). *See United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir.1985). *United States v. Hir*, 517 F.3d 1081, 2008 WL 445840 (9th Cir., 2008).

---

[2] https://www.washingtonpost.com/news/grade-point/wp/2017/04/27/theres-no-speech-planned-but-protesters-are-converging-on-berkeley-today/?utm_term=.b8806c67f40d

The evidence introduced by the government provides some proof that Aaron Eason has anti-Semitic beliefs. There is also no doubt that co-defendant Robert Boman sought to share his anti-Semitic beliefs at the various political events which he attended as he constantly held a sign which read "Da Goyam Know."[3] Eason never carried that sign at any event. Eason did carry the American flag in San Diego. See Exhibit 20. There were no racial or anti-Semitic attacks at any of the events attended by Eason. Criminalizing someone's thoughts or beliefs is not only unconstitutional, but dangerous to our existence as a nation.[4] The government is not stopping with its censorship of the thoughts of white nationalist groups but is also targeting organizations which have, until the past few years, been considered main stream groups.[5] Mr. Eason should not be detained because he may be considered anti-Semitic or racist.

When vastly adverse political groups converge into a small area where one group (Eason's group) actually has governmental permission to assemble and speak and another group which the government calls "counterprotestors" (but more commonly referred to as "Antifa"), does not have permission to be there, and its only purpose is to stifle the speech of Eason's group "by any means necessary," conflict is foreseeable.

---

[3] Goyim is the plural of goy which literally means "Nation" in Hebrew. James Orr, ed. (1939). "Goiim". International Standard Bible Encyclopedia. 2. Grand Rapids: William B. Eerdmans Publishing Company. OCLC 819295. The Hebrew word goy has for some time acquired the meaning "heathen." Therefore all "Gentiles" could be considered Goyim. *See also Min, Shabot Goy.* Jewish Encyclopedia.

[4] It's a venerable maxim of criminal jurisprudence that the state must never punish people for their mere thoughts—for their beliefs, desires, fantasies, and unexecuted intentions. Why is it Wrong to Punish Thought? Gabriel S . Mendlow, U. Mich. Law School Scholarship Repositiory, 2018; https://repository.law.umich.edu/cgi/viewcontent.cgi?article=2996&context=articles.

[5] Only six days ago, two United States Senators on the Judiciary Committee, one being a serious contender for the Democratic Presidential nomination in 2020, attacked a United States District Judge candidate because he is a member of the Knights of Columbus, which those senators consider an extremist group because of the organization's longstanding positions on issues like abortion and marriage. One Senator asked the candidate to renounce his membership if selected. https://www.theamericanconservative.com/dreher/democrats-knights-of-columbus/.

The government refuses to use the word "ANTIFA" to describe the actual instigators of the various violent confrontations at hundreds of political events throughout the United States since prior to the 2016 presidential election. The humiliation and injuries caused to supporters of Donald Trump at various events in San Jose and San Diego, which included attacks on defenseless women, and later at the destruction caused at the Milo Yiannopoulos planned speech on the campus of the University of California, were horrible to witness. The government did not pursue riot act prosecutions of those instigators and agitators. On the other hand, the government seems to believe that carrying a sign which reads: DEFEND AMERICA is a crime worthy of prosecution. *See* government opposition brief, *passim*.

Since the filing of the complaint in this matter, the government continues to embellish the actual facts to suit its narrative that Aaron Eason was planning a Charles Manson-like Helter Skelter race war. Examples of embellishment include Eason's "pose" at Exhibit 13 where his face is not even in the photograph; and Exhibit 14, where the government attempts to mislead the court by inferring that Eason is wearing a mask when Eason never wore a mask or tape at any event that he attended. Finally, the government attributes random quotes on an open social media cite to Eason as if Eason had made those statements himself. Gov't Opposition, 9: 16-27.

The government quotes an unnamed former associate who supposedly heard Daley refer to the April 15, 2017 Berkeley event as a "war." Then the government bootstraps the comment to Eason as if Eason were the one calling it a war in the first place. Gov't Opposition, pages 4-5. It is extremely important to note that Eason never brought sticks or shields to any event, including the 3-4 training sessions at a public park in San Clemente prior to April 15, 2017 which Eason attended. But the government continuously refers to "stick and shield training" in order to boost its argument that Eason is dangerous. It was Antifa that always appeared at organized

conservative events in disguises and armed with actual weapons. [6] We have illustrated in our opening brief the damage and destruction physical harm caused by Antifa dating back to 2016.

The government mischaracterizes Eason's alleged "recruiting" of members and "handling logistics" at the Berkeley event. Government Opposition, 7:22-28. Aaron Eason was never a member or R.A.M. so he was hardly in a position to recruit. Eason traveled with co-defendants to Berkeley on April 15, 2017. He was actually working for the organizers of the Berkeley event and intends to prove that fact at trial. The only reason that he signed the van rental agreement was because no other person in the van was old enough to rent the van. The "R.A.M." members were all in their 20's and lived near the beach. Most members had a host of personal problems associated with prior criminal convictions and addiction. Aaron Eason was not an addict. He was from the high desert. He was a single father in his late 30's with a pre-teen daughter. Mr. Eason never had an adverse interaction with law enforcement. Aaron Eason simply did not fit the R.A.M. profile. When the organization formed in April 2017 according to Rundo, Mr. Eason was not part of the group.

Then, despite easily verifiable evidence on the government's own video at Exhibit 11, as well as defendant's Exhibit 19, where an assailant attempts to attack Eason at Berkeley on April 15, 2017, the government acts as though Eason initiated the physical confrontation. Gov't opposition, 8: 17-18.

The evidence shows that Eason did not intend to fight anyone at San Diego or Huntington Beach. There is no doubt that certain individuals wanted to fight at Huntington Beach, and even more were willing to fight at Berkeley. The evidence shows Eason's only actual fighting at Berkeley was in self defense. And although he attended the San Bernardino event, there is no evidence that he engaged in anything

---

[6] https://www.youtube.com/watch?v=kUu46J_OHQ4

unlawful. The evidence also reflects the fact that Eason was no longer associated with the remaining co-defendants or the Charlottesville defendants after April 15, 2017. There were hundreds of people at the San Bernardino event on June 10, 2017. Daley, Rundo, and Miselis were not affiliated with Aaron Eason at that time.

The most important fact to consider at this detention hearing, is that prior to March of 2017, Aaron Eason was never involved in any situations which would be considered violent or dangerous. Since April 15, 2017, he has not had a physical confrontation with anyone. The government has failed to prove that Eason is a danger, and for that reason, must be detained. 18 U.S.C. § 3142(f)(2)(B). *United States v. Hir*, 517 F.3d 1081, 2008 WL 445840 (9th Cir., 2008).

### III. EVEN IF EVIDENCE SHOWED THAT EASON POSED A THREAT TO THE COMMUNITY, EASON MUST BE RELEASED IF CONDITIONS CAN BE FASHIONED TO ENSURE THE SAFETY OF THE COMMUNITY.

Mr. Eason is not dangerous. He is not a threat to the community. But even if the government were able to prove by a preponderance of evidence that he were dangerous or a threat to the community, there are an abundance of conditions which could be fashioned to reasonably assure that none of those possible threats could be a reality, and he must be released.

Despite what the magistrate stated at government's Exhibit 21 at 30, and in its opposition brief at page 14, there is extensive evidence that Eason was no longer affiliated with Daley's group after Berkeley. Eason returned to Berkeley on April 27, 2017 for the formerly scheduled Ann Coulter speech. Other speakers were present. None of the R.A.M. associates were with Mr. Eason. He was with other friends. The event was peaceful.

The magistrate judge was mistaken to somehow relate the death at Charlottesville to Aaron Eason. The government was in a position to explain that fact to the magistrate but instead chose to remain silent. The individual who caused

that death had no connection to anyone allegedly associated with any of the subjects referred to in this case. Eason did nothing illegal at San Bernardino. The magistrate judge was mislead by the government's misrepresentation that Eason was involved in vandalizing a vehicle in San Bernardino. Most importantly, in two separate bail hearings, the magistrate never addressed potential conditions which could be set in place to minimize the risk of danger to the community.  Mr. Eason has described those conditions at length ion his opening brief.

     Regarding Brittney Welch, she testified that she knew Mr. Eason outside of the political events. She had been in his presence enough times on a social basis to know that he poses no threat or danger. The magistrate overlooked that important detail. The magistrate never considered letters from family members and employers who spoke of his high moral character and work ethic. Their opinions were not based upon scribblings buried in a notepad, but on real and genuine deeds on behalf of the community and his family.

     The government agreed to the release of the one defendant, Tyler Laube, who said that he was guilty of the charged offenses. That defendant, an ex felon, faces certain prison time. After he entered his guilty plea, the government agreed to his release. Mr. Eason is able to produce the same amount in bail resources as Mr. Laube. One has to ask why is Mr. Laube more suitable for release than Mr. Eason when Mr. Laube had already been convicted of a  violent crime for which he was serving probation, and he actually attacked an innocent reporter in Huntington Beach.  The government also represents that Mr. Eason potentially faces a higher sentencing guideline range without articulating what the basis is for a higher guideline range.   The government cannot possible allege that Mr. Eason was a leader or organizer, when he was never a member of R.A.M. It would be completely unreasonable to force defendant to plead guilty to a felony in order for the defendant to be released from imprisonment.  There were no weapons involved. He has no criminal history. Mr. Eason's counsel reaffirms his belief that the advisory guideline

1 range if convicted does not justify the unreasonable detention ordered by the
2 magistrate, which will eventually coerce him to admit to crime in which he is not
3 guilty.
4     The proposed condition that Mr. Eason not attend a white nationalist event
5 was taken from Laube's release order to which the government stipulated.
6 [Document # 79]. According to ProPublica[7] and other various news agencies, Aaron
7 Eason is the only defendant in this case who is not an ex felon.  All three co-
8 defendants have prior felony convictions for violent offenses. Eason, meanwhile,
9 despite being much older than all three co-defendants, was never arrested prior to
10 this case. This is a major factor which the Court must consider in distinguishing
11 Aaron Eason from all others accused in this case.

## IV. CONCLUSION

13     Aaron Eason has proposed several workable conditions which will guarantee
14 the safety of the community.  Again, Aaron Eason's most violent event was a fist
15 fight where the objective video evidence shows that each time he acted in self
16 defense. His associations and behavior can be easily controlled through proper
17 monitoring.

19 DATED: December 27, 2018      /s/
                                  John Neil McNicholas
20                                Attorney for Aaron Eason

---

[7] https://www.propublica.org/article/michael-miselis-rise-above-movement-white-supremacist-group-northrop-grumman;

9