UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: CR 18-00759-CJC |
|---|---|
| Plaintiff, | |
| v. | ORDER OF RELEASE ON BOND PENDING TRIAL |
| AARON EASON, | |
| Defendant. | |

## I. INTRODUCTION

Defendant Aaron Eason is charged with conspiracy in violation of 18 U.S.C. § 371 and with carrying on a riot in violation of 18 U.S.C. § 2101. (Dkt. 47 [Indictment].) On November 2, 2018, Magistrate Judge Oliver ordered Mr. Eason detained pending trial, finding that Mr. Eason posed a danger to the community. (Dkt. 43.) On November 27,

-1-

2018, Judge Oliver reopened Mr. Eason's detention hearing and denied his request for bail.  (Dkt. 93.)  Although Judge Oliver found Mr. Eason was not a flight risk, she believed that he still was a danger to the community.  Mr. Eason now moves for review of Judge Oliver's detention order and for release on bail.  (Dkt. 96.)  Since the Government has failed to meet its burden of showing that Mr. Eason is a flight risk or a danger to the community, Mr. Eason's motion is **GRANTED**.

## II.   BACKGROUND

The Indictment charges Mr. Eason with participating in a white supremacist organization known as the "Rise Above Movement," or "RAM."  RAM apparently represented itself publicly as a combat-ready, militant group of a new nationalist white supremacy and identity movement.  Its members attended political events and trained in hand-to-hand combat, though Mr. Eason claims these training sessions focused on self defense techniques.

The Indictment describes several political rallies attended by RAM members in spring and summer 2017.  In March 2017, Mr. Eason and other RAM members attended a pro-Trump political rally in Huntington Beach, California.  At the rally, other RAM members assaulted a journalist, but Mr. Eason was not directly involved in that assault.  In April 2017, Mr. Eason organized a group to travel to a political rally in Berkeley, California, that featured conservative speakers.  Mr. Eason rented a van to drive RAM members to the event from southern California.  The Berkeley political rally devolved into fighting between RAM members and counterprotestors, otherwise known as the "Antifa."  Video footage captured Mr. Eason in two fights, though the footage suggests that the Antifa members first attacked Mr. Eason and he responded in self defense.

After the Berkeley rally, RAM members vandalized a vehicle at a political rally in June 2017 in San Bernardino, California, but the Indictment does not state whether Mr. Eason was in any way involved. In September 2017, Mr. Eason texted a co-conspirator that he was "back in a position to go hard with activism" after having been "sidetracked after Berkeley." However, there are no additional allegations about Mr. Eason's "activism" after this text message. In the following months, other RAM members posted online about the group's efforts at the rallies, but there are no further allegations regarding Mr. Eason's involvement with RAM.

## III.   ANALYSIS

The Bail Reform Act of 1984 permits pretrial detention only where there is a demonstrated risk of flight or no assurance that release is consistent with the safety of the community. 18 U.S.C. §§ 3142 *et seq*. "The whole spirit of the Bail Reform Act . . . is that a defendant facing trial should be released, rather than detained, unless there are strong reasons for not releasing him." *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). In determining whether to release or detain a defendant, the Court considers (i) the nature and circumstances of the offenses charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g). The burden rests with the Government, which must prove by a preponderance of evidence that the defendant poses a flight risk or by clear and convincing evidence that the defendant poses a danger to the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Given this burden, "[o]nly in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id.*

After considering all of these factors and all of the evidence presented by the parties and the arguments of their counsel, the Court concludes that the Government has failed to meet its burden.  Consequently, Mr. Eason must be released pending trial.

### A.     Flight Risk

The Government has not met its burden of showing by a preponderance of evidence that Mr. Eason poses a flight risk.  Mr. Eason has significant ties to the Central District of California.  He was born and raised in California, and he has lived here almost his entire life.  He has a thirteen-year-old daughter, for whom he is the sole caregiver and provider.  He and his daughter live on a family property in Anza, California, along with his father, sister, and brother, who are also willing sureties.  He works on the family property in addition to other landscaping and catering jobs nearby.  The Court believes that Mr. Eason's strong family ties make it unlikely that he would flee and abandon his daughter and family.

Moreover, Mr. Eason does not appear to have the means or any intent to flee.  He has never owned or possessed a passport.  Besides two childhood trips to Mexico, he has never been outside the United States.  And most compellingly, Mr. Eason self-surrendered shortly after he found out about his arrest warrant.  Like the Magistrate Judge, the Court is unconvinced that Mr. Eason is a flight risk.

### B.     Danger to the Community

The Government also has failed to meet its burden of showing by clear and convincing evidence that Mr. Eason poses a danger to the community.  First, he has no criminal history.  Mr. Eason's arrest in this case was the first time that he had ever been

arrested. At 38 years old, he is significantly older than the other defendants in this case and is the only one without any felony convictions.

Second, many of the allegations against Mr. Eason involve political speech, not acts of violence. Mr. Eason attended various political events apparently to protect his and others' freedom of expression and to stand up against sometimes violent counterprotestors associated with Antifa. The Court makes no excuses for Mr. Eason's troubling anti-Semitic or racist statements or beliefs, but will not detain him or any citizen because of his or their statements or beliefs.[1]

Third, the charged offenses do not show that Mr. Eason is a danger to the community. In its opposition brief, the Government paints Mr. Eason with broad strokes, focusing heavily on the actions and words of individuals other than Mr. Eason himself. But a closer look at the allegations—and particularly what can be attributed to Mr. Eason—refutes the Government's characterization. Mr. Eason attended political rallies in San Diego, Huntington Beach, and San Bernardino without engaging in violence. He never brought sticks or shields to any event. His only violent events are the two fist fights, at Berkeley in April 2017. These incidents arose in the context of chaos, where Mr. Eason and his alleged co-conspirators stood face-to-face with members of Antifa, many of whom were there just to cause trouble and suppress their speech by any means necessary. Arguably, Mr. Eason did not even initiate the fist fights, but acted only in self defense.

//

---

[1] Brittney Welch, an acquittance of Mr. Eason who helped organize several of the political events, stated in her declaration that Mr. Eason is a nice, gentle person and not a danger to anyone. She says she asked Mr. Eason to attend the Berkeley rally to maintain order and protect speakers from the violent Antifa members.

Lastly, Mr. Eason has presented evidence that he is no longer involved with RAM or any other white supremacist organization. The Court recognizes that the Magistrate Judge found that Mr. Eason was a danger to the community because he never explicitly withdrew from RAM. But RAM has apparently disbanded, and the timeline in the Indictment suggests Mr. Eason's involvement with RAM ceased months before the grand jury returned that Indictment. The Government also has presented no evidence to suggest that Mr. Eason has had any further dealings or contact with RAM or any of the other defendants.

## IV. CONCLUSION

Mr. Eason's motion is **GRANTED**. The Magistrate Judge's order denying bail pending trial is **VACATED**.

It is hereby **ORDERED** that Mr. Eason be released from custody upon the posting of an appearance bond in the amount of $175,000, apportioned to Walter Eason, Malia Carlin, Danny Carlin, and Timothy Eason, at $43,750 each. In addition, Mr. Eason is subject to supervision by Pretrial Services and several conditions of release, including (1) a declaration by Mr. Eason that he does not possess a passport, (2) a travel restriction to the Central District of California and to reasonable curfew restrictions, as directed by the supervising agency, (3) a restriction on entering any airport, seaport, railroad, or bus terminal which permits exit from the Central District of California, without Court permission, (4) a requirement that Mr. Eason's residence be approved by Pretrial Services and that he not relocate without Pretrial Services approval, (5) a requirement that Mr. Eason must avoid all contact with co-defendants or potential witnesses, except in the presence of counsel, (6) a prohibition from attending political events, rallies, and marches, regardless of what group has planned to attend or participate, (7) a prohibition on associating with any white nationalist organization, (8) a prohibition on the use or

possession of illegal drugs or firearms and an agreement to the search and seizure of Mr. Eason's person and property, (9) a requirement that Mr. Eason maintain or actively seek employment and provide proof to the supervising agency during the period leading up to his trial, and (10) a requirement that Mr. Eason not possess or have access to, in the home, workplace, or any location, any device that offers internet access, except as approved by the supervising agency, and a requirement that Mr. Eason submit to a search of his person or property by the supervising agency in order to determine compliance.

DATED:    January 4, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE