# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>AARON EASON,<br><br>    Defendant. | Case No.: CR 18-00759-CJC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS [Dkt. 124]** |

## I. INTRODUCTION

Defendant Aaron Eason is charged with conspiracy in violation of 18 U.S.C. § 371 and with rioting in violation of 18 U.S.C. § 2101. (Dkt. 47 [Indictment].) Before the Court is Mr. Eason's motion for disclosure of grand jury transcripts. (Dkt. 124 [hereinafter "Mot."].) For the following reasons, the motion is **DENIED**.[1]

## II. BACKGROUND

The Indictment contains the following allegations. Starting in February 2017, Mr. Eason and others participated in a white supremacist organization known as the "Rise Above Movement," or "RAM." According to the Indictment, RAM represented itself as "a combat-ready, militant group of a new nationalist white supremacy and identity movement." RAM members apparently engaged in hand-to-hand and other combat training to prepare for violence at political rallies. The members then traveled to political rallies where they attacked attendees, protestors, and other persons. Mr. Eason allegedly recruited others to join RAM, coordinated combat training sessions, and organized members to travel to political rallies. Along with other members of RAM, Mr. Eason attended political rallies in Huntington Beach, Berkeley, and San Bernardino. RAM members engaged in acts of violence at these events.

The Indictment describes in detail Mr. Eason's alleged involvement in recruiting and organizing RAM members to attend a rally in Berkeley in April 2017. Before the Berkeley rally, Mr. Eason texted a new RAM member to invite him to attend and provide "security" at the event. He told the new RAM member to recruit additional people to

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Crim. P. 57(b). Accordingly, the hearing set for February 25, 2019, at 9:00 a.m. is hereby vacated and off calendar.

attend the rally, stating "I want us to have a group of at least 25 so we can form up and take down anything that comes at us." He later confirmed the new RAM member's attendance at an upcoming combat training session and stated, "We'll probably have equipment for shield and stick training and our formation tactics ready." Mr. Eason used his credit card to rent a passenger van, which he then used to transport RAM members to the Berkeley rally.

At the Berkeley rally, Mr. Eason and other RAM members allegedly wrapped their hands with athletic tape and wore matching grey shirts and black masks with skeleton designs.[2] Violence broke out at the rally, and Mr. Eason allegedly assaulted a person. Afterwards, Mr. Eason allegedly posted a photo to his Facebook page that showed him punching a person at the Berkeley rally, along with the caption, "Oooooi vey!!! Dagoyiiiim knooooow." When a RAM member texted Mr. Eason that two members had broken their hands at the Berkeley rally, Eason replied, "[C]lass is cancelled this weekend. It's on for next weekend though. Maybe we should work on palm strikes and elbows." RAM members later attended rallies in San Bernardino and Charlottesville, Virginia.

On November 1, 2018, the Grand Jury returned a two-count indictment charging Defendants Aaron Eason, Robert Rundo, Robert Bowman, and Tyler Laube with conspiracy in violation of 18 U.S.C. § 371 and with rioting in violation of 18 U.S.C. § 2101. (Indictment.) On January 14, 2019, Mr. Eason moved for disclosure of the grand jury transcripts. (Mot.) He claims he has a particularized need for these transcripts because the government allegedly presented false and misleading testimony to the grand

---

[2] Mr. Eason contends that he did not wrap his hands with tape, did not wear a mask, and wore a light blue shirt. (See Dkt. 126 [Reply] at 3; see also id. Ex. 2 [video footage depicting Mr. Eason's attire on April 15, 2017].) Mr. Eason, however, could still be held criminally responsible for rioting committed by a co-conspirator if the offense occurred with the course of the conspiracy, was within the scope of the agreement, and could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement. See United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1202 (9th Cir. 2000).

jury and the government failed to present the grand jury with evidence about Antifa, a militant, left wing group that engages in property damage, physical violence, and harassment against whom they identify as racist or on the far right.  (*See id.* at 2.)

## III.  ANALYSIS

"[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).  This secrecy serves several distinct interests: it prevents the escape of those whose indictment may be contemplated, it ensures the freedom of the grand jury in its deliberations, it prevents tampering with witnesses, and it encourages free and untrammeled disclosures by persons who have information about the commission of crimes.  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1956).  Given these important interests, courts are "reluctant to lift unnecessarily the veil of secrecy from the grand jury." *Douglas Oil*, 441 U.S. 211, 219 (1979).

Federal Rule of Criminal Procedure 6(e) allows a court to disclose grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  To obtain grand jury transcripts under this rule, a defendant must demonstrate a "particularized need" that outweighs the policy of secrecy.  *Dennis v. United States*, 384 U.S. 855, 870 (1966); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).  Particularized need can be shown where grand jury records are necessary for a participant in a trial to impeach witnesses, *Petrol Stops Nw. v. United States*, 571 F.2d 1127, 1130 (9th Cir. 1978), *rev'd on other grounds*, *Douglas Oil*, 441 U.S. 211, but more than a desire for a "fishing expedition" is required, *United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978); *Petrol Stops*, 571 F.2d at 1131.  Before the trial court may order disclosure of grand jury transcripts, it must find "(1) that the desired material will avoid a

possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991).

Mr. Eason has failed to demonstrate a particularized need for the disclosure of grand jury transcripts. Mr. Eason claims that he has a particularized need to obtain grand jury transcripts because the preliminary discovery revealed through three bail motions does not match the government's assertions in the Indictment. (Mot. at 4.) But Mr. Eason neither fully explains these inconsistencies nor identifies factual bases for his assertion. Several of the alleged "misrepresentations" do not even appear in the Indictment. Mr. Eason's own subjective analysis that the government will be unable to meet its burden of proof does not rise to the level of particularized need. To accept otherwise would mean that any time a defendant claims the government will not obtain a conviction on a charge, the defendant is entitled to grand jury transcripts to determine if the government committed misconduct to obtain the indictment. The secrecy of the grand jury cannot be so easily overcome. In *Walczak*, the Ninth Circuit found there was no particularized need where the defendant speculated that law enforcement officers improperly summarized the testimony of other agents. 783 F.2d at 857. Similarly, Mr. Eason's mere speculation that the government misrepresented evidence of his involvement in RAM does not constitute particularized need.

Mr. Eason asserts that the government failed to present the grand jury with evidence about Antifa, including evidence about a group called "By Any Means Necessary." (Mot. 2.) Whether or not the government presented evidence about Antifa, however, is not a ground to dismiss the indictment. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii). A prosecutor does not have to present the grand jury with exculpatory evidence. *See United States v. Williams*, 504 U.S. 36, 52 (1992). The quality or adequacy of evidence before the grand jury is also not a ground to dismiss the indictment. *Bank of Nova Scotia*

*v. United States*, 487 U.S. 250, 261 (1988); *see also Costello v. United States*, 350 U.S. 359, 364 (1956) (holding that review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]"). And to the extent Mr. Eason seeks grand jury transcripts to obtain exculpatory evidence or pretrial statements of witnesses, the government is otherwise obligated to disclose this information pursuant to *Brady* and the Jencks Act. *See* 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There is no particularized need for disclosure now.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion for disclosure of grand jury transcripts is **DENIED**.

DATED:   February 19, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE