NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
DAVID T. RYAN (Cal. Bar No. 295785)
GEORGE E. PENCE (Cal. Bar No. 257595)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4491/2253
     Facsimile: (213) 894-2979
     E-mail:    david.ryan@usdoj.gov
                george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>                 v.<br><br>ROBERT RUNDO,<br>ROBERT BOMAN,<br>AARON EASON, and<br>TYLER LAUBE,<br><br>                 Defendants. | No. CR 18-00759-CJC<br><br>OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE INDICTMENT<br><br>Hearing Date: 6/3/2019<br>Hearing Time: 2:00 P.M.<br>Location:     Courtroom of the<br>              Hon. Cormac J.<br>              Carney |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and the undersigned Assistant United States Attorneys,
hereby files its Opposition to Defendants' Joint Motion to Dismiss
the Indictment.

//

//

1

1    This Opposition is based upon the attached memorandum of points

2  and authorities and exhibits, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4  Dated: May 6, 2019                 Respectfully submitted,

5                                     NICOLA T. HANNA
                                      United States Attorney
6
                                      PATRICK R. FITZGERALD
7                                     Assistant United States Attorney
                                      Chief, National Security Division
8

9                                     _____/s/_____
                                      DAVID T. RYAN
10                                    GEORGE E. PENCE
                                      Assistant United States Attorneys
11
                                      Attorneys for Plaintiff
12                                    UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES...............................ii

I.   INTRODUCTION...................................................1

II.  PROCEDURAL AND STATUTORY BACKGROUND............................2

     A.   The Indictment...........................................2

     B.   Motion to Dismiss in Related Case........................3

     C.   The Anti-Riot Act........................................4

III. FACTUAL BACKGROUND.............................................5

IV.  ARGUMENT.......................................................6

     A.   The Anti-Riot Act is Not Overbroad Under the First
          Amendment................................................6

     B.   The Anti-Riot Act is Not Unconstitutionally Vague.......13

     C.   Count Two Sufficiently Alleges a Violation of the
          Anti-Riot Act...........................................18

     D.   The Conspiracy Count Does Not Violate Wharton's Rule.....21

V.   CONCLUSION....................................................22

i

**TABLE OF AUTHORITIES**

**CASES**

Ayotte v. Planned Parenthood of Northern New England,
  546 U.S. 320 (2006) ............................................... 8

Brandenburg v. Ohio,
  395 U.S. 444 (1969) ........................................... 9, 10

Brundage v. United States,
  365 F.2d 616 (10th Cir. 1966) .................................. 15

Elonis v. United States,
  135 S. Ct. 2001 (2015) .......................................... 9

Hamling v. United States,
  418 U.S. 87 (1974) ............................................. 18

Hill v. Colorado,
  530 U.S. 703 (2000) ............................................ 16

Holder v. Humanitarian Law Project,
  561 U.S. 1 (2010) .............................................. 13

Iannelli v. United States,
  420 U.S. 770 (1975) ............................................ 22

In re Shead,
  302 F. Supp. 560 (N.D. Cal. 1969) .......................... 10, 12

Johnson v. United States,
  135 S. Ct. 2551 (2015) ...................................... 13, 14

Lovely v. Cunningham,
  796 F.2d 1 (1st Cir. 1986) .............................. 15, 17, 21

Members of City Council of Los Angeles v. Taxpayers for Vincent,
  466 U.S. 789 (1984) ............................................ 12

National Mobilization Committee to End the War in Vietnam v. Foran,

1  *et al.*, 411 F.2d 934 (7th Cir. 1969)..........................7, 8, 11

2  Turner Broadcasting Systems, Inc. v. FCC,

3    520 U.S. 180 (1997)..............................................6, 13

4  United States v. Berger,

5    473 F.3d 1080 (9th Cir. 2007)......................................18

6  United States v. Buckland,

7    289 F.3d 558 (9th Cir. 2002).......................................12

8  United States v. Carll,

9    105 U.S. 611 (1882)................................................18

10 United States v. Castro,

11   887 F.2d 988 (9th Cir. 1989).......................................21

12 United States v. Chenaur,

13   552 F.2d 294 (9th Cir. 1977).......................................18

14 United States v. Chi Mak,

15   683 F.3d 1126 (9th Cir. 2012)...................................6, 10

16 United States v. Coulter,

17   474 F.2d 1004 (9th Cir. 1973)......................................15

18 United States v. Dellinger,

19   472 F.2d 340 (7th Cir. 1972)...................................10, 16

20 United States v. Fernandez,

21   388 F.3d 1199 (9th Cir. 2004)......................................19

22 United States v. Giese,

23   597 F.2d 1170 (9th Cir. 1979)......................................20

24 United States v. Hoffman,

25   334 F. Supp. 504 (D.D.C. 1971)..................................11, 12

26 United States v. Jae Gab Kim,

27   449 F.3d 933 (9th Cir. 2006).......................................16

28 United States v. Kelly,

iii

  874 F.3d 1037 (9th Cir. 2017)...................................... 20

United States v. McGee,

  890 F.3d 730 (8th Cir. 2018)...................................... 15

United States v. Musacchio,

  968 F.2d 782 (9th Cir. 1991)...................................... 19

United States v. O'Brien,

  391 U.S. 367 (1968).............................................. 6

United States v. Ohlson,

  552 F.2d 1347 (9th Cir. 1977)..................................... 21

United States v. Osinger,

  753 F.3d 939 (9th Cir. 2014)...................................... 16

United States v. Shortt Accountancy Corp.,

  785 F.2d 1448 (9th Cir. 1986)..................................... 20

United States v. Stevens,

  559 U.S. 460 (2010).............................................. 12

United States v. Wardrick,

  350 F.3d 446 (4th Cir. 2003)...................................... 15

United States v. Williams,

  553 U.S. 285 (2008).......................................... passim

**STATUTES**

18 U.S.C. § 113(c)................................................. 15

18 U.S.C. § 2101.................................................. 10

18 U.S.C. § 2101(a)............................................. 4, 16

18 U.S.C. § 2102(a)............................................. 7, 12

18 U.S.C. § 2102(a)(2)............................................. 5

18 U.S.C. § 2102(b)............................................. 8, 16

18 U.S.C. § 2113(d)............................................... 14

iv

**RULES**

Fed. R. Crim. P. 12(b)(3)(B).........................................20

Federal Rule of Criminal Procedure 7...............................18

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Anti-Riot Act of 1968 expressly prohibits coordinated campaigns of violence such as the government has alleged in the Indictment, and expressly excludes from its coverage non-violent political speech that is protected by the First Amendment. Defendants' planning and participation in riots with the intent to violently assault their perceived enemies plainly runs afoul of the Act.  Notwithstanding their protestations to the contrary, defendants are not charged with merely expressing unpopular beliefs. Defendants' First Amendment attacks on the Anti-Riot Act, both facial and as-applied, are therefore meritless.

Due to the Anti-Riot Act's narrow focus on the use of facilities of interstate commerce and interstate travel to prepare for, incite, and engage in violence, courts over the past 50 years have repeatedly and uniformly upheld the Act in the face of the same First Amendment challenges as those recycled here.  Indeed, just last week, in a lengthy memorandum opinion, the district court in the Western District of Virginia rejected a nearly identical challenge brought by several of defendants' co-conspirators, who are facing the same charges for the same acts of violence at the same events.  That opinion, attached as Exhibit 1, persuasively explains why the challenges raised by defendants here must also fail.  That opinion provides exhaustive legal support for rejecting defendants' arguments on the following grounds:

First, the definition of "riot" in the Anti-Riot Act is not facially overbroad because it prohibits only violence, true threats

1

of violence, and the advocacy of violence where such advocacy is directed to inciting or producing imminent lawless action and is likely to produce such action.

Second, the Anti-Riot Act is not unconstitutionally vague because its key terms are specifically defined and exclude mere advocacy of ideas or expression of beliefs, and the scope of defendants' violation of the Act is specified in the Indictment.

Third, Count Two of the Indictment contains the elements of the offense charged and fairly informs defendants of the charge.  No more is required.  Even assuming defendants were entitled to more factual specificity, the proper recourse would be to seek a bill of particulars, which defendants have not done and which is not warranted in light of the voluminous discovery already produced.

Fourth, Count One of the Indictment does not violate Wharton's Rule because the Anti-Riot Act can be violated absent any concerted criminal activity between two or more persons.

Thus, a long and unbroken line of case law, including the recent decision from the Western District of Virginia, confirms that defendants' motion is baseless and should be denied.

## II.   PROCEDURAL AND STATUTORY BACKGROUND

### A.   The Indictment

The Indictment charges defendants with conspiracy in violation of Title 18, United States Code, Section 371, and rioting, in violation of Title 18, United States Code, Sections 2101 and 2(a). The conspiracy count charges that beginning on or about December 2016 and continuing until on or about October 2, 2018, defendants conspired and agreed to engage in the crime of rioting.  In support

2

of that charge, the conspiracy count sets forth 47 overt acts, ranging from December 2016 to October 2, 2018.

The rioting count charges that beginning on or about March 27, 2017 and continuing until on or about April 15, 2017, defendants, each aiding and abetting the other, used facilities of interstate commerce, including the Internet, telephone, and a Visa credit card, with the intent to incite, organize, promote, encourage, participate in, and carry on a riot and commit an act of violence in furtherance of a riot. The rioting count charges that during and after such uses of facilities of interstate commerce, defendants committed one or more overt acts for the purposes specified above, including traveling together to Berkeley on April 14, 2017, to engage in a riot.

**B.    Motion to Dismiss in Related Case**

On October 10, 2018, a grand jury in the Western District of Virginia returned an Indictment in a related case against four of defendants' co-conspirators from the Rise Above Movement ("RAM"), charging them with conspiracy to riot and rioting in connection with their acts of violence at three of the same events described in the Indictment in this case – Huntington Beach, Berkeley, and Charlottesville. (Ex. 2). On February 1, 2019, the defendants in that case filed a motion to dismiss the Indictment, presenting nearly identical arguments as those raised here.

On May 2, 2019, the Honorable Norman K. Moon, United States District Court, Western District of Virginia, issued a 31-page opinion denying the motion, holding that (1) the Anti-Riot Act is not overbroad under the First Amendment; (2) the Anti-Riot Act is not impermissibly vague under the Due Process Clause of the Fifth Amendment; (3) Wharton's Rule does not prohibit charging conspiracy

to violate the Anti-Riot Act; and (4) the Indictment adequately set forth the elements of the Anti-Riot Act and was not required to include factual details or statutory definitions.  (Ex. 1).

On April 29 and May 3, 2019, the remaining defendants in that case pleaded guilty to conspiracy to riot pursuant to plea agreements in which they admitted that they and other RAM associates trained to engage in violence at political events, assaulted various people at the events in Huntington Beach, Berkeley, and Charlottesville, and traveled to those events "with the intention of provoking physical conflict with counter-protestors, which they believed would justify their use of force against the counter-protestors and shield them from prosecution for their acts of violence."  (Ex. 3 at 3-5; Ex. 4 at 3-5; Ex. 5 at 3-5).[1]

### C.   The Anti-Riot Act

The Anti-Riot Act, 18 U.S.C. § 2101(a) provides:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent (1) to incite a riot; or (2) to organize, promote, encourage, participate in, or carry on a riot; or (3) to commit any act of violence in furtherance of a riot; or (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot; and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified [in (1)-(4)] . . . [s]hall be fined . . . or imprisoned not more than five years, or both.

Section 2102(a) defines "riot" as follows:

> a public disturbance involving (1) an act or acts of violence by one or more persons part of an

---

[1] The fourth defendant in that case pleaded guilty to conspiracy to riot on November 30, 2018, prior to the filing of the motion to dismiss.  (Dkts. 57-60, Case No. 3:18-CR-00025-NJM-JCH (W.D. Va.)).

4

assemblage of three or more persons, which act or
acts shall constitute a clear and present danger
of, or shall result in, damage or injury to the
property of any other person or to the person of
any other individual or (2) a threat or threats
of the commission of an act or acts of violence
by one or more persons part of an assemblage of
three or more persons having, individually or
collectively, the ability of immediate execution
of such threat or threats, where the performance
of the threatened act or acts of violence would
constitute a clear and present danger of, or
would result in, damage or injury to the property
of any other person or to the person of any other
individual.

Section 2102(b) provides that the term "to incite a riot" or "to organize, promote, encourage, participate in, or carry on a riot" "includes, but is not limited to":

[U]rging or instigating other persons to riot,
but shall not be deemed to mean the mere oral or
written (1) advocacy of ideas or (2) expression
of belief, not involving advocacy of any act or
acts of violence or assertion of the rightness
of, or the right to commit, any such act or acts.

As discussed below, defendants' overbreadth and vagueness challenges are based almost exclusively on 18 U.S.C. § 2102(a)(2), the portion of the definition of "riot" that includes public disturbances involving "threats" of violence.  That provision is not at issue in this case, which is based on riots that involved actual violence, not merely threats of violence.

**III. FACTUAL BACKGROUND**

As set forth in the Indictment, throughout 2017, defendants participated in RAM, which represented itself as a combat-ready, militant group of a new nationalist white supremacy and identity movement.  Defendants and their co-conspirators used the Internet and text messages to coordinate and participate in hand-to-hand and other combat training to prepare to engage in violence at political

rallies.   Defendants and their co-conspirators then traveled to rallies in Huntington Beach, Berkeley, and San Bernardino, California, where they assaulted various persons including counter-protestors, journalists, and a police officer.   Following each of those events, defendants and their co-conspirators used the Internet and text messages to celebrate their acts of violence at these events and recruit more members for future events.

## IV.   ARGUMENT

### A.   The Anti-Riot Act is Not Overbroad Under the First Amendment

The Anti-Riot Act is not overbroad under the First Amendment. As an initial matter, because the Anti-Riot Act is content-neutral, it is subject to intermediate scrutiny and "will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." Turner Broadcasting Systems, Inc. v. FCC, 520 U.S. 180, 189 (1997). See also United States v. Chi Mak, 683 F.3d 1126, 1134-35 (9th Cir. 2012) (applying intermediate scrutiny to statute that prohibits expressive conduct "without regard to content or viewpoint"); United States v. O'Brien, 391 U.S. 367, 376 (1968) ("[W]hen speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.").

The Anti-Riot Act serves an important governmental interest in preventing public disturbances, in particular those involving interstate travel or the use of facilities of interstate commerce.

See Ex. 1 at 16 ("The Court finds that § 2101 materially advances Congress's substantial interest in keeping the channels of interstate commerce free from immoral and injurious uses, namely uses that facilitate riotous disturbances involving violence or threats of violence backed up by immediate execution.") (quotation marks omitted); National Mobilization Committee to End the War in Vietnam v. Foran et al., 411 F.2d 934, 939 (7th Cir. 1969) ("[T]he federal government has a strong interest in preventing violence to persons and injury to their property, and when clear and present danger of riot appears, the power of Congress to punish is obvious.")

Furthermore, the Anti-Riot Act is narrowly tailored to serve that interest because, as discussed below, it applies only to (1) interstate travel or use of a facility of interstate commerce, (2) with intent to undertake acts of violence in furtherance of a riot or to incite or instigate a riot, (3) followed by overt acts committed with the same intent and for the same purpose. (Ex. 1 at 16). Defendants, like numerous unsuccessful challengers before them, seek to construe the statute more broadly by ignoring several of its key provisions.

Defendants first contend that the Anti-Riot Act "impermissibly infringes on the freedom of assembly" because it "equates organized assemblies with organized violence," and fails to distinguish between "lawful advocacy and unlawful incitement." (Motion at 7, 8). That is incorrect. On its face, the Anti-Riot Act applies not to all "organized assemblies," but only to "public disturbances" involving "acts of violence" or threats of violence "by a person having the ability of immediate execution of such threats." 18 U.S.C. § 2102(a). See Ex. 1 at 17 ("The Court finds no merit in Defendants'

7

contention that § 2101 'equates organized assemblies with organized violence' or impermissibly chills expressive conduct by 'endorsing the prosecution of political protest.'  The Act does not criminalize peaceful protest or lawful assembly but rather targets 'public disturbances involving' violence or the threat of such violence undergirded by the 'ability of immediate execution.'")  And on its face, the Anti-Riot Act prohibits prosecution based on "lawful advocacy," stating that it does not apply to mere "advocacy of ideas" or "expression of belief." 18 U.S.C. § 2102(b); Foran, 411 F.2d at 938 ("The statute expressly excludes oral or written advocacy of ideas or expressions of belief not involving violence.").

Defendants next contend that the Anti-Riot Act is overbroad because it applies to conduct in furtherance of public disturbances involving not only violence but also "the mere *threat* of an act of violence," even if the harm is not imminent.  (Mot. at 8-9 (emphasis in original)).  As an initial matter, even if the Court were to construe certain provisions of the Anti-Riot Act as overbroad in their possible application to mere advocacy or threats of violence, the Court should still deny the motion because this case does not rely on those provisions.  Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 328-29 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem.  We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact.").  The defendants in this case are not charged merely with advocating that others engage in violence, or furthering threats of violence; they are charged with personally

8

preparing to engage in violent riots and violently assaulting people at those riots.

In any event, the argument is meritless.  It is well established that true threats of violence are unlawful and not protected by the First Amendment, regardless of whether the person making the threat has the ability to execute the threat.  See Elonis v. United States, 135 S. Ct. 2001, 2012 (2015) (holding that "[i]t is settled that the Constitution does not protect true threats," and where a statute requires a defendant transmit a communication for the purpose of issuing a threat or with knowledge that the communication will be viewed as a threat, "it is not necessary to consider any First Amendment issues").  Just as it is unlawful to make a true threat, so is it unlawful to induce such a threat.  United States v. Williams, 553 U.S. 285, 298 (2008) ("Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech . . . that is intended to induce or commence illegal activities.").  Such acts criminalizing "proposal[s] to engage in illegal activity . . . fall[] well within constitutional bounds."  Id. at 299–300.

Furthermore, the statute here complies with Brandenburg v. Ohio, 395 U.S. 444, 448 (1969), because it applies to the making or inducing not of all threats, but only those threats that create an immediate, clear and present danger.  The statute defines a "riot" as a "public disturbance involving" either acts of violence constituting a "clear and present danger" to people or property or "threats" of such violence by individuals "having the ability of immediate execution of such threats," where the performance of the threatened acts "would constitute a clear and present danger" to people or

property." See Ex. 1 at 20; In re Shead, 302 F. Supp. 560, 566 (N.D. Cal. 1969).  Because the public disturbances urged or instigated under the statute must "constitute a clear and present danger, the overt acts themselves which are committed for that purpose, necessarily must also constitute a clear and present danger." Ex. 1 at 20 (quoting In re Shead, 302 F. Supp. at 566).  Accordingly, "the conduct condemned by 18 U.S.C. § 2101 is sufficiently limited to advocacy of the use of force or of law violation where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Id. (citing Brandenburg, 395 U.S. at 448); United States v. Dellinger, 472 F.2d 340, 361–62 (7th Cir. 1972) (holding that the overt acts required by the statute create an "adequate relation between expression and action" under the First Amendment).

Because the definition of "riot" in the Anti-Riot Act specifically "carve[s] out" the sort of advocacy or expression that is protected under the First Amendment, and covers only to public disturbances involving violence or threats of violence that constitute a clear and present danger, it is not overbroad.  See Chi Mak, 683 F.3d at 1136 (rejecting First Amendment overbreadth challenge to the Arms Export Control Act and the International Traffic in Arms Regulations which "specifically carve out exceptions to the law for the types of information that are subject to the highest levels of First Amendment protection").

Furthermore, defendants are incorrect that there is an attenuation between the travel or use of facilities of interstate commerce with riotous intend and the subsequent overt act.  The statute requires that a defendant act with the riotous intent both at

10

the time of the interstate travel or use of facility of interstate
commerce, and again when committing an overt act in furtherance of
the riot.  United States v. Hoffman, 334 F. Supp. 504, 509 (D.D.C.
1971) (holding that the Anti-Riot Act does not "authoriz[e]
conviction where the unlawful intent and the prohibited act do not
coincide").

Defendants next contend that the Anti-Riot Act chills speech
because a speaker who utters "inflammatory words" can be liable for
"a potential listener's reaction," whether the listener is a
supporter of the speaker or an opponent, imposing a "heckler's veto"
on unpopular speech.  (Mot. at 11-12).  Defendants are wrong.  The
statute cannot be applied in such a circumstance because, again, it
requires that a defendant act with the specific intent to incite or
promote a riot.  The Seventh Circuit has directly rejected this exact
argument:

> Plaintiffs' arguments based on guilt by
> association, loss of control over a theretofore
> peaceful assembly, and strict liability for the
> acts of anyone joining an intended peaceful
> demonstration simply fail to take account of the
> language of the statute.  The statute does
> interdict riot-connected overt acts, but only if
> the prescribed intent is present when the
> interstate travel or use of interstate facilities
> occurs.  Thus the intent to engage in one of the
> prohibited overt acts is a personal prerequisite
> to punishment under this provision and
> necessarily renders any challenge based on
> innocent intent or unexpected result wide of the
> mark.

Foran, 411 F.2d at 938.

Courts have uniformly and repeatedly construed the Anti-Riot Act
narrowly to include these specific requirements of unlawful intent
and action.  Even assuming the statute could fairly be construed more
broadly, as defendants propose, the well-established canon of

11

1  constitutional avoidance counsels against such a construction.  <u>See</u>

2  <u>United States v. Buckland</u>, 289 F.3d 558, 564 (9th Cir. 2002) ("The

3  Supreme Court instructs us that 'every reasonable construction must

4  be resorted to, in order to save a statute from unconstitutionality,"

5  and where an "otherwise acceptable construction of a statute would

6  raise serious constitutional problems, and where an alternative

7  interpretation of the statute is fairly possible, we are obligated to

8  construe the statute to avoid such problems.").

9       Properly construed, the Anti-Riot Act's intent and action

10 requirements prevent the statute from capturing a "substantial amount

11 of protected speech" and running afoul of the First Amendment.

12 <u>Williams</u>, 553 U.S. at 292.[2]  <u>See</u> <u>In re Shead</u>, 302 F. Supp. at 565

13 ("In summary, Congress has made it a crime if there is an intent to

14 promote a riot at the time of use of interstate or foreign facilities

15 and at that time or thereafter, the additionally-required overt acts

16 are committed.  This intent must be to promote, and the overt acts

17 must be committed for the purpose of promoting, the disturbances

18 defined in 18 U.S.C. § 2102(a)"); Ex. 1 at 15 ("Under this

19 construction, § 2101 only regulates either violence committed in

20 furtherance of a riot or the unprotected incitement or instigation of

21 a riot."); <u>Hoffman</u>, 334 F. Supp. at 509 (same).  The Anti-Riot Act

22 advances important governmental interests unrelated to the

23

24      [2] To the extent the Anti-Riot Act could capture one of the
   hypothetical scenario defendants suggest, "in determining whether a
25 statute's overbreadth is substantial, [courts] consider a statute's
   application to real-world conduct, not fanciful hypotheticals."
26 <u>United States v. Stevens</u>, 559 U.S. 460, 487 (2010).  The "mere fact
   that one can conceive of some impermissible applications of a statute
27 is not sufficient to render it susceptible to an overbreadth
   challenge."  <u>Williams</u>, 553 U.S. at 303 (quoting <u>Members of City
28 Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 800
   (1984)).

1   suppression of free speech and does not burden substantially more

2   speech than necessary to further those interests, and must be

3   sustained under the First Amendment.  <u>Turner Broadcasting Systems</u>,

4   520 U.S. at 189.

5   **B.   The Anti-Riot Act is Not Unconstitutionally Vague**

6       The Anti-Riot Act is not unconstitutionally vague because its

7   key terms are specifically defined and exclude mere advocacy of ideas

8   or expression of beliefs, and the scope of defendants' violation of

9   the Act is specified in the Indictment.

10      A criminal statute is void for vagueness under the Fifth

11  Amendment if "it fails to give ordinary people fair notice of the

12  conduct it punishes, or [is] so standardless that it invites

13  arbitrary enforcement."  <u>Johnson v. United States</u>, 135 S. Ct. 2551,

14  2556 (2015).  While a "more stringent vagueness test should apply"

15  when a statute "interferes with the right of free speech or of

16  association," "perfect clarity and precise guidance have never been

17  required even of regulations that restrict expressive activity."

18  <u>Holder v. Humanitarian Law Project</u>, 561 U.S. 1, 19 (2010).

19      Defendants argue that the term "riot" under the statute is vague

20  because to determine whether a public disturbance involves a threat

21  of violence that can be immediately executed requires an "abstract

22  assessment" of the ability of the person making the threat to carry

23  it out.  (Mot. at 14-15).  As an initial matter, defendants'

24  challenge to the "threats" provision of the statute is inapplicable

25  to this case, because they are charged for their roles in riots that

26  involved actual violence, not merely threats of violence.  <u>See</u>

27  <u>Humanitarian Law Project</u>, 561 U.S. at 18-19 ("We consider whether a

28  statute is vague as applied to the particular facts at issue, for a

plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.")

In any event, Judge Moon rejected the identical facial challenge, reasoning:

> A criminal statute is not void for vagueness simply because it 'call[s] for the application of a qualitative standard . . . to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree. Johnson, 135 S. Ct. at 2562. Moreover, the Court cannot say that whether a 'public disturbance' involves a 'threat' of an 'act or acts of violence' fortified by 'the ability of immediate execution' calls for 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.' Williams, 553 U.S. at 306. Indeed, § 2102(a)(2) is itself a statutory definition refining the term 'riot,' and both 'riot,' and 'threat' have settled legal meanings.

Ex. 1 at 9.

As Judge Moon noted, Black's Law Dictionary's definition of "riot" generally tracks that set forth in the Anti-Riot Act: "(1) An assemblage of three or more persons in a public place taking concerted action in a turbulent and disorderly manner for a common purpose . . ." and (2) "An unknown disturbance of the peace by an assemblage of usu. Three or more persons acting with a common purpose in a violent or tumultuous manner that threatens or terrorizes the public or an institution." Id. at n.6 (quoting Riot, Black's Law Dictionary (10th ed. 2014)).

Furthermore, numerous federal and state criminal laws require proof that an individual had the ability to carry out a threat. The federal bank robbery statute, 18 U.S.C. § 2113(d), prohibits committing an "assault" in commission of a bank robbery, which courts

14

have defined to require "an intent to, and in fact generating a
reasonable apprehension in a victim plus a <u>threat or attempt to
inflict bodily harm coupled with the present ability</u> to commit
violent injury upon the person of another." <u>United States v.
Coulter</u>, 474 F.2d 1004, 1005 (9th Cir. 1973) (emphasis added).
Similarly, the federal crime of assault with a dangerous weapon, 18
U.S.C. § 113(c), has been defined to include an "attempt coupled with
the present ability to commit a violent injury upon the person of
another." <u>Brundage v. United States</u>, 365 F.2d 616, 618 (10th Cir.
1966). Examples of similar state statutes abound. <u>See, e.g.</u>, <u>United
States v. McGee</u>, 890 F.3d 730, 735 (8th Cir. 2018) (Iowa statute
defining assault as acts intended to place another in fear of
immediate harmful contact "coupled with the apparent ability to
execute the act"); <u>United States v. Wardrick</u>, 350 F.3d 446, 455 (4th
Cir. 2003) (Maryland statute defining assault as a "threat by words
or acts or both to do bodily harm to another, coupled with the
apparent present ability to carry out the threat"); <u>Lovely v.
Cunningham</u>, 796 F.2d 1, 3-4 (1st Cir. 1986) (New Hampshire statute
defining sexual assault to include coercing sexual activity through
threats coupled with apparent "ability to execute these threats in
the future"). The definition of "riot" in this case adopts well-
established and familiar legal standards and concepts and is not
vague.

     Likewise, the terms "to incite a riot" and to "organize,
promote, encourage, participate in, or carry on a riot" do not call
for "wholly subjective judgments without statutory definitions,
narrowing context, or settled legal meanings." <u>Williams</u>, 553 U.S. at
306. On the contrary, the statute specifically defines the terms as

including "urging or instigating other persons to riot," and excluding mere "advocacy of ideas" or "expression of belief . . ." 18 U.S.C. § 2102(b).  As the Seventh Circuit held in Dellinger, the term "urge" has a settled legal meaning:  "[n]early all definitions suggest an impelling beyond mere persuasion, and it is said that 'URGE indicates a pressing, impelling, seeking to influence, or overcoming some obstacle, check, or drawback to a certain course." 472 F.2d at 362 (quoting Webster's Third New International Dictionary (1961)).  Furthermore, the Seventh Circuit explained, all of the acts proscribed in 18 U.S.C. § 2101(a) "embody a relation to action in that they logically appear to require that the riot occur" or "require the element of propelling the action."  Dellinger, 472 F.2d at 361.  "Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech . . . that is intended to induce or commence illegal activities." Williams, 553 U.S. at 298.  Such acts criminalizing "proposal[s] to engage in illegal activity . . . fall[] well within constitutional bounds."  Id. at 299-300.

Finally, all of these specifically defined terms in the Anti-Riot Act are further narrowed by the statute's "intent" requirement. In Hill v. Colorado, 530 U.S. 703, 732 (2000), the Supreme Court rejected a vagueness challenge because the challenged statute contained a scienter requirement of "knowingly" and because the statute contained "common words" understandable by people of ordinary intelligence.  "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  United States v. Jae Gab Kim, 449 F.3d 933, 943 (9th Cir. 2006); see also United States v.

16

<i>Osinger</i>, 753 F.3d 939, 945 (9th Cir. 2014) (scienter requirement undermined defendant's contention that he was unable to discern that his conduct was prohibited by the statute).  Here, as in <u>Hill</u>, the statute's intent requirement, which requires intent both with respect to the interstate commerce element and the overt act, alleviates any concern that defendants are being punished for behavior they could not have known was illegal.

With respect to defendants' as-applied challenge, defendants here are charged not with making speeches or inciting others to riot, but with rioting themselves.  As the Indictment sets forth, defendants used facilities of interstate commerce—including text messages, the Internet, and a credit card—to recruit, train, and travel to political events with the shared intent of beating up their political opponents.  (Dkt. 47 ¶¶ 7-10).  Defendants then did exactly that, by their own admission, jumping over barriers (<u>id</u>. at 12), "smashing commies," (<u>id</u>. at 11), and recruiting others to join "the only alt right crew that actually beats antifa senseless and wins rallies" (<u>id</u>. at 11).[3]  The statute is not vague as applied to defendants.

---

[3] Defendants argue that the Overt Acts set forth in the Conspiracy count in the Indictment that include statements by defendants and co-conspirators after the riots cannot constitute use of facilities of interstate commerce in furtherance of a riot, and therefore evidence the government's "uncertainty" regarding the scope of the statute. (Mot. 17-18).  That argument is meritless.  The post-riot statements to which defendants refer are set forth as Overt Acts.  An act need not itself establish an element of the underlying offense in order to constitute an overt act in furtherance of a conspiracy.  Here, defendants' post-riot statements and actions set forth in the conspiracy count constitute overt acts in furtherance of their ongoing agreement to engage in riots to beat up their political opponents.

## C. Count Two Sufficiently Alleges a Violation of the Anti-Riot Act

Count Two adequately alleges that defendants violated the Anti-Riot Act. Under Federal Rule of Criminal Procedure 7, an Indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." United States v. Chenaur, 552 F.2d 294, 301 (9th Cir. 1977) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). An Indictment does not need to set forth the "manner and means employed" to commit the offense. Id. "An indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." United States v. Berger, 473 F.3d 1080, 1097 (9th Cir. 2007).

Defendants' argument that Count Two fails to allege an interstate commerce nexus or the requisite intent is without merit. Count Two expressly alleges both elements, stating that between on or about March 27, 2017 and April 15, 2017, defendants, "each aiding and abetting the other, used facilities of interstate commerce, including but not limited to the Internet, telephone, and a Visa credit card with account number ending in 0807, with intent to incite, organize, promote, encourage, participate in, and carry on a riot, and to

18

1   commit an act of violence in furtherance of a riot, and to aid or

2   abet any person in inciting and participating in and carrying on a

3   riot and committing any act of violence in furtherance of a riot,"

4   and during and after such use, defendants "committed one or more

5   overt acts for one or more of the purposes specified above, including

6   traveling together on or about April 14, 2017, to Berkeley,

7   California, to engage in a riot." (Dkt. 47 ¶ 9) (Emphasis added).

8   The Indictment thus expressly alleges both that defendants used

9   facilities of interstate commerce with the intent to riot, and that

10  they subsequently committed an overt act to engage in a riot.

11      Defendants' argument appears to be that although Count Two

12  clearly alleges the elements of the offense, it does not set forth

13  specific examples of the manner and means by which each defendant

14  committed each of the elements of the offense. But that is not what

15  the law requires. See United States v. Fernandez, 388 F.3d 1199,

16  1218 (9th Cir. 2004) ("We have previously held, in the context of

17  Hobbs Act prosecutions, that an indictment need not set forth facts

18  alleging how interstate commerce was affected, nor otherwise state

19  any theory of interstate impact. The rationale of these cases is

20  equally applicable to the interstate nexus requirement in the RICO

21  statute."); United States v. Musacchio, 968 F.2d 782, 786 (9th Cir.

22  1991) ("[T]he government was not required to allege its theory of the

23  case or list supporting evidence to prove the crime alleged.")

24  Defendants do not and cannot dispute that Count Two sets forth all

25  elements necessary to constitute the offense, including the use of

26  facilities of interstate commerce.

27      Defendants' claim that certain evidence would be insufficient

28  under the Commerce Clause cannot be determined on a motion to

dismiss.   Federal Rule of Criminal Procedure allows a defendant to file a pretrial motion to dismiss an indictment if the motion "can be determined without a trial on the merits."  Fed. R. Crim. P. 12(b)(3)(B). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." United States v. Kelly, 874 F.3d 1037, 1046 (9th Cir. 2017) (quotation omitted).  "If the pretrial claim is 'substantially founded upon and intertwined with' evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (citation omitted).

Finally, even assuming defendants were entitled to additional factual specificity, the proper recourse would have been not to seek dismissal of the well-pleaded Indictment, but to seek a bill of particulars, which defendants did not do.  United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979) (setting forth bases for providing bill of particulars).  Nonetheless, because the voluminous discovery in this case contains abundant examples of defendants' use of social media, text messages, encrypted messaging services, and credit and debit cards to train, recruit, prepare for, and travel to the riot on April 15, 2017, defendants have been more than adequately advised of the numerous ways in which their conduct satisfied the elements of Count Two.  See Giese, 597 F.2d at 1180 (affirming denial of request for bill of particulars where "the government provided appellant with a large volume of information . . . which revealed the government's theory of the case," and holding that "[f]ull discovery also obviates the need for a bill of particulars").

### D.   The Conspiracy Count Does Not Violate Wharton's Rule

Wharton's Rule does not preclude charging a conspiracy to violate the Anti-Riot Act.  Wharton's Rule states that "an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as necessarily to require the participation of two persons for its commission." United States v. Ohlson, 552 F.2d 1347, 1348 (9th Cir. 1977).  As Judge Moon held, defendants' challenge under Wharton's Rule is "baseless" for three reasons.  Ex. 1 at 29.

First, the Anti-Riot Act can be violated by one person. Although more than one person must be present at a public event in order for a riot to exist, "the underlying crime of traveling [or using facilities of interstate commerce] with the requisite intent followed by an overt act in furtherance of a riot can plainly be committed by a single person." Id. at 30.

Second, Wharton's Rule is aimed at crimes, such as bigamy or adultery, in which "[t]he parties to the agreement are the only persons participating in the substantive offense, the immediate consequences of the crime rest solely on the participants, and the agreement constituting the substantive offense is unlikely to pose any threat to society which conspiracy laws are intended to prevent, such as a continuing pattern of criminal conduct." United States v. Castro, 887 F.2d 988, 996 (9th Cir. 1989).  Here, unlike crimes such as bigamy or adultery, the consequences of violating the Anti-Riot Act fall on society, rather than on defendants only.  Ex. 1 at 30.

Third, the "third-party exception" to Wharton's Rule renders the rule "inapplicable when the conspiracy involves the cooperation of a greater number of persons than is required for the commission of the

1  substantive offense." <u>Iannelli v. United States</u>, 420 U.S. 770, 776

2  (1975).  Here, the charged conspiracy involved, at least, the four

3  defendants, two additional co-conspirators identified in the

4  Indictment, and the remaining defendants who have pleaded guilty for

5  their roles in the conspiracy in the Western District of Virginia.

6  Therefore, even assuming defendants' mistaken premise that the

7  underlying crime requires three participants, the third-party

8  exception would render Wharton's Rule inapplicable.  Wharton's Rule

9  does not preclude the charge of conspiracy to violate the Anti-Riot

10  Act.

11  **V.   CONCLUSION**

12      For the foregoing reasons, defendants' Joint Motion to Dismiss

13  the Indictment should be denied.

14  Dated: May 6, 2019              Respectfully submitted,

15                                  NICOLA T. HANNA
                                    United States Attorney
16
                                    PATRICK R. FITZGERALD
17                                  Assistant United States Attorney
                                    Chief, National Security Division
18

19                                  _____/s/_____
                                    DAVID T. RYAN
20                                  GEORGE E. PENCE
                                    Assistant United States Attorneys
21
                                    Attorneys for Plaintiff
22                                  UNITED STATES OF AMERICA

23

24

25

26

27

28