# Exhibit 4

FILED IN OPEN COURT
DATE 5/3/19

~~[signature]~~

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Criminal Action No. 3:18CR00025-002

MICHAEL PAUL MISELIS


In the presence of Warren Cox, my counsel, who has fully explained the charges

contained in the indictment against me, and having received a copy of the indictment

from the United States Attorney before being called upon to plead, I hereby plead guilty

to said indictment and Count One   thereof. I have been advised of the maximum

punishment which may be imposed by the court for this offense. My plea of guilty is

made knowingly and voluntarily and without threat of any kind or without promises other

than those disclosed here in open court.


~~[signature]~~
Signature of Defendant

5/3/19
Date

~~[signature]~~
Witness

FILED IN OPEN COURT

DATE: 5/3/19

_[signature]_

DEPUTY CLERK

# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:18 CR 00025 (NKM) |
| | : | |
| **v.** | : | |
| | : | |
| MICHAEL PAUL MISELIS | : | |
| | : | |

## STATEMENT OF OFFENSE

The offenses described below occurred within the Western District of Virginia, as well as other districts. This Statement of Facts briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. It does not contain all of the information obtained during this investigation and applicable to an accurate Presentence Report and Sentencing Guidelines calculation.

This statement of facts is not protected by proffer agreement or any other agreement, and shall be wholly admissible at trial in the event this plea is later withdrawn notwithstanding any Rules or statutes to the contrary, including but not limited to, Federal Rules of Evidence 408 and 410, and Federal Rule of Criminal Procedure 11.

In early 2017, the defendant Michael Paul Miselis and other individuals participated in an organization originally known as the "DIY Division" that was later re-branded as the "Rise Above Movement" or "RAM." RAM was located in the greater Los Angeles, California area and represented itself as a combat-ready, militant group of a new nationalist white supremacy and identity movement. RAM regularly held hand-to-hand and other combat training for RAM members and associates to prepare to engage in violent confrontations with protestors and other individuals at purported "political" rallies. They attended these rallies with the intention of provoking physical conflict with counter-protestors, which they believed would justify their use of force against the counter-protestors and shield them from prosecution for their acts of violence. RAM leaders organized the training sessions and attendance at political rallies through phone calls and text messages. In 2017, the defendant attended several such training events and rallies.

Through various social media platforms, RAM would publicly post photographs of its members with their faces partially concealed. These photographs would be accompanied by statements such as "When the squad[']s not out smashing commies," "#rightwingdeathsquad," or "#goodnightleftside."

Page **1** of **6**

## I.       Huntington Beach, California on March 25, 2017

On March 25, 2017, the defendant attended a purported political rally in Huntington Beach, California where he met several RAM members.  At that event, several RAM members pursued and assaulted groups of protestors and other persons.  Additionally, at the rally, the defendant exchanged phone numbers with at least one other RAM member (and co-defendant).  Following the rally, photographs depicting RAM members assaulting protestors and other persons were covered on the news and on the "front page" of various Neo-Nazi, white supremacist websites.  RAM members celebrated this coverage, and used the Internet to post statements, photographs, and videos of assaults committed by RAM members at this rally in order to recruit members to engage in violent confrontations at future events.   For example, on the evening after the rally, the defendant sent a text message to his co-defendant: "Celebrity status . . . .well done."  In the text messages, the defendant also expressed an interest in joining RAM for future trainings.  In referencing these events at Huntington Beach, the RAM Twitter account later posted a photograph showing several RAM members at the event, with the message, "Shortly after this pic antifa was btfo [i.e., blown the f—k out] in Huntington Beach."

## II.      Berkeley Riots on April 15, 2017

In early 2017, a purported political rally was scheduled to occur in Martin Luther King Jr. Civic Center Park in Berkeley, California.

In anticipation of this rally, RAM invited the defendant to join them for combat training on Sunday, April 9, 2017, in San Clemente, California, the weekend before the rally.  At this training, one of the subjects of focus would be "hand to hand fighting and formation fighting." The defendant attended these trainings.

On or about April 14, 2017, a fellow RAM member, using a debit card, reserved and rented a van from Airport Van Rentals located at the Los Angeles International Airport to transport the defendant and other RAM members from southern California to Berkeley, California.  On the evening of Friday, April 14, 2017, the defendant met with eight other RAM members who then traveled to Berkeley, California in the van.

On April 15, 2017, several hundred people – to include the defendant and the other RAM members – attended the rally.  The defendant and other RAM members were dressed in gray clothing, goggles, and a black scarfs or masks to cover the lower half of their faces.  Throughout the day, there were several violent clashes between some rally attendees and individuals protesting the rally.  In one of the first such instances, RAM members, including the defendant, crossed the barrier separating the attendees and protestors, and assaulted protestors and other individuals.   In one instance, the defendant punched someone in the back of the head and broke his hand.

As the rally broke up, rally attendees and protestors dispersed onto the streets of downtown Berkeley.   The defendant, alongside other RAM members and rally attendees, followed a large group of protestors who were leaving the area.  In several instances, other RAM members chased and attacked protestors, punching and kicking them.  On April 16, 2017, in describing this instance, the defendant stated in a text message he "was about to jump into that but our guys were just wrecking them" and that there was "not even any room to get a hit in." These acts of violence were part of and in furtherance of a riot, as that term is defined under 18 U.S.C. § 2102, and were not in self-defense.

Following the rally, photographs depicting defendant and other RAM members assaulting protestors and other persons were covered on the news and on various Neo-Nazi, white supremacist websites.  RAM members celebrated this coverage, and used the Internet to post photographs and videos of assaults committed by RAM members in order to recruit members to engage in violent confrontations at future events.  In a text message on April 16, 2017, the defendant described the event as "a total Aryan victory."  On May 15, 2017, the RAM Instagram account posted a photograph of a RAM member wearing a black skull mask at the Berkeley event along with the comment, "#rightwingdeathsquad."  On January 10, 2018, the RAM Twitter account posted a message describing itself as "the only alt right crew that actually beats antifa senseless and wins rallies."  On February 14, 2018, the RAM Gab account posted a photograph of a RAM member punching a protestor at the Berkeley event along with the text, "Talk shit get hit!"

Because the defendant had broken his hand by punching someone in Berkeley, future RAM trainings events would include training on using "palm strikes" and elbows.  Over the summer of 2017, the defendant attended these trainings to prepare for future rallies.

### III.    Preparations and Travel to Charlottesville in August 2017

In or around the spring and summer of 2017, an event referred to as the "Unite the Right" rally was organized and scheduled to occur on August 12, 2017, at Emancipation Park in Charlottesville, Virginia.   This rally was widely promoted on social media and internet sites associated with white-supremacist individuals and groups, and was scheduled to feature a lineup of well-known white-supremacist speakers.

On July 29, 2017, the defendant, using his credit card, purchased a one-way ticket from American Airlines for commercial flights from Los Angeles International Airport in California to Charlottesville Albemarle Airport in Charlottesville, Virginia, departing on August 11, 2017. The defendant was excited about the events scheduled for Charlottesville.  He expected it would become a riot and that experience in riots at Huntington Beach on March 25, 2017 and Berkeley on April 15, 2017 would be valuable.  For example, on June 30, 2017, the day after he bought his ticket, the defendant posted on the Discord platform to the "Charlottesville" thread for Unite the Right Rally participants: "Looking forward to the day. Will be bringing another Berkeley / Huntington vet."

Page 3 of 6

On August 9, 2017, the defendant received a text message from a co-defendant that Cole White would be traveling and staying with them in Charlottesville. The co-defendant described Cole White as an "Excellent fighter. Stoked to have him with us." To the news, the defendant replied: "Nice, don't know that I got to talk to him at Berkeley." Prior to leaving California, The defendant had been given responsibility of purchasing torches and helmets once he arrived in Charlottesville. He texted a co-defendant for a precise count on the number of helmets needed, asking "one for each of the RAM guys? If so, how many guys do we have?" The co-defendant reminded him "Make sure to not use your card. Hit the ATM and use cash."

On August 10, 2017 at 9:20 p.m, the defendant boarded the first leg of his three-flight itinerary, traveling overnight from California to Charlottesville, Virginia, landing at approximately 9:25 am. (EST). At the time of his travel, the defendant expected that the upcoming events in Charlottesville would result in a riot during which either he or his fellow RAM members traveling to Charlottesville would engage in violent confrontations with protestors or other individuals.

In anticipation of these confrontations, after arriving in Charlottesville, the defendant went to Wal-Mart and – using his debit card – made a nominal purchase for a 98-cent pack of gum with $100.00 in cash back, which he then used to purchase baseball helmets for himself and fellow RAM members. Another RAM member purchased athletic tape at the Wal-Mart to wrap their fists in order to prevent their hands from breaking when they punched someone.

## IV.    The Torch-Lit March at the University of Virginia on August 11, 2017

On August 11, 2017, the evening prior to the scheduled Unite the Right rally, hundreds of individuals, including the defendant and fellow RAM members and associates, were gathering to engage in a torch-lit march on the grounds of the University of Virginia in Charlottesville, Virginia. At a nearby field where the group was gathering, the defendant and fellow RAM members and associates lined up in formation, lit their torches, and waited for the march to commence. The defendant catalogued his participation and others by his Go-Pro, which he attached to his chest harness.

Throughout the march, the participants (including the defendant) engaged in chants promoting or expressing white supremacist and other racist and anti-Semitic views, such as "Blood and soil!" and "Jews will not replace us!" and "Anti-White!" The march culminated near the University of Virginia's Rotunda, where a smaller group of individuals, including University of Virginia students, had gathered around a statue of Thomas Jefferson to protest the torch-lit march. Members of this group held a banner that read: "VA Students Act Against White Supremacy." Chanting and bearing torches, the march participants encircled the Thomas Jefferson statue and surrounded the protestors. Violence erupted among the crowd, with some individuals punching, kicking, spraying chemical irritants, swinging torches, and otherwise assaulting others, all resulting in a riot as that term is defined under 18 U.S.C. § 2102. During and in furtherance of this riot, RAM members and associates punched and struck multiple

individuals with a torch.    After the students and protestors left, the defendant yelled "total victory" and "we beat you tonight, we'll beat you tomorrow too!"

## V.    The Unite the Right Rally on August 12, 2017

On the morning of August 12, 2017, multiple groups and individuals espousing white-supremacist and other anti-Semitic and racist views arrived in and around the vicinity of Emancipation Park in Charlottesville, Virginia, to attend the Unite the Right rally.  When they showed up to Emancipation Park, the defendant and other RAM members had in fact wrapped their hands with the white athletic tape purchased the day prior.  The defendant carried their baseball helmets in his backpack.  After several instances of violence prior to the scheduled start of the rally, law enforcement declared an "unlawful assembly" and required rally participants to disperse.

One of the first breakouts of violence on the morning of August 12 occurred on 2nd Street NE, between Jefferson and High Streets, in downtown Charlottesville.  The defendant and other RAM members were part of a large group of (over forty) individuals seeking entry to Emancipation Park by way of 2nd Street NE, but were told by members of law enforcement they had to enter from a different location.  The group, including the defendant and other RAM members, turned around, lined up, and began to make their way through a group of (over twenty) individuals who had come to the rally to protest against racial and other forms of discrimination.

As they made their way through the group of protestors, the defendant and other RAM members collectively pushed, punched, kicked, choked, head-butted, and otherwise assaulted several individuals, resulting in a riot.  During and in furtherance of this riot, the defendant personally committed multiple violent acts, including but not limited to, the following: (1) punching a protestor who had already been thrown to the ground; and (2) kicking a protestor as the protestor was falling to the ground.  None of these acts of violence were in self-defense.

Later in the day, the defendant and RAM members went into Emancipation Park prior to the start of the rally, where many additional violent interactions occurred between protestors and rally attendees.  The defendant, as memorialized by video footage, sought to provoke protestors to "come and get it" or to "come get some."  In a subsequent altercation, the defendant attempted to punch a protestor at the top of the stairs that led into the park, and then sought to land another punch on the same individual.  This altercation was captured on video, which the defendant shared with a co-defendant and fellow RAM member on August 20, 2017, who replied to the defendant "You should have ran in [and] chest kicked that faggot down the stairs."  The defendant replied:  "Yeah, massive regret after watching that footage . . . next time he's going flying."

5/3/19
_____
Date

_Michael Paul Miselis_
_____
Michael Paul Miselis
Defendant

Page **5** of **6**

5-3-19
_____
Date

_____
Warren "Gene" Cox
Counsel for Michael Miselis

5 - 2 - 19
_____
Date

_____
Thomas T. Cullen
United States Attorney

5-3-19
_____
Date

_____
Christopher Kavanaugh
Assistant United States Attorney

Page **6** of **6**

FILED IN OPEN COURT
DATE: 5/3/19
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 3:18cr25 (NKM)** |
| | : | |
| **MICHAEL PAUL MISELIS** | : | |

## PLEA AGREEMENT

I have agreed to enter into a plea agreement with the United States of America, pursuant to Rule 11 of the Federal Rules of Criminal Procedure. I understand that this plea agreement expires on **May 3, 2019**, and that I must enter this guilty plea by or on that date, unless an extension is agreed upon by the United States Attorney's Office for the Western District of Virginia.

The terms and conditions of this agreement are as follows:

## A. CHARGE(S) TO WHICH I AM PLEADING GUILTY AND WAIVER OF RIGHTS

### 1. The Charges and Potential Punishment

My attorney has informed me of the nature of the charge(s) and the elements of the charge(s) that must be proved by the United States beyond a reasonable doubt before I could be found guilty as charged.

I will enter a plea of guilty to Count 1 of the Indictment.

Count 1 charges me with Conspiracy to Riot, in violation of 18 U.S.C. § 371. The maximum statutory penalty is a fine of $250,000 and/or imprisonment for a term of five years, plus a term of supervised release of three years.

I understand restitution may be ordered, my assets may be subject to forfeiture, and fees may be imposed to pay for incarceration, supervised release, and costs of prosecution. In addition, a $100 special assessment, pursuant to 18 U.S.C. § 3013, will be imposed per

*Defendant's Initials:* _____

felony count of conviction.  I further understand my supervised release may be revoked if I violate its terms and conditions.  I understand a violation of supervised release increases the possible period of incarceration.

I am pleading guilty as described above because I am in fact guilty and because I believe it is in my best interest to do so and not because of any threats or promises.  There has been no promise made whatsoever by anyone as to what the final disposition of this matter will be.

### 2.  <u>Waiver of Constitutional Rights Upon a Plea of Guilty</u>

I acknowledge I have had all of my rights explained to me and I expressly recognize I have the following constitutional rights and, by voluntarily pleading guilty, I knowingly waive and give up these valuable constitutional rights:

a.  The right to plead not guilty and persist in that plea;
b.  The right to a speedy and public jury trial;
c.  The right to assistance of counsel at that trial and in any subsequent appeal;
d.  The right to remain silent at trial;
e.  The right to testify at trial;
f.  The right to confront and cross-examine witnesses called by the government;
g.  The right to present evidence and witnesses in my own behalf;
h.  The right to compulsory process of the court;
i.  The right to compel the attendance of witnesses at trial;
j.  The right to be presumed innocent;
k.  The right to a unanimous guilty verdict; and
l.  The right to appeal a guilty verdict.

### 3.  <u>Dismissal of Counts</u>

If I comply with my obligations under the plea agreement, the United States will move, at sentencing, that I be dismissed as a defendant in any remaining count(s).  I stipulate and agree the United States had probable cause to bring all the counts in the Indictment which are being dismissed under this agreement, these charges were not frivolous, vexatious or in bad faith, and I am not a "prevailing party" with regard to these charges.  I further waive any claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

*Defendant's Initials:*  _MM_

## B. **SENTENCING PROVISIONS**

### 1. **General Matters**

I understand the determination of what sentence should be imposed, within the confines of any applicable statutory minimums and maximums, is in the sole discretion of the Court subject to its consideration of the United States Sentencing Guidelines ("guidelines" or "U.S.S.G") and the factors set forth at 18 U.S.C. § 3553(a). I understand I will have an opportunity to review a copy of my presentence report in advance of my sentencing hearing and may file objections, as appropriate. I will have an opportunity at my sentencing hearing to present evidence, bring witnesses, cross-examine any witnesses the government calls to testify, and argue to the Court what an appropriate sentence should be within the confines of the terms of this agreement.

I understand I will not be eligible for parole during any term of imprisonment imposed. I understand the Court is not bound by any recommendation or stipulation contained in this agreement and may sentence me up to the statutory maximum. I understand I will not be allowed to withdraw my plea of guilty if the Court disregards the stipulations and/or recommendations set forth in the plea agreement.

I understand if the sentence is more severe than I expected, I will have no right to withdraw my plea. I have discussed sentencing issues with my attorney and realize there is a substantial likelihood I will be incarcerated.

### 2. **Sentencing Guidelines**

I stipulate and agree that all matters pertaining to any of the counts of the charging document(s), including any dismissed counts, are relevant conduct for purposes of sentencing.

The parties agree the 2018 edition of the United States Sentencing Guidelines Manual applies to any guidelines calculation made pertaining to my offense(s). I stipulate that the following guideline section(s) are applicable to my conduct:

| | | | |
|---|---|---|---|
| 2A2.2 | | 14 | Aggravated Assault (Assault Involving Intent to Commit Another Felony) |
| 2A2.2(b)(1) | + | 2 | Offense involved more than minimal planning |
| 2A2.2(b)(3)(A) | + | 3 | Victim sustained bodily injury |

*Defendant's Initials:* _MM_

The United States stipulates that the guideline section(s) set forth in this section should apply to my conduct.

I understand other guideline sections may be applicable to my case and the United States and I will be free to argue whether these sections should or should not apply; to the extent the arguments are not inconsistent with the stipulations, recommendations and terms set forth in this plea agreement.

I understand the United States retains its right to seek a sentence outside of the applicable guideline range.

I agree to accept responsibility for my conduct. If I comply with my obligations under this plea agreement and accept responsibility for my conduct, the United States will recommend the Court grant me a two-level reduction in my offense level, pursuant to U.S.S.G. § 3E1.1(a) and, if applicable, at sentencing, will move that I receive a one-level reduction in my offense level, pursuant to U.S.S.G. § 3E1.1(b), for purposes of any guidelines calculation. However, I stipulate that if I fail to accept responsibility for my conduct or fail to comply with any provision of this plea agreement, I should not receive credit for acceptance of responsibility.

### 3.  <u>Substantial Assistance</u>

I understand the United States retains all of its rights pursuant to Fed. R. Crim. P. 35(b), U.S.S.G. §5K1.1 and 18 U.S.C. § 3553(e). I understand even if I fully cooperate with law enforcement, the United States is under no obligation to make a motion for the reduction of my sentence. I understand if the United States makes a motion for a reduction in my sentence, the Court, after hearing the evidence, will determine how much of a departure, if any, I should be given.

### 4.  <u>Monetary Obligations</u>

#### a.  <u>Special Assessments, Fines and Restitution</u>

I understand persons convicted of crimes are required to pay a mandatory assessment of $100.00 per felony count of conviction. I agree I will submit to the U.S. Clerk's Office, a certified check, money order, or attorney's trust check, made payable to the "Clerk, U.S. District Court" for the total amount due for mandatory assessments prior to entering my plea of guilty.

*Defendant's Initials:*  <u>MM</u>

Page 4 of 13

I agree to pay restitution for the entire scope of my criminal conduct, including, but not limited to, all matters included as relevant conduct. In addition, I agree to pay any restitution required by law, including, but not limited to, amounts due pursuant to 18 USC §§ 2259, 3663, and/or 3663A. I understand and agree a requirement I pay restitution for all of the above-stated matters will be imposed upon me as part of any final judgment in this matter.

I further agree to make good faith efforts toward payment of all mandatory assessments, restitution and fines, with whatever means I have at my disposal. I agree failure to do so will constitute a violation of this agreement. I will execute any documents necessary to release the funds I have in any repository, bank, investment, other financial institution, or any other location in order to make partial or total payment toward the mandatory assessments, restitution and fines imposed in my case.

I fully understand restitution and forfeiture are separate financial obligations which may be imposed upon a criminal defendant. I further understand there is a process within the Department of Justice whereby, in certain circumstances, forfeited funds may be applied to restitution obligations. I understand no one has made any promises to me that such a process will result in a decrease in my restitution obligations in this case.

I understand and agree, pursuant to 18 U.S.C. §§ 3613 and 3664(m), whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for by statute. I understand if the Court imposes a schedule of payments, that schedule is only a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

I agree to grant the United States a wage assignment, liquidate assets, or complete any other tasks which will result in immediate payment in full, or payment in the shortest time in which full payment can be reasonably made as required under 18 U.S.C. § 3572(d).

I expressly authorize the United States Attorney's Office to obtain a credit report on me in order to evaluate my ability to satisfy any financial obligation imposed by the Court.

I agree the following provisions, or words of similar effect, should be included as conditions of probation and/or supervised release: (1) "The defendant shall notify the Financial Litigation Unit, United States Attorney's Office, in writing, of any interest in property obtained, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership or corporation after the execution of this

*Defendant's Initials:* MM

Page 5 of 13

agreement until all fines, restitution, money judgments and monetary assessments are paid in full" and (2) "The Defendant shall notify the Financial Litigation Unit, United States Attorney's Office, in writing, at least 30 days prior to transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations until all fines, restitution, money judgments and monetary assessments are paid in full."

The parties will also jointly recommend that as a condition of probation or supervised release, Defendant will notify the Financial Litigation Unit, United States Attorney's Office, before Defendant transfers any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations.  See 18 U.S.C. § 3664(k), (n).

Regardless of whether or not the Court specifically directs participation or imposes a schedule of payments, I agree to fully participate in inmate employment under any available or recommended programs operated by the Bureau of Prisons.

I agree any payments made by me shall be applied fully to the non-joint and several portion of my outstanding restitution balance until the non-joint and several portion of restitution is paid in full, unless the Court determines that to do so would cause a hardship to a victim of the offense(s).

**b.  <u>Duty to Make Financial Disclosures</u>**

I understand in this case there is a possibility substantial fines and/or restitution may be imposed.  In order to assist the United States as to any recommendation and in any necessary collection of those sums, I agree, if requested by the United States, to provide a complete and truthful financial statement to the United States Attorney's Office, within 30 days of the request or 3 days prior to sentencing, whichever is earlier, detailing all income, expenditures, assets, liabilities, gifts and conveyances by myself, my spouse and my dependent children and any corporation, partnership or other entity in which I hold or have held an interest, for the period starting on January 1st of the year prior to the year my offense began and continuing through the date of the statement.  This financial statement shall be submitted in a form acceptable to the United States Attorney's office.

From the time of the signing of this agreement or the date I sign the financial statement, whichever is earlier, I agree not to convey anything of value to any person without the authorization of the United States Attorney's Office.

*Defendant's Initials:* _MJM_

Page 6 of  13

c. **Understanding of Collection Matters**

I understand:

1. as part of the judgment in this case I will be ordered to pay one or more monetary obligations;
2. payment should be made as ordered by the Court;
3. I must mail payments, by cashier's check or money order, payable to the "Clerk, U.S. District Court" to: 210 Franklin Road, S.W., Suite 540, Roanoke, Virginia 24011; and include my name and court number on the check or money order;
4. interest (unless waived by the Court) and penalties must be imposed for late or missed payments;
5. the United States may file liens on my real and personal property that will remain in place until monetary obligations are paid in full, or until liens expire (the later of 20 years from date of sentencing or release from incarceration);
6. if I retain counsel to represent me regarding the United States' efforts to collect any of my monetary obligations, I will immediately notify the United States Attorney's Office, ATTN: Financial Litigation Unit, P.O. Box 1709, Roanoke, Virginia 24008-1709, in writing, of the fact of my legal representation; and
7. I, or my attorney if an attorney will represent me regarding collection of monetary obligations, can contact the U.S. Attorney's Office's Financial Litigation Unit at 540/857-2259.

## C. **ADDITIONAL MATTERS**

### 1. **Waiver of Right to Appeal**

Knowing that I have a right of direct appeal of my sentence under 18 U.S.C. § 3742(a) and the grounds listed therein, I expressly waive the right to appeal my sentence on those grounds or on any ground. In addition, I hereby waive my right of appeal as to any and all other issues in this matter and agree I will not file a notice of appeal. I am knowingly and voluntarily waiving any right to appeal. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal. *Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived, by law, or a claim that 18 U.S.C. § 2101 is unconstitutional.* I understand the United States expressly reserves all of its rights to appeal. **I agree and understand if I file any court document (except for an appeal based on an issue that cannot be waived, by law, or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any**

*Defendant's Initials:* <u>MM</u>

Page 7 of 13

way, any order imposed in my case such action shall constitute a failure to comply
with a provision of this agreement.

### 2.  Waiver of Right to Collaterally Attack

I waive any right I may have to collaterally attack, in any future proceeding, any
order issued in this matter, unless such attack is based on ineffective assistance of counsel,
and agree I will not file any document which seeks to disturb any such order, unless such
filing is based on ineffective assistance of counsel. **I agree and understand that if I file
any court document (except for an appeal based on an issue not otherwise waived in
this agreement; an appeal based on an issue that cannot be waived, by law; or a
collateral attack based on ineffective assistance of counsel) seeking to disturb, in any
way, any order imposed in my case, such action shall constitute a failure to comply
with a provision of this agreement.**

### 3.  Information Access Waiver

I knowingly and voluntarily agree to waive all rights, whether asserted directly or
by a representative, to request or receive from any department or agency of the United
States any records pertaining to the investigation or prosecution of this case, including
without limitation any records that may be sought under the Freedom of Information Act,
5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §552a.

### 4.  Abandonment of Seized Items

By signing this plea agreement, I hereby abandon my interest in, and consent to the
official use, destruction or other disposition of each item obtained by any law enforcement
agency during the course of the investigation, unless such item is specifically provided for
in another provision of this plea agreement.  I further waive any and all notice of any
proceeding to implement the official use, destruction, abandonment, or other disposition of
such items.

### 5.  Deportation

I understand if I am not a citizen of the United States, I may be subject to deportation
from the United States, denied United States citizenship, and denied admission to the
United States in the future, as a result of my conviction for the offense(s) to which I am
pleading guilty.

*Defendant's Initials:* MM

Page 8 of  13

6.  **Admissibility of Statements**

I understand any statements I make (including this plea agreement, and my admission of guilt) during or in preparation for any guilty plea hearing, sentencing hearing, or other hearing and any statements I make or have made to law enforcement agents, in any setting (including during a proffer), may be used against me in this or any other proceeding. I knowingly waive any right I may have under the Constitution, any statute, rule or other source of law to have such statements, or evidence derived from such statements, suppressed or excluded from being admitted into evidence and stipulate that such statements can be admitted into evidence.

7.  **Additional Obligations**

I agree not to commit any of the following acts:

- attempt to withdraw my guilty plea;
- deny I committed any crime to which I have pled guilty;
- make or adopt any arguments or objections to the presentence report that are inconsistent with this plea agreement;
- obstruct justice;
- fail to comply with any provision of this plea agreement;
- commit any other crime;
- make a false statement;
- fail to enter my plea of guilty by April 30, 2019 – the expiration date of this plea agreement – unless a continuance is agreed to by the United States Attorney's Office and granted by the Court;

8.  **Completion of Prosecution**

The United States Attorney's Office for the Western District of Virginia and the United States Attorney's Office for the Central District of California agree that if I comply with my obligations under this plea agreement and I am sentenced by this Court, they will not charge me with any additional violations of 18 U.S.C. § 2101 for the conduct included in the Statement of Offense.

D.  **REMEDIES AVAILABLE TO THE UNITED STATES**

I hereby stipulate and agree that the United States Attorney's office may, at its election, pursue any or all of the following remedies if I fail to comply with any provision

*Defendant's Initials:* _RWM_

Page 9 of 13

of this agreement: (a) declare this plea agreement void; (b) refuse to dismiss any charges; (c) reinstate any dismissed charges; (d) file new charges; (e) withdraw any substantial assistance motion made, regardless of whether substantial assistance has been performed; (f) refuse to abide by any provision, stipulations, and/or recommendations contained in this plea agreement; or (g) take any other action provided for under this agreement or by statute, regulation or court rule.

In addition, I agree if, for any reason, my conviction is set aside, or I fail to comply with any obligation under the plea agreement, the United States may file, by indictment or information, any charges against me which were filed and/or could have been filed concerning the matters involved in the instant investigation. I hereby waive my right under Federal Rule of Criminal Procedure 7 to be proceeded against by indictment and consent to the filing of an information against me concerning any such charges. I also hereby waive any statute of limitations defense as to any such charges.

The remedies set forth above are cumulative and not mutually exclusive. The United States' election of any of these remedies, other than declaring this plea agreement void, does not, in any way, terminate my obligation to comply with the terms of the plea agreement. The use of "if" in this section does not mean "if, and only if."

## E. **GENERAL PROVISIONS**

### 1. **Limitation of Agreement**

This agreement only binds the United States Attorney's Office for the Western District of Virginia, except as provided in Section C, paragraph 8 above. Otherwise, it does not bind any state or local prosecutor, other United States Attorney's Office or other office or agency of the United States Government, including, but not limited to, the Tax Division of the United States Department of Justice, or the Internal Revenue Service of the United States Department of the Treasury. These individuals and agencies remain free to prosecute me for any offense(s) committed within their respective jurisdictions.

### 2. **Effect of My Signature**

I understand my signature on this agreement constitutes a binding offer by me to enter into this agreement. I understand the United States has not accepted my offer until it signs the agreement.

### 3. **Effective Representation**

*Defendant's Initials:* _MM_

Page 10 of 13

I have discussed the terms of the foregoing plea agreement and all matters pertaining to the charges against me with my attorney and am fully satisfied with my attorney and my attorney's advice.  At this time, I have no dissatisfaction or complaint with my attorney's representation.  I agree to make known to the Court no later than at the time of sentencing any dissatisfaction or complaint I may have with my attorney's representation.

## 4. **Misconduct**

If I have any information concerning any conduct of any government attorney, agent, employee, or contractor which could be construed as misconduct or an ethical, civil, or criminal violation, I agree to make such conduct known to the United States Attorney's Office and the Court, in writing, as soon as possible, but no later than my sentencing hearing.

## 5. **Final Matters**

I understand a thorough presentence investigation will be conducted and sentencing recommendations independent of the United States Attorney's Office will be made by the presentence preparer, which the Court may adopt or take into consideration.  I understand any calculation regarding the guidelines by the United States Attorney's Office or by my attorney is speculative and is not binding upon the Court, the Probation Office or the United States Attorney's Office.  No guarantee has been made by anyone regarding the effect of the guidelines on my case.

I understand the prosecution will be free to allocute or describe the nature of this offense and the evidence in this case and make any recommendations not prohibited by this agreement.

I understand the United States retains the right, notwithstanding any provision in this plea agreement, to inform the Probation Office and the Court of all relevant facts, to address the Court with respect to the nature and seriousness of the offense(s), to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report and to respond to any statements made to the Court by or on behalf of the defendant.

I willingly stipulate there is a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which I am pleading guilty.

*Defendant's Initials:*  MM

Page 11 of 13

I understand this agreement does not apply to any crimes or charges not addressed in this agreement. I understand if I should testify falsely in this or in a related proceeding I may be prosecuted for perjury and statements I may have given authorities pursuant to this agreement may be used against me in such a proceeding.

I understand my attorney will be free to argue any mitigating factors on my behalf, to the extent they are not inconsistent with the terms of this agreement. I understand I will have an opportunity to personally address the Court prior to sentence being imposed.

This writing sets forth the entire understanding between the parties and constitutes the complete plea agreement between the United States Attorney for the Western District of Virginia and me, and no other additional terms or agreements shall be entered except and unless those other terms or agreements are in writing and signed by the parties. This plea agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between the United States and me.

I have consulted with my attorney and fully understand all my rights. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it. I have not been coerced, threatened, or promised anything other than the terms of this plea agreement, described above, in exchange for my plea of guilty. Being aware of all of the possible consequences of my plea, I have independently decided to enter this plea of my own free will, and am affirming that agreement on this date and by my signature below.

Date: _____5/3/19_____          _____
                                **Michael Paul Miselis, Defendant**

*Defendant's Initials:* _____

Page 12 of 13

I have fully explained all rights available to my client with respect to the offenses listed in the pending charging document(s).  I have carefully reviewed every part of this plea agreement with my client.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

If I will continue to represent my client regarding the United States' efforts to collect any monetary obligations, I will notify the United States Attorney's Office, ATTN: Financial Litigation Unit, P.O. Box 1709, Roanoke, Virginia 24008-1709, in writing, of the fact of my continued legal representation within 10 days of the entry of judgment in this case.

Date: 5/2/19

**Warren "Gene" Cox, Esq.**
**Counsel for Defendant**

Date: 5-2-19

**Thomas T. Cullen**
**United States Attorney**

Date: 5/2/19

**Christopher R. Kavanaugh**
**Assistant United States Attorney**

*Defendant's Initials:* MM

Page 13 of 13