1     **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3     **HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

4

5     UNITED STATES OF AMERICA,          )
                                         )
6                    Plaintiff,          )    **CERTIFIED TRANSCRIPT**
                                         )
7            vs.                         )
                                         )    Case No.
8     1) ROBERT PAUL RUNDO,              )    2:18-cr-00759-CJC
      2) ROBERT BOMAN,                   )
9     4) AARON EASON,                    )
                                         )
10                   Defendants.         )
      _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    MOTION HEARING

16                MONDAY, JUNE 3, 2019

17                     2:05 P.M.

18              LOS ANGELES, CALIFORNIA

19

20

21

22

23    _____

24              **DEBBIE HINO-SPAAN, CSR 7953, CRR**
              FEDERAL OFFICIAL COURT REPORTER
              350 WEST 1ST STREET, SUITE 4455
25              LOS ANGELES, CA 90012-4565
                   dhinospaan@yahoo.com

```
 1                        APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4             NICOLA T. HANNA
               United States Attorney
 5             BY:  DAVID T. RYAN
                    GEORGE EMEL PENCE IV
 6             312 North Spring Street
               Suite 1200
 7             Los Angeles, California 90012
               (213) 894-2253
 8
      FOR THE DEFENDANT ROBERT PAUL RUNDO:
 9
               HILARY POTASHNER, FEDERAL PUBLIC DEFENDER
10             BY:  JULIA DEIXLER
               Deputy Federal Public Defender
11             321 East Second Street
               Los Angeles, California 90012
12             (213) 894-7550

13    FOR THE DEFENDANT ROBERT BOMAN:

14             LAW OFFICES OF PETER C. SWARTH
               BY:  PETER C. SWARTH, ESQ.
15             6520 Platt Avenue
               Suite 557
16             West Hills, California 91307
               (818) 887-8800
17
      FOR THE DEFENDANT AARON EASON:
18
               McNICHOLAS LAW OFFICE LLC
19             BY:  JOHN NEIL McNICHOLAS, ESQ.
               464 Palos Verdes Boulevard
20             Redondo Beach, California 90277
               (310) 545-0780
21

22

23

24

25
```

1      **LOS ANGELES, CALIFORNIA; MONDAY, JUNE 3, 2019**

2                      **2:05 P.M.**

3                       **- - -**

4            THE COURTROOM DEPUTY:  Calling Item No. 2,

02:05PM  5   CR 18-00759-CJC, *United States of America versus, No. 1, Robert*

6   *Paul Rundo; United States of America versus Robert Boman;*

7   *United States of America versus Aaron Eason.*

8            Counsel, please state your appearances.

9            MR. RYAN:  Good afternoon, Your Honor.  David Ryan,

02:05PM 10   George Pence for the United States.

11            THE COURT:  Hello, Mr. Ryan.

12            Hello, Mr. Pence.

13            MS. DEIXLER:  Good afternoon, Your Honor.  Deputy

14   Federal Public Defender Julia Deixler on behalf of Paul Rundo,

02:05PM 15   who is in custody.

16            THE COURT:  Hello, Ms. Deixler.

17            Hello, Mr. Rundo.

18            MR. SWARTH:  Good afternoon, Your Honor.  Peter

19   Swarth on behalf of Robert Boman.  He's present in court in

02:05PM 20   custody.

21            THE COURT:  Hello, Mr. Boman.

22            Hello, Mr. Swarth.

23            MR. McNICHOLAS:  Good afternoon, Your Honor.  John

24   McNicholas on behalf of Mr. Aaron Eason, who's present on bond.

02:05PM 25            THE COURT:  Hello, Mr. Eason.

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 02:06PM | 5 |

1          Hello, Mr. McNicholas.

2          Well, I issued the tentative order.  As you can

3     gather, I focused on the *Brandenburg* issue and whether the Riot

4     Act was constitutional given that I believe it criminalizes

5     violent speech, even speech that's not imminent.

6          It was the defense motion.  I don't know if there's

7     anything, Ms. Deixler, you'd like to add to this point.

8          MS. DEIXLER:  At this time no, Your Honor.  We'll

9     submit on the tentative and on our written papers.  Thank you.

10          THE COURT:  So then I guess I'll turn it over to

11     Mr. Ryan and Mr. Pence.

12          MR. RYAN:  Thank you, Your Honor.  You prefer us up

13     here?

14          THE COURT:  Please.

15          MR. RYAN:  Aimed to focus on the Court's tentative,

16     of course, I suppose I would focus on three points, Your Honor,

17     in response to reviewing the Court's tentative.  The first is

18     there are allegations in the Complaint, both throughout the

19     Indictment, that focus on the defendant's preparation for and

20     personal commission of acts of violence.  I recognize the

21     Court's point, that there are other overt acts in the

22     conspiracy count that are not themselves preparation for or

23     commission of acts of violence.

24          Those overt acts in the conspiracy count are not

25     overt acts that themselves establish the overt act element of

the Riot Act charged in Count Two.  Rather, those overt acts in
the conspiracy count that are expressive evidence the
defendant's intent to prepare for and engage in acts of
violence.

02:07PM          Much like in a drug conspiracy count where the
government may allege a number of what would otherwise be
innocuous acts that are not themselves drug transactions but
that evidence the defendant's intent as part of the conspiracy
to engage in a drug transaction.

02:08PM          So it's not the government's position that those
expressive overt acts would, if not combined with other more
direct preparation for and commission of violence, constitute
the commission of this offense.  And I believe I understand the
Court's tentative to be stating that even if all that was done
02:08PM was the making of such statements, that would constitute
commission of the offense.  And that's, I believe, No. 1, not
the government's position; No. 2, not required to address the
sufficiency of this Indictment because there are also other
overt acts that are -- that are direct preparation for and
02:08PM commission of violence.

         THE COURT:  Well, maybe my analysis wasn't as clear
as it should have been.  I was focusing on a facial challenge
to the Riot Act, not an as-applied.  But in my discussion and
analysis of the facial challenge, I do refer to many of the
02:09PM overt acts that are alleged in the Indictment.  But the

```
         1   bottom-line problem I'm having is that the Riot Act
         2   criminalizes, I believe, all violent speech in connection with
         3   the riot.  And it doesn't have to be imminent.  And I don't
         4   think that satisfies Brandenburg.  That's the problem I'm
02:09PM  5   having.
         6              MR. RYAN:  I'll respond directly to that point, if I
         7   may, Your Honor.
         8              So No. 1, as I believe Your Honor noted in the
         9   tentative, Dellinger and all the -- Shead and the other cases
02:09PM 10   address that issue by construing the overt acts narrowly.  I
        11   believe Your Honor's tentative would simply reject those narrow
        12   constructions and go the other way --
        13              THE COURT:  I think that's a fair -- I'm just trying
        14   to be judicious in my language.  I just don't understand their
02:10PM 15   analysis quite frankly.  And I just think it's playing
        16   syntactical and grammatical gymnastics with plain and clear
        17   wording of the statute.  I think that statute is very broad.
        18              And a little bit of historical context is, I think,
        19   important.  That was enacted on a very turbulent time during
02:10PM 20   the Civil Rights Act in Vietnam era.  And I think Congress were
        21   just trying to put an end to the senseless violence that was in
        22   destruction that was happening.  Then Brandenburg came on
        23   after, and I realize that the Seventh Circuit looked at the
        24   constitutionality of the statute, but I'm not bound by that and
02:10PM 25   I just disagree with their analysis.  I think the dissent got
```

1    it right.

2         MR. RYAN:  I would, of course, point out that

3    *Dellinger* was, of course, after *Brandenburg* as well as the

4    other cases that agreed with *Dellinger*, where after *Brandenburg*

02:11PM  5    did expressively address *Brandenburg*.  But I understand

6    Your Honor's point there.

7         I think the other point that I would make is, as I

8    understand it, the concern about overbreadth is primarily

9    focused on the acts prohibited by the statute that are

02:11PM 10    inciting, promoting, encouraging riots or acts of violence in

11    furtherance of riots, which would seem on their face to be

12    expressive or possibly expressive acts.  There are other

13    provisions of the Anti-Riot Act that prescribe only overt acts

14    which are committed with the intent to directly engage in

02:11PM 15    violence, not express, advocate that others do so, but to do so

16    oneself.

17         And, of course, if the Court found the provisions

18    that deal with speech or expressive conduct to be overbroad, I

19    believe the remedy would be to strike those provisions and to

02:12PM 20    not strike the inoffensive provisions of the statute that focus

21    not on expression, but on taking actions to prepare for and

22    engage in violence oneself.

23         So, in other words, the Court could -- if the Court

24    were so inclined and felt it was necessary to strike numerous

02:12PM 25    provisions of the statute -- intent, incite, promote,

1    encourage -- those are categorically different verbs, and those

2    are -- that is a different analysis than the other prescribed

3    verbs or actions which are to prepare for -- or most

4    concretely, to carry out acts of violence in furtherance of.

02:12PM  5          So an overt act taken with the intent to carry out

6    violence is not an expression, let alone protected expression.

7    That's action.  And a number of the allegations in this

8    Indictment made clear that that is what -- what is charged here

9    and what would be proven here.

02:13PM  10         THE COURT:  Well, I'd like to hear Ms. Deixler's

11   point on that.  But I still think you have a problem with the

12   way the statute is structured, even adopting your argument,

13   because the wording is that you travel interstate commerce or

14   you use a facility of interstate commerce with the intent, and

02:13PM  15   then it says "to incite a riot."  So you use the interstate

16   facility with the mind, "Okay, I'm going to go to Berkeley and

17   pound on Antifa," all right?  And -- but there's no imminent

18   violence there yet.

19         Now, the riot that you're intending to cause, that

02:13PM  20   has a clear and present danger of property damage or bodily

21   injury.  I get that.  But that violence isn't imminent yet.

22   And then you have to also have an overt act committed for the

23   purpose of that.  And again, the overt act doesn't have to

24   create imminent violence the way the statute's written.

02:14PM  25         MR. RYAN:  Again, to the extent I understand

**UNITED STATES DISTRICT COURT**

```
 1    Your Honor's reading of the statute that way, Dellinger and the
 2    other cases address that problem by requiring the imminence
 3    that the overt acts create the imminent risk.  But I understand
 4    Your Honor to be reading the statute to disagree with that
02:14PM  5    reading.  But even if Your Honor reads it that way, that
 6    analysis about whether the overt acts create an imminent risk
 7    of violence, that's the Brandenburg test.  And you're there
 8    only if the conduct that's being prescribed is expressive in a
 9    First Amendment analysis.
02:14PM 10            Under the provision that says we're not about
11    inciting, encouraging, promoting riot, it's overt acts taken to
12    prepare oneself for violence.  Then we're not in First
13    Amendment analysis at all because it's not prescribing
14    expressive conduct let alone protective expressive conduct.
02:15PM 15            THE COURT:  So you're basically saying, "Go ahead,
16    Judge, delete Paragraph 1, 'to incite a riot.'  Delete
17    Paragraph 2, 'organize, promote, encourage, participate or
18    carry on a riot.'  Keep 3, 'to commit any act of violence in
19    furtherance of a riot.'  4, 'to aid or abet any person in
02:15PM 20    inciting'" -- I assume you're going to get rid of that.  So
21    you're asking me to delete three of the subparagraphs?
22            MR. RYAN:  Well, of course, I would say I'm not
23    asking Your Honor to, but if Your Honor is inclined to have a
24    concern about the expressive -- or what Your Honor would be
02:15PM 25    concluding are expressive or protected conduct or speech that's
```

1   covered by the statute, yes.  Although I would say that within

2   No. 2 in that list of verbs there, it includes not only

3   "promote," "encourage," "incite," but also "carry on a riot."

4   So that's -- that is a verb of action, commission of violence

02:16PM 5   oneself as opposed to expressing or advocating or inciting

6   others to do so.

7           But in short, Your Honor, yes, I think so.  I think

8   that's what the Supreme Court asks -- or directs courts to do

9   is strike whenever at all possible the offending provisions of

02:16PM 10  the statute and not strike other provisions of the statute.

11  And I think there is a categorical difference here between some

12  provisions of the statute which are, as Your Honor said, set

13  forth in different paragraphs and so readily severable that

14  focus on expression and others -- or arguably focus on

02:16PM 15  expression and others that clearly do not.

16          THE COURT:  I'm still even struggling if I do all

17  the dissection that you're asking me to do of the statute, it's

18  whoever travels in interstate commerce or uses any facility of

19  interstate commerce with the intent to carry on a riot is what

02:17PM 20  you're saying or commit any act of violence.  It's still not

21  requiring any imminent violent act.

22          MR. RYAN:  Of course.  The crime is not completed

23  when you just travel or use the facility.  It would be you have

24  Part A and then --

02:17PM 25          THE COURT:  And then you have the overt act.  But

that just says and you perform an overt act for any purpose
specified in carrying on a riot.  And again, I don't see the
imminent violence with that.

MR. RYAN:  I guess my point would be you don't need
the imminence there because you're not under *Brandenburg*.
You're not regulating protected speech at that point.
Preparing to engage in a riot, taking overt acts to do so is
not expressive conduct whatsoever let alone protected conduct.
So you're simply not regulating speech under the First
Amendment at that point, and so you don't have the analysis at
all.  Because I would recognize that under Your Honor's
reading, if some of the verbs don't require the imminence, the
others don't require it either.  I understand that to be
Your Honor's point.

So slicing -- or severing the provisions would not
solve that problem, but what it would do is remove the statute
from the problematic area of the First Amendment altogether,
which I understand to be what Your Honor's primary concern is,
is the statute should be, as I understand Your Honor's point,
more narrowly focused on preparing for violence, not speech.
And I think that can be done actually quite readily given the
way the statute is broken up into subparagraphs.

THE COURT:  And try me again on how you can get
there.  So let's just -- I know the defendants dispute these
characterization of the facts, but let's just assume, and you

can take -- let's take Mr. Eason.  Mr. Eason travels interstate
commerce with the intent to commit a battery, assault, some
Antifa.  That's his plan.  He's been training in San Clemente
to do it.  He's ready to go.  All right.  He travels up to
02:19PM  Berkeley.  So this requirement of traveling in interstate
commerce or using interstate facilities to rent the van, that's
satisfied.  Okay.  But he hasn't committed a crime yet, just
thinking.  You would agree?

MR. RYAN:  I would not agree that all he has done is
02:19PM  thinking.  But I would agree the crime is not completed yet.

THE COURT:  But everything he's done can't be a
crime, because you got a problem with *Brandenburg;* right?  So
then tell me what saves you in the statute.

MR. RYAN:  Because then the allegation would be in
02:20PM  evidence -- you know, would be that -- then the defendant takes
an overt act for the purpose of carrying out a riot or for the
purpose of committing acts of violence in furtherance of a
riot, namely, the acts of violence in furtherance of the riot,
which is -- I know we're not focused on the Indictment, but
02:20PM  those allegations are included in the Indictment.

But that would be the final part of that sentence.
He then carries out acts of violence in furtherance of the
riot.  That is the overt act.  Even if it were construed that
narrowly or even if the allegations had to be stripped out to
02:20PM  just those, we do have that here.  That's the Court's theory

1   over this case.  But more broadly, nothing about that is

2   expressive let alone protected.

3           THE COURT:  Well, I hear what you're saying, but

4   that's why I said I didn't focus on an implied challenge.  Just

02:21PM 5   the fact that you can create a scenario where it would be

6   constitutional and not a First Amendment *Brandenburg* problem,

7   that doesn't save the statute.

8           MR. RYAN:  I'm not sure that I would agree with

9   that, Your Honor.  If you can sever the statute in a way that

02:21PM 10   creates -- that leaves a statute that doesn't have a

11   *Brandenburg* problem and that allows for prosecutions of the

12   remaining provisions that doesn't have a Brandenburg problem, I

13   think that is what the Court is called upon to do.

14           THE COURT:  All right.

02:21PM 15           MR. RYAN:  And we cited that case in our papers, the

16   *Ayotte*, A-y-o-t-t-e, Supreme Court case, where a statute can

17   reasonably be severed.  That's what should be done rather than

18   having statute stricken as a whole.  And our position would be

19   that that is what the Court at most should do here.  And if the

02:22PM 20   Court did that here, what would follow is to deny the motion

21   because the allegations in the Complaint -- in the Indictment

22   would satisfy the remaining action focused -- violence-focused

23   provisions in the statute.

24           THE COURT:  All right.  Well, I appreciate your

02:22PM 25   argument.  I'll give you the last word after I hear from the

1    defense.

2              MR. RYAN:  Thank you, Your Honor.

3              MS. DEIXLER:  Thank you, Your Honor.  I will focus

4    on the last point made by the government there, which, I think,

02:22PM  5    is problematic for several reasons that the Court has alluded

6    to already.  But first, I think the Court cannot simply take a

7    pen to the statute at the instruction of the government.  The

8    narrowing construction, a court can only do so when it is clear

9    from the text of the statute as to how to delineate it.  And I

02:22PM 10    don't think that slicing and dicing these terms which don't --

11    some of which do not have a clear meaning really falls so

12    neatly into the categories that the government suggests.

13              For example -- and I think there's two -- there's

14    two sort of fundamental issues with it.  First, I don't believe

02:23PM 15    that these terms are necessarily relegated to expressive

16    conduct or protective conduct or not.  There are plenty of ways

17    that I can think of that one could, quote/unquote, "act with

18    the intent to participate in a rally" as the government -- or

19    "in a riot" as the government is construing that statute that

02:23PM 20    involves their own self-expression about their plans, about

21    their ideology or that involves their ability to assemble with

22    others.

23              The conduct alleged in the Indictment itself

24    involves one person sending communications over a facility of

02:24PM 25    interstate commerce to meet up with someone which the

government has claimed is with the unlawful intent that falls
under the Riot Act.  And that is what they believe to be a verb
that would be linked to action, but does not necessarily
exclude protected speech assembly and association that this
statute so clearly covers.

Even if it did, and even if we were able to somehow
limit these terms to say, okay, there's only -- you can only
outlaw use of interstate commerce or travel and then an overt
act with the intent to commit any act of violence in
furtherance of a riot, again, there is the attenuation problem
because the statute does not actually prohibit the acts in
furtherance of the violence.

The statute prohibits use of a communication with
that prohibited intent and then any overt act.  It needn't be a
substantial step towards violence, it may not be related
violence.  I agree with the Court's interpretation that the
gymnastics of the *Dellinger* court and the *In re Shead* court did
just are simply not supported by the statute, because there is
absolutely no requirement for a temporal connection that cannot
be read into the language as it exists now.

So I don't see any way for the Court to apply a
narrowing effect here.  And even if there was one that we could
consider hypothetically, it would still cover a substantial
amount of protected activity.

THE COURT:  All right.  Any of the other defense

1   counsel want to be heard?

2           MR. McNICHOLAS:  Your Honor, I just want to briefly

3   exemplify the point that the government wants to take the

4   alleged offense and put it out in that park in Berkeley rather

02:25PM  5   than where defense really is alleged to occur, which is at the

6   individual's computer, at the rental car counter, on the

7   highway.  Because it's about communication.  It's about travel.

8   That is the crime.

9           What happens later on in overt acts, going to the

02:26PM 10   coffee shop could be an overt act.  Going to the store could be

11   an overt act.  There is no need for a riot.  There's -- a riot

12   is not even necessary for this offense.  But it is about

13   communication.  It is about expression.  It is also about

14   assembly.

02:26PM 15           And we agree wholeheartedly with the issue of the

16   *Brandenburg* test is the law of the land.  It absolutely applies

17   even with *Dellinger.*  And *Dellinger* happened before *Claiborne*

18   was decided as well -- *Claiborne Hardware*.  Because of those

19   individuals, they technically would have been in violation of

02:26PM 20   the Riot Act as well.  But that was in 1982.  And they weren't

21   charged with the Riot Act.

22           So those were the points that we wanted to make,

23   Your Honor.  They did not address the hecklers.  That was also

24   a strong part of our analysis.

02:27PM 25           THE COURT:  All right.

1              MR. SWARTH:  I have nothing to add.

2              THE COURT:  Mr. Ryan, anything further to add, sir?

3              MR. RYAN:  Very briefly, Your Honor.  Can I have one

4    minute, Your Honor?

02:27PM  5         THE COURT:  You may.

6              MR. RYAN:  I hope this is not repetitive,

7    Your Honor, but counsel mentions the overt acts set forth in

8    the conspiracy count in the Indictment.  And I do just want to

9    highlight for the Court's attention the fact that the overt

02:28PM 10   acts charged for the purpose of the conspiracy that evidence

11   the defendant's intent has no bearing on this analysis.

12   Because again, I think it's commonplace for the overt acts set

13   forth in the conspiracy count to include conduct that is not

14   itself criminal.  Whether it's expressive, not expressive, it's

02:28PM 15   simply evidencing the defendant's intent.

16              So all the overt acts set forth that Your Honor

17   discusses at some length and that defense counsel points out, I

18   think that's not what the analysis is about because those

19   are -- it is not claimed in the Indictment that those are the

02:28PM 20   overt act described in the Anti-Riot Act.  Those are overt acts

21   for purposes of the conspiracy.

22              So this court could -- I think that is an issue that

23   moves us off path because the theory of the -- the government's

24   theory under the statute is that the overt acts charged in the

02:29PM 25   Indictment most fundamentally and narrowly construed would be

1    the commission of the acts of violence.  And one could strike

2    all the other overt acts out of the Indictment and be left with

3    the commission of the acts with preparation for acts of

4    violence and commission of acts of violence.  The inclusion of

02:29PM  5    other overt acts doesn't, I think, undermine or suggest

6    anything otherwise.  Those are overt acts in the conspiracy

7    count.

8            THE COURT:  I think where we're butting heads,

9    Mr. Ryan, is I just don't think that is the correct

02:29PM 10    constitutional analysis of the statute.  I am aware that just

11    because you can conceive of facts, even those that are alleged

12    where the statute would be constitutional, you have to look at

13    the statute as a whole and does it overcriminalize protected

14    speech.  And that's what I'm having a big problem with.  I

02:30PM 15    think the statute -- you can put whatever gloss you want on

16    it -- the statute was designed to go after violent speech.  And

17    I just don't think that's constitutional.

18            MR. RYAN:  So I would make two final points,

19    Your Honor.  I think, No. 1, even if that's true, and I

02:30PM 20    recognize the point that facial overbreadth is what the Court

21    looks at as well as well as looking at the Indictment itself,

22    there is also that other canon of construction Supreme Court

23    law, quote:

24            "Generally speaking, when confronting a

02:30PM 25        constitutional flaw in a statute, we try to limit

UNITED STATES DISTRICT COURT

1    the solution to the problem.  We prefer to enjoin

2    only the unconstitutional applications of a statute

3    while leaving other applications in force or to

4    sever its problematic portions while leaving the

02:30PM 5    remainder intact."

6         I think the statute presents a way to do that that

7    gets us out of the First Amendment arena altogether.  I think

8    that would resolve the Court's concern.  And the Court could

9    construe the overt acts and apply them to the other

02:31PM 10   non-expressive let alone protected expression verbs set forth

11   in the statute and to go above and beyond that and strike the

12   entire statute when there is a way to save portions of the

13   statute and when saving those portions would, I believe, create

14   the result that Your Honor suggests would have been a proper

02:31PM 15   one in the first place, then that's the proper course that the

16   government would propose here.

17        And I don't believe it would be the Court adopting a

18   narrowing construction at government's instruction.  It would

19   be the Court adopting a narrowing construction because that's

02:31PM 20   what the Supreme Court has directed courts do, not when it

21   is -- not only when doing so is obvious, but whenever possible,

22   when it's possible.  When the Court can possibly find a way to

23   do it, that's what courts are to do.  And we think that is more

24   than possible here.  It's actually apparent on the face of the

02:32PM 25   statute how to do that to avoid all First Amendment problems.

No First Amendment balancing.  No expressive conduct.

     With that, Your Honor, one final point I would make.  To the extent the Court does go forward with its tentative to grant the motion, the government would request a 14-day stay of that decision to have time to consider and seek approval for an appeal.  Thank you, Your Honor.

          THE COURT:  And I appreciate your argument and your request.  I'll give the defense, I guess, an opportunity to respond one more time and then, also, the request that I stay my order for 14 days.  It is your record.

          MS. DEIXLER:  Thank you, Your Honor.

          And not to put too fine a point on the allegations in this case, but the allegations in Count Two in the Indictment.  The Anti-Riot Act allegation here charged the defendants with using a facility of interstate commerce including but not limited to the Internet and telephone and committing one overt act thereafter, which is traveling together to Berkeley, California, to engage in a riot.  So I think even in the government's example of how this can be directed towards only violent action, I think it falls short because we can imagine ways in which all of these verbs in the subsections here cover lawful assembly, association, and speech.

          With respect to the request for a stay, Your Honor, I understand that the U.S. Attorney's Office has an internal

```
    1   process to evaluate whether or not to appeal.  I would ask in
    2   the interim that my client, Mr. Rundo, be released on his own
    3   recognizance especially given the Court's ruling today.
    4               THE COURT:  Okay.
02:33PM 5           MR. SWARTH:  Your Honor, if I may, I would make the
    6   same request on behalf of Robert Boman.
    7               THE COURT:  Very well.
    8               Mr. McNicholas?
    9               MR. McNICHOLAS:  Your Honor, Mr. Eason is not
02:34PM 10  prejudiced like the other two defendants are.  So we wouldn't
   11   have the same objection.
   12               THE COURT:  All right.  Well, I am going to make my
   13   tentative order the final order of the Court.  And I'm not
   14   going to stay my order because I feel confident in my analysis.
02:34PM 15  I take no offense that the government wants to immediately
   16   appeal me, and best of luck to them.  But once I reach the
   17   conclusion I did, I just don't feel comfortable having the
   18   charges pending anymore.  So the charges are dismissed.
   19               Mr. Rundo and Mr. Boman, you're going to be released
02:34PM 20  forthwith.  I just ask -- and it's a request -- renounce and
   21   put aside violence and hate.  That's the best thing for you,
   22   your family and, candidly, your community.  This is not -- I
   23   don't care what idiots Antifa are being.  I've seen the videos.
   24   They're out of control.  They're idiots.  But violence on
02:35PM 25  violence doesn't achieve anything.
```

UNITED STATES DISTRICT COURT

1         You're both young men.  You got a lot to live for.

2  You don't want to be in custody for years.  So you'll both be

3  released forthwith.

4         Mr. Eason, you're already out of custody, so your

02:35PM  5  bond is exonerated.

6         And my same comments to Mr. Rundo and Boman apply to

7  you, sir.

8         THE DEFENDANT:  Thank you, Your Honor.

9         THE COURT:  Mr. Laube, I don't think, is here, but I

02:36PM 10  assume there will be further legal proceedings in his case in

11  light of my ruling.

12         Is there anything further we need to discuss?

13         MR. RYAN:  Not from the government, Your Honor.

14         MR. McNICHOLAS:  No, Your Honor.

02:36PM 15         MS. DEIXLER:  No, Your Honor.

16         MR. SWARTH:  No.

17         THE COURT:  Thank you.

18         THE COURTROOM DEPUTY:  All rise.

19             **(Proceedings concluded at 2:36 p.m.)**

20                  --oOo--

21

22

23

24

25

1              *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  June 12, 2019*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*
                              _____

20                              *Debbie Hino-Spaan, CSR No. 7953*
                              *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**