**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, | No. 19-50189 |
| v. | D.C. No. 2:18-cr-00759-CJC-1 |
| ROBERT PAUL RUNDO; ROBERT BOMAN; TYLER LAUBE; AARON EASON, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted November 17, 2020
Pasadena, California

Filed March 4, 2021

Before: Ferdinand F. Fernandez and Richard A. Paez,
Circuit Judges, and Jon S. Tigar,[*] District Judge.

Per Curiam Opinion;
Partial Concurrence and Partial Dissent by
Judge Fernandez

---

[*] The Honorable Jon S. Tigar, United States District Judge for the
Northern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed the district court's dismissal of an indictment charging four defendants with conspiracy to violate the Anti-Riot Act and three of those defendants with substantively violating the Act, in a case in which the district court held that the Act was unconstitutional on the basis of facial overbreadth under the First Amendment.

The indictment charges that the defendants are members of the "Rise Above Movement" or "RAM," an organization that represents itself "as a combat-ready, militant group of a new nationalist white supremacy and identity movement." RAM members post videos and pictures online of their hand-to-hand combat training, often interspersed with videos and pictures of their assaults on people at political events and messages supporting their white supremacist ideology.

Applying *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam), the panel held that most of the provisions of the Act are reasonably construed as constitutional. The panel found no violation of the First Amendment in the Act's overt act provisions; its definition of a riot; or in subparagraphs (1), (2), and (4) of 18 U.S.C. § 2101(a), except insofar as subparagraph (2) prohibits speech tending to "organize," "promote," or "encourage" a riot, and 18 U.S.C. § 2102(b) expands the prohibition to "urging" a riot and to mere

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

advocacy.   The panel rejected the contention that the provisions of the Act violate the heckler's veto doctrine.

The panel held that by prohibiting protected speech tending to "organize," "promote" or "encourage" a riot and by expanding that prohibition to "urging" a riot and to mere advocacy, the Act criminalizes a substantial amount of protected speech.

The panel held that the unconstitutional provisions of the Act are severable, and that with such severance, the Act is not facially overbroad, but rather prohibits unprotected speech that instigates an imminent riot, unprotected conduct such as committing acts in furtherance of a riot, and aiding and abetting of that speech or conduct.

The panel remanded for further proceedings consistent with the opinion.

Concurring in part and dissenting in part, Judge Fernandez would not strike the concepts of organizing and urging from the Act.

## COUNSEL

Elana Shavit Artson (argued), David T. Ryan, and George E. Pence, Assistant United States Attorneys; Christopher D. Grigg, Chief, National Security Division; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellant.

4                    UNITED STATES V. RUNDO

Brianna F. Mircheff (argued), Deputy Federal Public
Defender; Office of the Federal Public Defender, Los
Angeles, California; Peter Carl Swarth, West Hills,
California; Jerome J. Haig, Torrance, California; John Neil
McNicholas, Redondo Beach, California; for Defendants-
Appellees.

Andrew Allen, Belvedere, California, for Amicus Curiae Free
Expression Foundation Inc.

## OPINION

PER CURIAM:

The United States (hereafter, "the government") appeals
from the district court's dismissal of the indictment against
Defendants Robert Paul Rundo, Robert Boman, Tyler Laube,
and Aaron Eason.[1]   The Defendants were charged with
conspiracy to violate the Anti-Riot Act,[2] and Rundo, Boman,
and Eason were also charged with substantively violating the
Act.  The district court held that the Act was unconstitutional
on the basis of facial overbreadth under the First Amendment
to the United States Constitution.[3]   Because the Act is not
facially overbroad except for severable portions, we reverse
and remand.

---

[1] Hereafter, unless otherwise indicated, we will refer to them
collectively as "the Defendants."

[2] 18 U.S.C. §§ 2101–2102 (hereafter, "the Act").

[3] The district court did not reach the Defendants' alternative
arguments.  Nor do we.  *See, e.g.*, *Amelkin v. McClure*, 205 F.3d 293, 296
(6th Cir. 2000).

BACKGROUND

The indictment charges that the Defendants are members of the "Rise Above Movement" or "RAM," an organization that represents itself "as a combat-ready, militant group of a new nationalist white supremacy and identity movement." RAM members post videos and pictures online of their hand-to-hand-combat training, often interspersed with videos and pictures of their assaults on people at political events and messages supporting their white supremacist ideology.

Count One of the indictment charged the Defendants with conspiring and agreeing to riot. It alleged that in furtherance of the conspiracy, Rundo, Boman, and Eason recruited new members to join RAM, which conducted combat training to prepare them to commit violent acts at political rallies. The Defendants participated in that combat training and traveled to political rallies in Huntington Beach, California, and Berkeley, California, where they attacked people. Rundo also traveled to a political rally in San Bernardino, California, where he confronted and pursued people. For RAM recruitment purposes, Rundo and Boman posted information about those violent acts on social media.

Count Two of the indictment charged Rundo, Boman, and Eason with aiding and abetting one another in using facilities of interstate commerce (the internet, a telephone, and a credit card) with intent to riot from March 27, 2017, through April 15, 2017, and committing additional overt acts for that purpose. During that time, Eason used a credit card to rent a van and transported Rundo, Boman, and other RAM members to the Berkeley rally. Eason also used text messages to recruit individuals to attend combat training and the rally.

Laube pled guilty to the only charge against him, Count One. The remaining defendants moved to dismiss the indictment. The district court granted their motion and dismissed the indictment based on its conclusion that the Act is facially overbroad. Laube thereafter moved to withdraw his guilty plea and to dismiss the indictment against him for the same reason. The district court granted Laube's motion. This appeal followed.

JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3731.

We review de novo the dismissal of an indictment on the ground that the underlying statute is unconstitutional. *See United States v. Afshari*, 426 F.3d 1150, 1153 (9th Cir. 2005).

DISCUSSION

"[T]he constitutional guarantees of free speech and free press" protect "advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430 (1969) (per curiam).[4] The Defendants contend that the Act is facially overbroad in violation of the First Amendment because it prohibits advocacy that does not incite an imminent riot.

---

[4] Hereafter, sometimes referred to as "*Brandenburg*'s imminence requirement."

The Defendants have the burden of establishing from both "the text" language and "actual fact" that the Act is substantially overbroad. *Virginia v. Hicks*, 539 U.S. 113, 122, 123 S. Ct. 2191, 2198, 156 L. Ed. 2d 148 (2003) (citation omitted). We first construe the provisions of the Act. *See United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838, 170 L. Ed. 2d 650 (2008). "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *Id.* at 292, 128 S. Ct. at 1838. However, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293, 128 S. Ct. at 1838 (citation and internal quotation marks omitted). Thus, we construe the Act as constitutional if we can reasonably do so. *See United States v. Harriss*, 347 U.S. 612, 618, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954).[5] If there is a constitutional infirmity, we must consider whether the Act is severable and, if so, invalidate only the unconstitutional portions. *See New York v. Ferber*, 458 U.S. 747, 769 n.24, 102 S. Ct. 3348, 3361 n.24, 73 L. Ed. 2d 1113 (1982).

The Act does have some constitutional defects. However, those defects are severable from the remainder of the Act. Thus, the district court erred when it dismissed the indictment. We will explain.

---

[5] *See also Skilling v. United States*, 561 U.S. 358, 408–09, 130 S. Ct. 2896, 2931, 177 L. Ed. 2d 619 (2010); *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 616–18, 93 S. Ct. 2908, 2916, 2918–19, 37 L. Ed. 2d 830 (1973); *United States v. Cassel*, 408 F.3d 622, 634–35 (9th Cir. 2005); *cf. Iancu v. Brunetti*, __ U.S. __, __, 139 S. Ct. 2294, 2301, 204 L. Ed. 2d 714 (2019); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811–17 (9th Cir. 2013) (per curiam).

I.  *Most of the provisions of the Act are reasonably construed as constitutional*

At its core, the Act states:

> (a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent–

> (1) to incite a riot; or

> (2) to organize, promote, encourage, participate in, or carry on a riot; or

> (3) to commit any act of violence in furtherance of a riot; or

> (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph–

> Shall be fined under this title, or imprisoned not more than five years, or both.

> (b) In any prosecution under this section, proof that a defendant engaged or attempted to engage in one or more of the overt acts described in subparagraph (A), (B), (C), or (D) of paragraph (1) of subsection (a) and (1) has traveled in interstate or foreign commerce, or (2) has use of or used any facility of interstate or foreign commerce, including but not limited to, mail, telegraph, telephone, radio, or television, to communicate with or broadcast to any person or group of persons prior to such overt acts, such travel or use shall be admissible proof to establish that such defendant traveled in or used such facility of interstate or foreign commerce.

18 U.S.C. § 2101(a)–(b).[6]  It continues:

> (a) As used in this chapter, the term "riot" means a public disturbance involving (1) an

---

[6] In the original statute, § 2101(a) was labeled § 2101(a)(1) and subparagraphs (1)–(4) were labeled subparagraphs (A)–(D). Pub. L. No. 90-284, Title I, § 104; 82 Stat. 75-76 (1968).  In 1996, perhaps recognizing that § 2101(a) contained only one paragraph, Congress amended § 2101(a) "by striking '(1)' and by redesignating subparagraphs (A) through (D) as paragraphs (1) through (4), respectively." Pub. L. No. 104-294, Title VI, § 601(f)(15); 110 Stat. 3488 (1996).  Congress failed, however, to amend the remaining text that refers back to "subparagraph[s] (A), (B), (C), or (D)."  *See* §§ 2101(a)–(b).  We read the statute's references to subparagraphs (A)–(D) as referring to subparagraphs (1)–(4) in § 2101(a).  The parties do not dispute that interpretation.  *Cf. Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 287 n.6, 130 S. Ct. 1396, 1402 n.6, 176 L. Ed. 2d 225 (2010).

act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

(b) As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or

acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

18 U.S.C. § 2102.[7]

The Defendants attack the Act on a number of bases: (A) the overt act provisions; (B) the provisions of subparagraphs (1), (2), and (4) of § 2101(a); (C) the definition of a riot; and (D) the heckler's veto doctrine. We will now consider each basis. In doing so, we emphasize that our duty is to seek a reasonable construction of the Act that comports with constitutional requirements, so long as the text is "readily susceptible to such a construction." *United States v. Stevens*, 559 U.S. 460, 481, 130 S. Ct. 1577, 1591–92, 176 L. Ed. 2d 435 (2010) (citation and internal quotation marks omitted); *see Harriss*, 347 U.S. at 618, 74 S. Ct. at 812.

A. *Overt act provisions*

The Defendants argue that the travel in or use of any facility of interstate or foreign commerce and "any other overt act for any purpose specified in subparagraph [(1), (2), (3), or (4)] of [subsection (a)]" are too far removed in time from any riot to satisfy *Brandenburg*'s imminence requirement. They liken the "overt act" in the Act to an overt act for a conspiracy. *See United States v. Harper*, 33 F.3d

---

[7] The legislative history of the Act has been widely discussed elsewhere. *See United States v. Dellinger*, 472 F.2d 340, 358–59, 363 (7th Cir. 1972); *id.* at 410–12 (Pell, J., concurring in part and dissenting in part); *Miselis*, 972 F.3d at 527–28; Marvin Zalman, *The Federal Anti-Riot Act and Political Crime: The Need for Criminal Law Theory*, 20 Vill. L. Rev. 897, 911–16 (1975).

1143, 1148 (9th Cir. 1994).   However, the Act is not a
conspiracy statute.   And the travel in or use of a facility of
interstate or foreign commerce includes conduct, not just
speech.   The government argues that the Seventh Circuit
Court of Appeals correctly read the references to the
somewhat unusual "overt act" language as more limited than
the scope envisioned by the Defendants.

We adopt the Seventh Circuit's approach to the "overt
act" provisions.  *See United States v. Dellinger*, 472 F.2d 340,
361–62 (7th Cir. 1972).  In *Dellinger*, the court reasoned that
the "overt act" provision in § 2101(a) was amenable to two
meanings.   In the first interpretation, "for any purpose
specified" could include speech that was only "a step toward"
one of the acts in subparagraphs (1)–(4).  *Id.* at 362.  In the
second, the words could reasonably be read to limit the
meaning of "overt act" to one of the specific acts
contemplated in subparagraphs (1)–(4).  *Id.*  In other words,
the provision could be construed to mean the acts in
subparagraphs (1)–(4) are goals, or are themselves the
required overt acts.  *Id.*  Although the first meaning does not
require "an adequate relation" between speech and action, the
second closely connects speech and action such that any First
Amendment concerns would arise from the conduct
criminalized in subparagraphs (1)–(4), rather than the overt
act provision itself.  *See id.*  Significantly, § 2101(b) also
supports that construction by specifically referring to "the
overt acts described in subparagraph [(1), (2), (3), or (4)] of
subsection (a)."  *See id.*

We hold that the overt act requirement refers to acts that
fulfill the elements themselves, and not mere steps toward, or

related to, one or more of those elements. Thus, *Brandenburg*'s imminence requirement is not violated.[8]

B. *Section 2101(a), subparagraphs (1)–(2), (4)*

The Defendants contend that subparagraphs (1), (2), and (4) of § 2101(a) are facially overbroad because they criminalize speech that "urg[es]," "instigat[es]," "organize[s]," "promote[s]," or "encourage[s]" a riot and "advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." We will explain why we agree in part and disagree in part.

In effect, § 2102(b) indicates that the definitions of the terms "to incite a riot" (from subparagraph 2101(a)(1)) and "to organize, promote, encourage, participate in, or carry on a riot" (from subparagraph 2101(a)(2)) together encompass but are "not limited to, urging or instigating other persons to riot" but do not encompass "the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." Because the statute itself defines these terms, we apply the definitions contained in the statute and exclude any

---

[8] We disagree with the Fourth Circuit's conclusion that the "overt act" provision in § 2101(a) indicates the Act is an attempt statute. *See Miselis*, 972 F.3d at 534–35. By analogizing to an attempt statute, the Fourth Circuit sidesteps—and ultimately fails to address—the need to construe the "overt act" provision in such a way that satisfies *Brandenburg*'s imminence requirement.

unstated meanings.[9]  *See Stenberg v. Carhart*, 530 U.S. 914, 942, 120 S. Ct. 2597, 2615, 147 L. Ed. 2d 743 (2000).

(1) *Instigate*: "Instigate" means "to goad or urge forward : set on : PROVOKE, INCITE."[10]  Likewise, "incite" means "to move to a course of action : stir up : spur on : urge on."[11] Like the Fourth Circuit and the Seventh Circuit, we conclude that speech that "incites" or "instigates" a riot satisfies *Brandenburg*'s imminence requirement.  *See Miselis*, 972 F.3d at 536, 538; *Dellinger*, 472 F.2d at 361–62. Because even advocacy that is likely to cause an imminent riot is unprotected,[12] the Defendants' argument that

---

[9] Treating subparagraphs (1) and (2) alike, the Defendants argue, would render the terms "organize," "promote," and "encourage" mere surplusage.  We think not.  In any event, "statutes often contain overlapping provisions . . . .  Congress may have acted similarly in drafting these statutes out of an understandable desire to make sure that no form of [incitement to riot] be left out."  *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011); *see also United States v. Corrales-Vazquez*, 931 F.3d 944, 957–58 (9th Cir. 2019) (Fernandez, J., dissenting); *cf. Marinello v. United States*, __ U.S. __, __, 138 S. Ct. 1101, 1107, 200 L. Ed. 2d 356 (2018); *United States v. Cabaccang*, 332 F.3d 622, 628 (9th Cir. 2003) (en banc).

[10] *Instigate*, Webster's Third New International Dictionary (unabridged ed. 1986).

[11] *Incite*, Webster's Third New International Dictionary § 1 (unabridged ed. 1986); *see also Incitement*, Black's Law Dictionary (11th ed. 2019).

[12] *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000).

"instigate" does not demand imminence because it means "to cause an event or situation to happen"[13] fails.

(2) *Urging*: Urge "means simply to 'encourage,' 'advocate,' 'recommend,' or 'advise . . . earnestly and with persistence.'" *Miselis*, 972 F.3d at 538 (alteration in original) (citations omitted). We agree with the Fourth Circuit that, "because earnestness and persistence don't suffice to transform such forms of protected advocacy into speech that is likely to produce imminent lawless action, *Brandenburg* renders the purpose of 'urging' others to riot overbroad." *Id.*

(3) *Organize*: The verb "organize" is similarly overbroad. Like "urge," "organize" is not susceptible to a limiting construction that brings it within *Brandenburg*'s strictures.

In *Brandenburg*, the Supreme Court considered a speech given at a Ku Klux Klan rally. 395 U.S. at 445–46, 89 S. Ct. at 1828–29. The speaker stated (1) "This is an organizers' meeting," (2) if the government "continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken," and (3) "[w]e are marching on Congress July the Fourth, four hundred thousand strong." *Id.* at 446, 89 S. Ct. at 1829. The Court concluded that such speech was protected under the First Amendment. *Id.* at 449, 89 S. Ct. at 1830 (holding the statute of conviction, "by its own words and as applied, purports to punish mere advocacy"). Thus, the use of the verb "organize" in subparagraph 2101(a)(2) punishes protected speech.

---

[13] *Instigate*, Cambridge Advanced Learner's Dictionary (4th ed. 2013).

(4) *Encourage and promote*: Moreover, like the Fourth Circuit, we conclude that the First Amendment protects speech tending to "encourage" or "promote" a riot. *See Miselis*, 972 F.3d at 536–37. Black's Law Dictionary defines "encourage" as meaning "[t]o instigate; to incite to action; to embolden; to help" and cross-references aiding and abetting.[14] The Oxford English Dictionary's definition of "encourage" is similar but also includes "to recommend, advise."[15] The latter definition fails *Brandenburg*'s imminence requirement. The same is true for "promote," which is synonymous with "encourage."[16] *See Miselis*, 972 F.3d at 536–37; *cf. Williams*, 553 U.S. at 299–300, 128 S. Ct. at 1842 (explaining that "the statement . . . 'I encourage you to obtain child pornography'" is "abstract advocacy" and is protected, but "promotes," when construed as "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer," is not protected speech).

(5) *Effect of § 2102(b) limitations*: Additionally, § 2102(b) states that the terms in question "shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." The Defendants argue that the double negative cancels itself out and that the Act therefore proscribes mere "advocacy of any act or acts of

---

[14] *Encourage*, Black's Law Dictionary (11th ed. 2019).

[15] *Encourage*, The Compact Oxford English Dictionary § 2(b) (2d ed. 1991).

[16] *See Promote*, Webster's Third New International Dictionary § 4(a) (unabridged ed. 1986); *see also Promote*, The Compact Oxford English Dictionary § 2(a) (2d ed. 1991).

violence or assertion of the rightness of, or the right to commit, any such act or acts." *See Miselis*, 972 F.3d at 539; *see also Lester v. Parker*, 235 F.2d 787, 790 n.5 (9th Cir. 1956) (per curiam). We agree. The First Amendment protects that kind of advocacy. *See Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829.

We recognize that the Seventh Circuit construed the exclusion to merely "forestall any claim . . . [that] advocacy and assertion constitute mere advocacy of ideas or expression of belief excluded under" § 2102(b) in the context of "a truly inciting, action-propelling speech [that] include[d] advocacy of acts of violence and assertion of the rightness of such acts." *Dellinger*, 472 F.2d at 363; *see also In re Shead*, 302 F. Supp. 560, 566 (N.D. Cal. 1969), *aff'd on other grounds sub nom. Carter v. United States*, 417 F.2d 384 (9th Cir. 1969). We do not believe that the words of the Act will reasonably bear that construction.

"We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992). The "clear and present danger" test in the definition of a riot illuminates Congress's intent here. *See* § 2102(a). At one time, in deciding whether a statute violated the First Amendment, courts considered "whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." *Schenck v. United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 249, 63 L. Ed. 470 (1919). For example, under that test, the First Amendment "would not protect a man in falsely shouting fire in a theatre and causing a panic." *Id.* But, mere

18          UNITED STATES V. RUNDO

advocacy of Communism also satisfied the clear and present danger test. *See Whitney v. California*, 274 U.S. 357, 366, 371–72, 47 S. Ct. 641, 645, 647, 71 L. Ed. 1095 (1927), *overruled by Brandenburg*, 395 U.S. 444, 89 S. Ct. 1827.

*Brandenburg*'s imminence requirement is more exacting than the prior clear and present danger test. *See Miselis*, 972 F.3d at 532–33; *Turney v. Pugh*, 400 F.3d 1197, 1202 (9th Cir. 2005); *see also United States v. Viefhaus*, 168 F.3d 392, 397 n.3 (10th Cir. 1999); *Shackelford v. Shirley*, 948 F.2d 935, 937 (5th Cir. 1991).   However, because *Brandenburg*'s imminence requirement was not adopted until after Congress passed the Act, there is no reason to determine that use of the double negative was a drafting error.  *Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397–98, 99 L. Ed. 2d 645 (1988) (stating "courts will . . . not lightly assume that Congress intended to infringe constitutionally protected liberties").  Therefore, there is no reason to deviate from the usual principle that Congress said what it meant and meant what it said[17] when it used the double negative in § 2102(b).

(6) *Aid or abet*: The Defendants assert that "to aid or abet any person in inciting . . . a riot" (from subparagraph 2101(a)(4)) is subject to the same definition as "to incite a riot" (from subparagraph 2101(a)(1)).  Thus, for the foregoing reasons, aiding or abetting inciting a riot satisfies *Brandenburg*'s imminence requirement.

---

[17] *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000).

In sum, subparagraphs (1), (2), and (4) of § 2101(a) do not violate the First Amendment except insofar as subparagraph (2) prohibits speech tending to "organize," "promote," or "encourage" a riot, and § 2102(b) expands the prohibition to "urging" a riot and to mere advocacy.

C.  *Riot and threat of riot*

The Defendants assert that the very definition of a "riot" is unconstitutional.  We do not agree.

A "riot" requires either one or more "acts of violence" or one or more "threats" to commit one or more acts of violence. § 2102(a).  The completed acts of violence (or the threatened acts of violence) must "constitute a clear and present danger of, or . . . result in, damage or injury to the property . . . or to the person of any other individual."  *Id.*

Acts of violence are not protected under the First Amendment.  *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S. Ct. 3409, 3427, 73 L. Ed. 2d 1215 (1982).  Nor are "true threats," which involve subjective intent to threaten.  *See Cassel*, 408 F.3d at 633; *see also Virginia v. Black*, 538 U.S. 343, 359–60, 123 S. Ct. 1536, 1547–48, 155 L. Ed. 2d 535 (2003).  "True threats" are not limited to bodily harm only but also include property damage. *See Cassel*, 408 F.3d at 636–37; *see also Miselis*, 972 F.3d at 540; *United States v. Coss*, 677 F.3d 278, 283–84, 289–90 (6th Cir. 2012); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008).

"[W]e do not hesitate to construe" a statute punishing threats "to require . . . intent" to threaten.  *Cassel*, 408 F.3d at 634; *cf. Elonis v. United States*, 575 U.S. 723, __, 135

S. Ct. 2001, 2012, 192 L. Ed. 2d 1 (2015).  By requiring proof of "intent" and proof that the overt act was committed "for [the] purpose" of a riot,[18] which also indicates subjective intent,[19] Congress limited the "threats" part of the definition of a riot to "true threats."  Thus, a "riot," as defined in the Act, is not protected under the First Amendment.

### D.  *Heckler's veto*

The Defendants assert that the provisions of the Act violate the heckler's veto doctrine.

"A 'heckler's veto' is an impermissible content-based speech restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1158 (9th Cir. 2007); *see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134–35, 112 S. Ct. 2395, 2404, 120 L. Ed. 2d 101 (1992) ("Speech cannot be . . . punished . . . simply because it might offend a hostile mob."). The Defendants argue that the Act violates that rule.  Not so. Under its provisions, "the intent to engage in one of the prohibited overt acts is a personal prerequisite to punishment under [the Act] and necessarily renders any challenge based on innocent intent . . . wide of the mark." *Nat'l Mobilization Comm. to End the War in Viet Nam v. Foran*, 411 F.2d 934, 938 (7th Cir. 1969); *see also Lewis v. Wilson*, 253 F.3d 1077, 1081 (8th Cir. 2001); *Nelson v. Streeter*, 16 F.3d 145, 150 (7th Cir. 1994).  Simply put, knowing that some might choose

---

[18] 18 U.S.C. § 2101(a).

[19] *Cf. United States v. Wells*, 519 U.S. 482, 489–90, 499, 117 S. Ct. 921, 926–27, 931, 137 L. Ed. 2d 107 (1997).

to become violent is not at all the same as intending that they do so.

II. *The Act criminalizes a substantial amount of protected speech*

Again, when we apply the above construction, the Act prohibits protected speech tending to "organize," "promote" or "encourage" a riot[20] and expands that prohibition to "urging" a riot and to mere advocacy.[21]  To that extent, we agree with the Fourth Circuit that the Act criminalizes a substantial amount of protected speech. *See Miselis*, 972 F.3d at 540–41; *cf. Williams*, 553 U.S. at 298–99, 128 S. Ct. at 1842.

III. *The unconstitutional portions of the Act are severable*

Because the Act is not facially overbroad except as indicated in parts I and II of this opinion, we must determine whether the remainder of the Act may be salvaged by severance.  We are satisfied that it can be.  Indeed, severance is the remedy that must be applied when it is possible to do so.  *See United States v. Booker*, 543 U.S. 220, 258–59, 125 S. Ct. 738, 764, 160 L. Ed. 2d 621 (2005).  And that can be accomplished by severing small portions of the statutory language—even words or phrases.  For instance, last year,

---

[20] § 2101(a)(2).

[21] 18 U.S.C. § 2102(b).

"seven Members of the Court"[22] concluded that, even if the Court did not utilize a robocall statute's severability clause, "the presumption of severability"[23] required severance of the following exception from the remainder of the statute: "'*unless such call is made solely to collect a debt owed to or guaranteed by the United States*.'"[24]  We also have applied the severance principle in that manner.  *See United States v. Taylor*, 693 F.2d 919, 921–22 (9th Cir. 1982) (severing a single clause from a statutory provision); *cf. Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845, 865–66 (9th Cir. 2017) (stating that courts have "severed" unconstitutional provisions "within single sentences").  Other courts of appeals have done the same.  *See, e.g.*, *Miselis*, 972 F.3d at 541–43; *Lipp v. Morris*, 579 F.2d 834, 835 & n.2, 836 (3d Cir. 1978) (per curiam).

Here, § 2101(a)(2)'s inclusion of "organize," "promote" and "encourage" and § 2102(b)'s inclusion of "urging or" and "not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts" are severable from the remainder of the Act.  *See Miselis*, 972 F.3d at 542–43.  We agree with the Fourth Circuit and conclude that Congress would prefer severance over complete invalidation.  *See id.* at 543–44.

---

[22] *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, __ U.S. __, __, 140 S. Ct. 2335, 2343, 207 L. Ed. 2d 784 (2020).

[23] *Id.* at __, 140 S. Ct. at 2354.

[24] *Id.* at __ n.2, 140 S. Ct. at 2345 n.2.

So severed, § 2101(a) states:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent–
>
> > (1) to incite a riot; or
> >
> > (2) to participate in, or carry on a riot; or
> >
> > (3) to commit any act of violence in furtherance of a riot; or
> >
> > (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;
>
> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph–
>
> Shall be fined under this title, or imprisoned not more than five years, or both.

So severed, § 2102(b) states:

> As used in this chapter, the term "to incite a riot", or "to participate in, or carry on a riot", includes, but is not limited to, instigating

other persons to riot, but shall not be deemed
to mean the mere oral or written (1) advocacy
of ideas or (2) expression of belief.

With the above construction and severance, the Act is not
facially overbroad. Rather, the Act prohibits unprotected
speech that instigates (incites, participates in, or carries on) an
imminent riot, unprotected conduct such as committing acts
of violence in furtherance of a riot, and aiding and abetting of
that speech or conduct.

## CONCLUSION

Once the offending language is elided from the Act by
means of severance, the Act is not unconstitutional on its
face. We recognize that the freedoms to speak and assemble
which are enshrined in the First Amendment are of the utmost
importance in maintaining a truly free society. Nevertheless,
it would be cavalier to assert that the government and its
citizens cannot act, but must sit quietly and wait until they are
actually physically injured or have had their property
destroyed by those who are trying to perpetrate, or cause the
perpetration of, those violent outrages against them. Of
course, the government cannot act to avert a perceived danger
too soon, but it can act before it is too late. In short, a balance
must be struck. *Brandenburg* struck that balance,[25] and the
Act (after the elisions) adheres to the result. Therefore, we
reverse the district court's dismissal of the indictment and
remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[25] *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829 (explicating the
imminence requirement).

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the per curiam opinion with two exceptions. That is, I would not strike the concepts of organizing and urging from the Act, and, to that extent, I dissent.

(1) I dissent from Part I.B.(2) of the per curiam opinion, which eliminates the concept of urging from the Act. Webster's defines "urge," in relevant part, as:

> *vt* **1 :** to present in an earnest or pressing manner : press upon attention : insist upon : plead or allege in or as if in argument or justification : advocate or demand with importunity . . . **[3] b :** to be a compelling, impelling, or constraining influence upon : serve as a motivating impulse or reason for . . . **5 :** to rouse from a dormant state or into life, expression, or action : STIMULATE, PROVOKE . . . ~ *vi* . . . **3 :** to exercise an inciting, constraining, or stimulating influence.

*Urge*, Webster's Third New International Dictionary (unabridged ed. 1986). Likewise, the Oxford English Dictionary defines "urge," in relevant part, as "[t]o act as an impelling or prompting motive, stimulus, or force; to incite or stimulate; to exercise pressure or constraint." *Urge*, The Compact Oxford English Dictionary § 11 (2d ed. 1991). Not only do those definitions include the concept of inciting, but also their link to action denotes imminence. Further, speech that urges violence or physical disorder in the nature of a riot does not have the protection of the First Amendment. *Cf.*

*White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). Based on the foregoing, I am not persuaded by the Fourth Circuit's contrary interpretation of "urge"—that *Brandenburg*[1] protects speech that "'urge[s],'" which "means simply to 'encourage,' 'advocate,' 'recommend,' or 'advise . . . earnestly and with persistence.'" *United States v. Miselis*, 972 F.3d 518, 538 (4th Cir. 2020); *cf. United States v. Dellinger*, 472 F.2d 340, 361–62 (7th Cir. 1972). Rather, in the context of this statute, "urge" indicates imminence of the riot danger.

(2) I dissent from Part I.B.(3) of the per curiam opinion, which eliminates the concept of organizing from the Act. In the context of an event or activity, like a riot, "organize" means "to unify into a coordinated functioning whole : put in readiness for coherent or cooperative action,"[2] or "to arrange by systematic planning and coordination of individual effort."[3]   Simply put, "organize" means "[t]o arrange (personally); to take responsibility for providing (something); to 'fix up.'"   *Organize*, The Compact Oxford English Dictionary § 2(d) (2d ed. 1991). I agree with the Fourth Circuit that "speech tending to organize a riot serves not to persuade others to engage in a hypothetical riot, but rather to facilitate the occurrence of a riot that has already begun to take shape," indicating imminence. *Miselis*, 972 F.3d at 537. It is far from mere speech. It is the very purposeful, physical, and concrete action of structuring people into an intentionally

---

[1] *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430 (1969) (per curiam).

[2] *Organize*, Webster's Third New International Dictionary § 2(b) (unabridged ed. 1986).

[3] *Id*. § 4(a).

physically violent force, which is at least on the brink of carrying out its mission. Although it might be reasonable to organize some events into the far future, as I see it, organizing a riot does not reasonably lend itself to that interpretation.

Thus, I respectfully concur in part and dissent in part.