1 | E. MARTIN ESTRADA
United States Attorney
2 | ANNAMARTINE SALICK
Assistant United States Attorney
3 | Chief, National Security Division
SOLOMON KIM (Cal. Bar No. 311466)
4 | MARIA JHAI (Cal. Bar No. 283059)
Assistant United States Attorneys
5 | Terrorism and Export Crimes Section
     1500 United States Courthouse
6 |      312 North Spring Street
     Los Angeles, California 90012
7 |      Telephone: (213) 894-2450/4138
     Facsimile: (213) 894-0141
8 |      E-mail:    solomon.kim@usdoj.gov
                 maria.jhai@usdoj.gov
9 |
10 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

11 |             UNITED STATES DISTRICT COURT

12 |         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | UNITED STATES OF AMERICA,       No. CR 18-00759(A)-CJC-2

14 |       Plaintiff,          PLEA AGREEMENT FOR DEFENDANT

15 |         v.               ROBERT BOMAN

16 | ROBERT BOMAN,

17 |       Defendant.

18 |

19 |      1.   This constitutes the plea agreement between ROBERT BOMAN

20 | ("defendant") and the United States Attorney's Office for the Central

21 | District of California (the "USAO") in the above-captioned case.

22 | This agreement is limited to the USAO and cannot bind any other

23 | federal, state, local, or foreign prosecuting, enforcement,

24 | administrative, or regulatory authorities.

25 |               DEFENDANT'S OBLIGATIONS

26 |      2.   Defendant agrees to:

27 |          a.   At the earliest opportunity requested by the USAO and

28 | provided by the Court, appear and plead guilty to Count One of the

1  Superseding Indictment in United States v. Robert Paul Rundo, et al.,
2  CR No. 18-00759(A)-CJC, which charges defendant with conspiracy to
3  commit the crime of rioting, in violation of 18 U.S.C. § 371.

4       b.   Not contest facts agreed to in this agreement.

5       c.   Abide by all agreements regarding sentencing contained
6  in this agreement.

7       d.   Appear for all court appearances, surrender as ordered
8  for service of sentence, obey all conditions of any bond, and obey
9  any other ongoing court order in this matter.

10      e.   Not commit any crime; however, offenses that would be
11 excluded for sentencing purposes under United States Sentencing
12 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
13 within the scope of this agreement.

14      f.   Be truthful at all times with the United States
15 Probation and Pretrial Services Office and the Court.

16      g.   Pay the applicable special assessment at or before the
17 time of sentencing unless defendant has demonstrated a lack of
18 ability to pay such assessments.

19                          THE USAO'S OBLIGATIONS

20 3.   The USAO agrees to:

21      a.   Not contest facts agreed to in this agreement.

22      b.   Abide by all agreements regarding sentencing contained
23 in this agreement.

24      c.   At the time of sentencing, move to dismiss the
25 remaining counts of the Superseding Indictment as against defendant.
26 Defendant agrees, however, that at the time of sentencing the Court
27 may consider any dismissed charges in determining the applicable

28

                                  2

1  Sentencing Guidelines range, the propriety and extent of any
2  departure from that range, and the sentence to be imposed.

3          d.    At the time of sentencing, provided that defendant
4  demonstrates an acceptance of responsibility for the offense up to
5  and including the time of sentencing, recommend a two-level reduction
6  in the applicable Sentencing Guidelines offense level, pursuant to
7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
8  additional one-level reduction if available under that section.

9          e.    Recommend that defendant be sentenced to a term of
10 imprisonment no higher than the low end of the applicable Sentencing
11 Guidelines range, provided that the offense level used by the Court
12 to determine that range is 12 or higher and provided that the Court
13 does not depart downward in offense level or criminal history
14 category.  For purposes of this agreement, the low end of the
15 Sentencing Guidelines range is that defined by the Sentencing Table
16 in U.S.S.G. Chapter 5, Part A.

17                        NATURE OF THE OFFENSE

18      4.    Defendant understands that for defendant to be guilty of
19 the crime charged in the Superseding Indictment, that is, conspiracy
20 to commit the crime of rioting in violation of 18 U.S.C. § 371, the
21 following must be true:  (1) between on or about March 2017 and
22 October 2, 2018, there was an agreement between two or more persons
23 to commit at least one crime as charged in the indictment; (2)
24 defendant became a member of the conspiracy knowing of at least one
25 of its objects and intending to help accomplish it; and (3) one of
26 the members of the conspiracy performed at least one overt act for
27 the purpose of carrying out the conspiracy.

28

                                    3

1        5.    Defendant understands that the elements of the crime of
2    rioting in violation of 18 U.S.C. § 2101, which is the object of the
3    conspiracy charged in Count One of the Superseding Indictment, the
4    following must be true: (1) defendant traveled in interstate or
5    foreign commerce or used any facility of interstate or foreign
6    commerce, including, but not limited to, the mail, telegraph,
7    telephone, radio, or television; (2) defendant did so with intent to
8    incite a riot, to participate in, or carry on a riot, or to commit an
9    act of violence in furtherance of a riot, or to aid or abet any
10   person in inciting or participating in or carrying on a riot or
11   committing any act of violence in furtherance of a riot; and
12   (3) during the course of such travel or use or thereafter, defendant
13   performed or attempted to perform an overt act for any purpose
14   specified above.

15                                PENALTIES

16       6.    Defendant understands that the statutory maximum sentence
17   that the Court can impose for a violation of 18 U.S.C. § 371, is 5
18   years' imprisonment; a 3-year period of supervised release; a fine of
19   $250,000 or twice the gross gain or gross loss resulting from the
20   offense, whichever is greatest; and a mandatory special assessment of
21   $100.

22       7.    Defendant understands that supervised release is a period
23   of time following imprisonment during which defendant will be subject
24   to various restrictions and requirements. Defendant understands that
25   if defendant violates one or more of the conditions of any supervised
26   release imposed, defendant may be returned to prison for all or part
27   of the term of supervised release authorized by statute for the
28   offense that resulted in the term of supervised release, which could

1  result in defendant serving a total term of imprisonment greater than
2  the statutory maximum stated above.

3      8.    Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury. Defendant
7  understands that he is pleading guilty to a felony and that it is a
8  federal crime for a convicted felon to possess a firearm or
9  ammunition.   Defendant understands that the conviction in this case
10  may also subject defendant to various other collateral consequences,
11  including but not limited to revocation of probation, parole, or
12  supervised release in another case and suspension or revocation of a
13  professional license.   Defendant understands that unanticipated
14  collateral consequences will not serve as grounds to withdraw
15  defendant's guilty plea.

16      9.    Defendant understands that, if defendant is not a United
17  States citizen, the felony conviction in this case may subject
18  defendant to: removal, also known as deportation, which may, under
19  some circumstances, be mandatory; denial of citizenship; and denial
20  of admission to the United States in the future.   The Court cannot,
21  and defendant's attorney also may not be able to, advise defendant
22  fully regarding the immigration consequences of the felony conviction
23  in this case.   Defendant understands that unexpected immigration
24  consequences will not serve as grounds to withdraw defendant's guilty
25  plea.

26                          FACTUAL BASIS

27      10.   Defendant admits that defendant is, in fact, guilty of the
28  offense to which defendant is agreeing to plead guilty.   Defendant

                              5

1   and the USAO agree to the statement of facts provided below and agree
2   that this statement of facts is sufficient to support a plea of
3   guilty to the charge described in this agreement and to establish the
4   Sentencing Guidelines factors set forth in paragraph 12 below but is
5   not meant to be a complete recitation of all facts relevant to the
6   underlying criminal conduct or all facts known to either party that
7   relate to that conduct.

8       Between March 2017 and October 2, 2018, defendant, his co-
9   conspirators, and others participated in an organization originally
10   known as the "DIY Division" that was later re-branded as the "Rise
11   Above Movement" or "RAM." RAM was located in the greater Los
12   Angeles, California area, in the Central District of California, and
13   represented itself as a combat-ready, militant group of a new
14   nationalist white supremacy and identity movement. Under the aegis
15   of RAM, at all relevant times, defendant and his co-conspirators
16   agreed to attend, and did attend, within the Central District of
17   California and elsewhere, rallies with the intent to participate in,
18   carry on, and commit acts of violence of further of a riot, with each
19   conspirator aiding and abetting one another in those objectives.

20       Defendant and his co-conspirators performed numerous overt acts
21   in furtherance of their agreement, including the following (as
22   described more fully below):

23        •   To prepare for violent physical conflict, defendant, his
24   co-conspirators, and other RAM members and associates regularly held
25   hand-to-hand and other combat training sessions. Defendant attended
26   several such training sessions in 2017.

27        •   On various social media platforms – including Twitter,
28   Facebook, Instagram, GAB, and Discord – defendant and his co-

1  conspirators posted messages and photographs of themselves preparing
2  for or engaging in violence, accompanied by statements such as "When
3  the squad[']s not out smashing commies," "#rightwingdeathsquad," and
4  "#goodnightleftside."

5  **March 25, 2017: Huntington Beach, California**

6  On March 15, 2017, defendant, Co-Conspirators #1 and #2, and
7  other RAM members engaged in combat training in San Clemente,
8  California, to prepare to engage in violence at political events,
9  including an upcoming political rally on March 25, 2017 in Huntington
10 Beach, California (the "Huntington Beach Rally"). Defendant and his
11 co-conspirators took the following actions with the intent to incite,
12 participate in, and carry on a riot, and to commit acts of violence
13 in furtherance of a riot at the Huntington Beach Rally:

14 On March 25, 2017, defendant attended the Huntington Beach Rally
15 along with Co-Conspirators #1 and #2, and other RAM members.

16 At that event, defendant and his co-conspirators pursued
17 protestors and engaged in acts of violence, including assaulting
18 groups of protestors and other persons. Defendant personally
19 punched, shoved, and kicked one protestor in the back, while other
20 RAM members and co-conspirators pursued, tackled, and punched
21 protestors. Following that event, news outlets, including various
22 Neo-Nazi and white supremacist websites, published photographs
23 depicting defendant and his co-conspirators engaged in those
24 assaults.

25 Defendant and his co-conspirators celebrated this news coverage
26 both in-person and through text and social media messages, and used
27 the Internet to post statements, photographs, and videos of the
28 assaults in order to recruit members to engage in violent

7

confrontations at future events.  For example, on March 26, 2017,
defendant posted on his Facebook account a link to an article on The
Daily Stormer titled "Trumpenkriegers Physically Remove Antifa Homos
in Huntington Beach," along with the comment "We did it fam."
Similarly, on that same date, defendant posted a photograph on his
Facebook account showing himself, other co-conspirators, and other
RAM members at the Huntington Beach Rally, along with the comment
"Hail victory and the alt-reich."  On February 15, 2018, the RAM
Twitter account posted a message showing defendant and several other
RAM members at the Huntington Beach Rally, with the message "Shortly
after this pic antifa was btfo [blown the f*ck out] in Huntington
Beach."

**April 15, 2017: Berkeley, California**

On April 15, 2017, a political rally was scheduled to occur in
Martin Luther King Jr. Civic Center Park in Berkeley, California (the
"Berkeley Rally").  Defendant and Co-Conspirators #1 and #3 took the
following actions with the intent to incite, participate in, and
carry on a riot, and to commit acts of violence in furtherance of a
riot at the Berkeley Rally:

In anticipation of the Berkeley rally, defendant attended a RAM
training on Sunday, April 9, 2017, in San Clemente, California, where
participants engaged in hand-to-hand fighting and formation fighting
training.

On the evening of April 14, 2017, defendant, Co-Conspirators #1
and #3, and other RAM members reserved and rented a van from Airport
Van Rentals located at the Los Angeles International Airport to drive
together to Richmond, California, where they checked into an
international chain hotel.

8

1    On April 15, 2017, defendant and Co-Conspirators #1 and #3
2  prepared to commit acts of violence at the Berkeley Rally by wrapping
3  their hands with athletic tape and wearing coordinating grey shirts,
4  goggles, and black scarves and masks to cover the lower half of their
5  faces.

6    Throughout the day, there were several violent clashes between
7  opposing groups at the rally.  In one of the first such instances,
8  defendant, Co-Conspirators #1 and #3, and other RAM members crossed
9  the barrier that police had erected to separate the opposing groups
10  and punched and kicked several people.  Several minutes later,
11  defendant and Co-Conspirators #1 and #3 again crossed the barrier and
12  engaged in fights with protestors.

13    Later in the day, defendant, Co-Conspirator #3, and other RAM
14  members pursued fleeing protestors away from the park through the
15  streets of downtown Berkeley.  Defendant punched at least one fleeing
16  protestor, while another RAM member attacked another protestor,
17  punching him several times and stomping on him once.  Another RAM
18  member hurled ladles of hot beans at the fleeing protestors, before
19  throwing the pot itself into the crowd, kicking down a fence that was
20  blocking the street, and kicking a fleeing protestor from behind.

21    Thereafter, various Neo-Nazi and white supremacist websites
22  published photographs depicting defendant and his co-conspirators
23  assaulting protestors and other persons at the Berkeley Rally.
24  Defendant and his co-conspirators celebrated this news coverage and
25  used the Internet to post photographs and videos of assaults one or
26  more of them had committed in order to recruit others to engage in
27  violence in furtherance of a riot at future events.  For example, on
28  April 16, 2017, defendant posted a photograph on his Facebook page

1   showing him punching persons at the Berkeley Rally along with the
2   caption "Oooooi vey!!!  Dagoyiiiim knooooow."  Similarly, on that
3   same date, defendant posted a photograph on his Facebook account
4   containing a Twitter post in which a journalist identified defendant
5   and one of his co-conspirators at the Berkeley Rally and accused them
6   of shoving him.  Defendant wrote "You come face to face with the
7   enemy, what do you expect . . . [.]"  On April 18, 2017, defendant
8   shared on Facebook a video depicting RAM's co-founder and other RAM
9   members assaulting protestors at the Berkeley Rally, titled, "Based
10  Elbow Man & Crew Stomp ANTIFA."  On August 10, 2017, defendant posted
11  a photograph on his Facebook page showing himself punching a person
12  at the Berkeley Rally.

13        In committing the foregoing actions with the intent to incite,
14  participate in, and carry on riots, and to commit violence in
15  furtherance of a riot, defendant and his co-conspirators traveled in,
16  and used facilities of, interstate and foreign commerce.

17                        SENTENCING FACTORS

18        11.  Defendant understands that in determining defendant's
19  sentence the Court is required to calculate the applicable Sentencing
20  Guidelines range and to consider that range, possible departures
21  under the Sentencing Guidelines, and the other sentencing factors set
22  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
23  Sentencing Guidelines are advisory only, that defendant cannot have
24  any expectation of receiving a sentence within the calculated
25  Sentencing Guidelines range, and that after considering the
26  Sentencing Guidelines and the other § 3553(a) factors, the Court will
27  be free to exercise its discretion to impose any sentence it finds
28

                              10

1   appropriate up to the maximum set by statute for the crime of
2   conviction.

3       12.   Defendant and the USAO agree to the following applicable
4   Sentencing Guidelines factors:

5       Base Offense Level:           14          U.S.S.G. § 2A2.2(a)
6   Defendant and the USAO reserve the right to argue that additional
7   specific offense characteristics, adjustments, and departures under
8   the Sentencing Guidelines are appropriate.  Defendant understands
9   that defendant's offense level could be increased if defendant is a
10  career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's
11  offense level is so altered, defendant and the USAO will not be bound
12  by the agreement to Sentencing Guideline factors set forth above.

13      13.   Defendant understands that there is no agreement as to
14  defendant's criminal history or criminal history category.

15      14.   Defendant and the USAO reserve the right to argue for a
16  sentence outside the sentencing range established by the Sentencing
17  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
18  (a)(2), (a)(3), (a)(6), and (a)(7).

19                  WAIVER OF CONSTITUTIONAL RIGHTS

20      15.  Defendant understands that by pleading guilty, defendant
21  gives up the following rights:

22          a.    The right to persist in a plea of not guilty.

23          b.    The right to a speedy and public trial by jury.

24          c.    The right to be represented by counsel -- and if
25  necessary have the Court appoint counsel -- at trial.  Defendant
26  understands, however, that, defendant retains the right to be
27  represented by counsel -- and if necessary have the Court appoint
28  counsel -- at every other stage of the proceeding.

                            11

1        d.    The right to be presumed innocent and to have the
2 burden of proof placed on the government to prove defendant guilty
3 beyond a reasonable doubt.

4        e.    The right to confront and cross-examine witnesses
5 against defendant.

6        f.    The right to testify and to present evidence in
7 opposition to the charges, including the right to compel the
8 attendance of witnesses to testify.

9        g.    The right not to be compelled to testify, and, if
10 defendant chose not to testify or present evidence, to have that
11 choice not be used against defendant.

12        h.    Any and all rights to pursue any affirmative defenses,
13 Fourth Amendment or Fifth Amendment claims, and other pretrial
14 motions that have been filed or could be filed.

15 WAIVER OF APPEAL OF CONVICTION

16    16.   Defendant understands that, with the exception of an appeal
17 based on a claim that defendant's guilty plea was involuntary, by
18 pleading guilty defendant is waiving and giving up any right to
19 appeal defendant's conviction on the offense to which defendant is
20 pleading guilty.  Defendant understands that this waiver includes,
21 but is not limited to, arguments that the statute to which defendant
22 is pleading guilty is unconstitutional, and any and all claims that
23 the statement of facts provided herein is insufficient to support
24 defendant's plea of guilty.

25 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26    17.   Defendant agrees that, provided the Court imposes a term of
27 imprisonment within or below the range corresponding to an offense
28 level of 12 and the criminal history category calculated by the

12

1  Court, defendant gives up the right to appeal all of the following:
2  (a) the procedures and calculations used to determine and impose any
3  portion of the sentence; (b) the term of imprisonment imposed by the
4  Court; (c) the fine imposed by the Court, provided it is within the
5  statutory maximum; (d) to the extent permitted by law, the
6  constitutionality or legality of defendant's sentence, provided it is
7  within the statutory maximum; (e) the term of probation or supervised
8  release imposed by the Court, provided it is within the statutory
9  maximum; and (f) any of the following conditions of probation or
10 supervised release imposed by the Court: the conditions set forth in
11 Second Amended General Order 20-04 of this Court; the drug testing
12 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
13 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

14      18.   The USAO agrees that, provided (a) all portions of the
15 sentence are at or below the statutory maximum specified above and
16 (b) the Court imposes a term of imprisonment within or above the
17 range corresponding to an offense level of 12 and the criminal
18 history category calculated by the Court, the USAO gives up its right
19 to appeal any portion of the sentence.

20                     WAIVER OF COLLATERAL ATTACK

21      19.   Defendant also gives up any right to bring a post-
22 conviction collateral attack on the conviction or sentence, except a
23 post-conviction collateral attack based on a claim of ineffective
24 assistance of counsel.  Defendant understands that this waiver
25 includes, but is not limited to, arguments that the statute to which
26 defendant is pleading guilty is unconstitutional, and any and all
27 claims that the statement of facts provided herein is insufficient to
28 support defendant's plea of guilty.

                                13

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2      20.   Defendant agrees that if, after entering a guilty plea
3  pursuant to this agreement, defendant seeks to withdraw and succeeds
4  in withdrawing defendant's guilty plea on any basis other than a
5  claim and finding that entry into this plea agreement was
6  involuntary, then (a) the USAO will be relieved of all of its
7  obligations under this agreement; and (b) should the USAO choose to
8  pursue any charge that was either dismissed or not filed as a result
9  of this agreement, then (i) any applicable statute of limitations
10 will be tolled between the date of defendant's signing of this
11 agreement and the filing commencing any such action; and
12 (ii) defendant waives and gives up all defenses based on the statute
13 of limitations, any claim of pre-indictment delay, or any speedy
14 trial claim with respect to any such action, except to the extent
15 that such defenses existed as of the date of defendant's signing this
16 agreement.

17

## EFFECTIVE DATE OF AGREEMENT

18     21.   This agreement is effective upon signature and execution of
19 all required certifications by defendant, defendant's counsel, and an
20 Assistant United States Attorney.

21

## BREACH OF AGREEMENT

22     22.   Defendant agrees that if defendant, at any time after the
23 signature of this agreement and execution of all required
24 certifications by defendant, defendant's counsel, and an Assistant
25 United States Attorney, knowingly violates or fails to perform any of
26 defendant's obligations under this agreement ("a breach"), the USAO
27 may declare this agreement breached. All of defendant's obligations
28 are material, a single breach of this agreement is sufficient for the

Case 2:18-cr-00759-CJC  Document 222  Filed 02/20/23  Page 15 of 19  Page ID #:1358

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

1  evidence derived from the statements should be suppressed or are
2  inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

## OFFICE NOT PARTIES

5       24.  Defendant understands that the Court and the United States
6  Probation and Pretrial Services Office are not parties to this
7  agreement and need not accept any of the USAO's sentencing
8  recommendations or the parties' agreements to facts or sentencing
9  factors.

10      25.  Defendant understands that both defendant and the USAO are
11  free to: (a) supplement the facts by supplying relevant information
12  to the United States Probation and Pretrial Services Office and the
13  Court, (b) correct any and all factual misstatements relating to the
14  Court's Sentencing Guidelines calculations and determination of
15  sentence, and (c) argue on appeal and collateral review that the
16  Court's Sentencing Guidelines calculations and the sentence it
17  chooses to impose are not error, although each party agrees to
18  maintain its view that the calculations in paragraph 12 are
19  consistent with the facts of this case.  While this paragraph permits
20  both the USAO and defendant to submit full and complete factual
21  information to the United States Probation and Pretrial Services
22  Office and the Court, even if that factual information may be viewed
23  as inconsistent with the facts agreed to in this agreement, this
24  paragraph does not affect defendant's and the USAO's obligations not
25  to contest the facts agreed to in this agreement.

26      26.  Defendant understands that even if the Court ignores any
27  sentencing recommendation, finds facts or reaches conclusions
28  different from those agreed to, and/or imposes any sentence up to the

16

1  maximum established by statute, defendant cannot, for that reason,
2  withdraw defendant's guilty plea, and defendant will remain bound to
3  fulfill all defendant's obligations under this agreement. Defendant
4  understands that no one -- not the prosecutor, defendant's attorney,
5  or the Court -- can make a binding prediction or promise regarding
6  the sentence defendant will receive, except that it will be within
7  the statutory maximum.

8                       NO ADDITIONAL AGREEMENTS

9       27.  Defendant understands that, except as set forth herein,
10  there are no promises, understandings, or agreements between the USAO
11  and defendant or defendant's attorney, and that no additional
12  promise, understanding, or agreement may be entered into unless in a
13  writing signed by all parties or on the record in court.

14           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

15       28.  The parties agree that this agreement will be considered
16  part of the record of defendant's guilty plea hearing as if the
17  //
18  //
19
20
21
22
23
24
25
26
27
28

17

1  entire agreement had been read into the record of the proceeding.

2  AGREED AND ACCEPTED

3  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
4  CALIFORNIA

5  E. MARTIN ESTRADA
   United States Attorney

6

7  */s/ Maria Jhai*                          2/20/23
   ─────────────────────────         ─────────────
   SOLOMON KIM                               Date
8  MARIA JHAI
   Assistant United States Attorneys
9
                                          2-20-2023
10 ROBERT BOMAN                        ─────────────
   Defendant                               Date
11
                                          2/20/23
12 PETER SWARTH                        ─────────────
   Attorney for Defendant ROBERT BOMAN      Date
13

14

15              CERTIFICATION OF DEFENDANT

16      I have read this agreement in its entirety.  I have had enough

17 time to review and consider this agreement, and I have carefully and

18 thoroughly discussed every part of it with my attorney.  I understand

19 the terms of this agreement, and I voluntarily agree to those terms.

20 I have discussed the evidence with my attorney, and my attorney has

21 advised me of my rights, of possible pretrial motions that might be

22 filed, of possible defenses that might be asserted either prior to or

23 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

24 of relevant Sentencing Guidelines provisions, and of the consequences

25 of entering into this agreement.  No promises, inducements, or

26 representations of any kind have been made to me other than those

27 contained in this agreement.  No one has threatened or forced me in

28 any way to enter into this agreement.  I am satisfied with the

                              18

1  representation of my attorney in this matter, and I am pleading

2  guilty because I am guilty of the charge and wish to take advantage

3  of the promises set forth in this agreement, and not for any other

4  reason.

5

6  ROBERT BOMAN                                  Date  2-20-2023

   Defendant

7

8

9                  CERTIFICATION OF DEFENDANT'S ATTORNEY

10     I am ROBERT BOMAN's attorney.  I have carefully and thoroughly

11  discussed every part of this agreement with my client.  Further, I

12  have fully advised my client of his rights, of possible pretrial

13  motions that might be filed, of possible defenses that might be

14  asserted either prior to or at trial, of the sentencing factors set

15  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

16  provisions, and of the consequences of entering into this agreement.

17  To my knowledge: no promises, inducements, or representations of any

18  kind have been made to my client other than those contained in this

19  agreement; no one has threatened or forced my client in any way to

20  enter into this agreement; my client's decision to enter into this

21  agreement is an informed and voluntary one; and the factual basis set

22  forth in this agreement is sufficient to support my client's entry of

23  a guilty plea pursuant to this agreement.

24

25  PETER SWARTH                                  Date  2/20/22

26  Attorney for Defendant ROBERT BOMAN

27

28

                                19