UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT

April 25, 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IV _____ DEPUTY

UNITED STATES OF AMERICA

v.

ROBERT RUNDO

Case Number:  CR 18-759(A)-CJC-1

## AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION OF ROBERT RUNDO

I, Solomon Kim, being duly sworn, depose and state:

1.      I am a citizen of the United States.  Since September 2019, I have been employed as an Assistant United States Attorney in the United States Attorney's Office for the Central District of California.  I have been licensed to practice law since 2016.  As an Assistant United States Attorney, I am an officer of the United States, and it is my responsibility to prosecute persons charged with criminal violations of the laws of the United States.  During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

2.      This affidavit is submitted in support of a request by the United States for the extradition of ROBERT RUNDO ("RUNDO").

3.      In the course of my duties as an Assistant United States Attorney, I have become familiar with the evidence and the charges in the case of *United States v. Robert Rundo*, No. CR 18-759(A)-CJC-1.  This affidavit does not detail all of the evidence against RUNDO that is known to me, but only the evidence necessary to establish a basis for the extradition request.

### THE CHARGES AGAINST RUNDO

4.      RUNDO was indicted by a grand jury in the Central District of California on November 1, 2018.  An indictment is a formal accusation or charging document issued by a grand jury which is part of the judicial branch of the U.S. government.  A grand jury consists of sixteen to twenty-three randomly selected citizens impaneled to review evidence of crimes presented to it by United States law enforcement authorities.  Each member of the grand jury must review the evidence presented and determine whether there is enough credible evidence to believe that a crime has been committed and that it is likely that the defendant committed the crime.  The grand jury may issue an indictment charging the defendant with a crime when at least 12 grand jurors determine that it is more likely than not that the defendant committed the crime.  After an indictment has been issued, the same grand jury can issue additional, superseding indictments in the same proceeding charging the same or additional crimes.  If further evidence is later presented to the grand jury as to the matters for which an indictment has already been issued, the grand jury may issue a superseding indictment using the same procedures as with an original indictment.  In such a case, the superseding indictment takes the place of the previous indictment.  If still further evidence is presented to the grand jury after the issuance of the superseding indictment, the grand jury may issue a second superseding indictment, which takes the place of the superseding indictment, and so forth.  A warrant for the arrest of the defendant or defendants may issue from a superseding indictment or second superseding indictment using the same procedures as with an original indictment.

5.      On January 4, 2023 a federal grand jury issued a Superseding Indictment charging RUNDO with the following offenses: one count of conspiracy to riot, in violation of Title 18, United States Code, Section 371 and one count of rioting, in violation of Title 18, United States

2

Code, Section 2101.  I have obtained a copy of the Superseding Indictment, certified to be true

and accurate by the Clerk of the Court, and have attached it to this affidavit as Exhibit A.

6.      On January 4, 2023 the Honorable Karen Stevenson, United States Magistrate

Judge for the Central District of California, issued an arrest warrant for RUNDO pursuant to the

Superseding Indictment.  I have obtained a certified copy of the arrest warrant from the clerk of

the court, and have attached it to this affidavit as Exhibit B.

7.      Count One of the Superseding Indictment charges RUNDO with conspiracy to

riot, in violation of Title 18, United States Code, Section 371.  It charges that RUNDO along

with co-defendants and others known and unknown, conspired and agreed with each other to

commit an offense against the United States, specifically rioting, in violation of Title 18, United

States Code, Section 2101.

8.      Under United States law, a conspiracy is an agreement to commit one or more

criminal offenses.  The agreement on which the conspiracy is based need not be expressed in

writing or in words but may simply be a tacit understanding by two or more persons to do

something illegal.  The crime of conspiracy is the agreement to do something unlawful; it does

not matter whether the crime agreed upon was committed.  A person may become a member of a

conspiracy without full knowledge of all of the details of the unlawful scheme or the identities of

all the other members of the conspiracy.  If a person has an understanding of the unlawful nature

of a plan and knowingly and willfully agrees to it, joining in the plan, he is guilty of conspiracy,

even though he may play only a minor part.  A conspirator can be held criminally responsible for

all reasonably foreseeable actions undertaken by other conspirators in furtherance of the criminal

partnership.

3

9.      The crime of conspiracy is an independent offense, separate and distinct from the commission of any specific "substantive offense."  Consequently, a conspirator can be found guilty of the crime of conspiracy to commit an offense, even where the underlying substantive offense that was the purpose of the conspiracy is not completed.

10.     The maximum penalty for a violation of Title 18, United States Code, Section 371, as charged in Count One of the Superseding Indictment, is five (5) years of imprisonment.

11.     Count Two charges RUNDO and others with rioting, in violation of Title 18, United States Code, Sections 2101.  It charges that RUNDO used facilities of interstate commerce with intent to incite, participate in, and carry on a riot, and to commit an act of violence in furtherance of a riot, and to aid or abet any person in inciting and participating in and carrying on a riot and committing any act of violence in furtherance of a riot.

12.     The maximum penalty for a violation of Title 18, United States Code, Section 2101 as charged in Count Two of the Superseding Indictment, is five (5) years of imprisonment.

13.     Title 18, United States Code, Section 2 provides that any person who commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.  Section 2 also provides that any person who willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is also punishable as a principal.

14.     The United States requests the extradition of RUNDO based on the charges in the Superseding Indictment.  The charges are punishable under statutes that (1) were the duly enacted laws of the United States at the time the offenses were committed, (2) were the duly enacted laws of the United States at the time the indictment was filed, and (3) are currently in effect.  The offenses are felony offenses punishable under United States law by more than one

4

year of imprisonment.  I have attached copies of the relevant statutes and the applicable penalty provisions to this affidavit as Exhibit C.

15.     The statute of limitations on prosecuting the offenses charged in Counts One and Two of the Superseding Indictment is governed by of Title 18, United States Code, Section 3282. The statute of limitations for these offenses is five years, meaning that the indictment must be filed within five years of commission of the offense.

16.     Once an indictment has been filed in a federal district court, as with the charges against RUNDO, the statute of limitations is tolled and no longer runs.  In addition, under the laws of the United States, the statute of limitations for a continuing offense, such as conspiracy, begins to run upon the conclusion or completion of the offense, not upon the date it commenced. Because Counts One through Two each charge offenses lasting through May 2018, the original indictment in this matter, filed on November 1, 2018, was filed within the prescribed time period.  A copy of Title 18, United States Code, Section 3282 is included in Exhibit C.

17.     As of the submission of this request, the United States does not believe that RUNDO faces charges in Romania for the conduct charged in the Superseding Indictment.

## SUMMARY OF THE CASE

18.     An investigation by the Federal Bureau of Investigation ("FBI") revealed that from an unknown date but at least from about March 2017 to about May 2018, in the Central District of California and elsewhere, ROBERT RUNDO and others conspired to travel to political rallies and utilize combative tactics and physical violence against people and groups who did not support their ideology.  RUNDO was a co-founder of the "Rise Above Movement" ("RAM"), a white racially motivated violent extremist organization that represented itself publicly as a combat-ready, militant group of a new nationalist white supremacy and identity

movement.  RUNDO described RAM to another leader of a nationwide white supremacist organization in a Discord direct message as, "serving as some sort of militant wing of the socal area for events and just a general group for anybody in the alt right to come and workout with." RUNDO led mixed martial arts training for RAM members to prepare for future confrontations. In March and April 2017, RUNDO traveled to two political rallies where he assaulted others, including a police officer.  RUNDO and other RAM members used the Internet to post videos and pictures of RAM members conducting training in hand-to-hand combat, often interspersed with pictures and video clips of RAM members, including RUNDO, assaulting people at political events, accompanied by messages in support of RAM's white supremacist ideology.

19.     Details and the evidence against RUNDO are described in more detail in the affidavit of FBI Special Agent Scott Bierwirth, which is attached to this affidavit as Exhibit D.

## DESCRIPTION OF RUNDO

20.     RUNDO is described as a white male with brown eyes and brown hair.  He was born on April 28, 1990.  RUNDO is the holder of a United States of America passport, issued on October 31, 2013 with passport number 511382593.  RUNDO was located by Romanian authorities in the Berceni Neighborhood, 4th District, of Bucharest, Romania.  A photograph of RUNDO, taken from his California Department of Motor Vehicles issued driver's license, number Y4649697, is attached as Exhibit E.

## SURRENDER OF PROPERTY

21.     Pursuant to Article 25 of the Treaty, it is requested that any items relevant to the charged offenses found in RUNDO's possession at the time of his arrest be delivered to the United States, if the extradition is granted.

6

## <u>CONCLUSION</u>

22.     The complete list of exhibits attached hereto and incorporated by reference are set

forth below:

| | |
|---|---|
| Exhibit A | Superseding Indictment against ROBERT RUNDO dated January 4, 2023. |
| Exhibit B | Warrant for the Arrest of ROBERT RUNDO dated January 4, 2023 |
| Exhibit C | Relevant Statutes (18 U.S.C. §§ 371, 2101) |
| Exhibit D | Affidavit of Special Agent Scott Bierwirth |
| Exhibit E | Photograph of ROBERT RUNDO |

23.     If Romanian authorities, or a Romanian court, believe that additional information

is needed in support of this extradition request after the submission of this request, the United

States (through the Department of Justice, Office of International Affairs) hereby requests,

pursuant to Article 9 of the 2007 U.S. - Romania Extradition Treaty, that it be given notification

of any perceived deficiencies immediately, and that the United States be given an opportunity to

supplement its request for extradition within a reasonable time period.

//

//

//

24.     This affidavit and the affidavit of Special Agent Scott Bierwirth were sworn to before a United States Magistrate Judge, who is legally authorized to administer an oath for this purpose.  I have thoroughly reviewed this affidavit and the exhibits referenced herein and attest that this evidence indicates that RUNDO is guilty of the offenses charged in the indictment.

/s/ _____
Solomon Kim
Assistant United States Attorney

Sworn and subscribed before me
this  25th  day of April 2023.

*Patricia Donahue*
_____
Hon.   PATRICIA DONAHUE
United States Magistrate Judge
Central District of California

8

**Exhibit A: Superseding Indictment**

**F I L E D**
CLERK, U.S. DISTRICT COURT

1/4/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 18-759(A)-CJC |
| Plaintiff, | F I R S T SUPERSEDING INDICTMENT |
| v. | |
| ROBERT RUNDO, ROBERT BOMAN, and TYLER LAUBE, | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 2101: Riots; 18 U.S.C. § 2(a): Aiding and Abetting] |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

1.   Beginning in or around February 2017, defendants ROBERT RUNDO ("RUNDO"), ROBERT BOMAN ("BOMAN"), and TYLER LAUBE ("LAUBE"), along with others known and unknown to the Grand Jury, participated in a white nationalist organization originally named the "DIY Division" and later re-named the "Rise Above Movement," or "RAM."

2.   Defendants and their co-conspirators presented RAM publicly, through various social-media platforms and other means, as a combat-ready, militant group of a new nationalist white supremacy and identity movement.

3.    Defendants and their co-conspirators used the Internet to post videos and pictures of themselves conducting training in hand-to-hand combat, often interspersed with pictures and video clips of themselves assaulting people at political events, accompanied by messages in support of their white supremacist ideology.

//

//

//

COUNT ONE

[18 U.S.C. § 371]

2

A. <u>OBJECT OF THE CONSPIRACY</u>

4.    The allegations set forth in paragraphs 1 through 3 are incorporated by reference as if fully set forth herein.

5.    Beginning on a date unknown but not later than in or around March 2017, and continuing until on or about May 2018 in Los Angeles County, within the Central District of California, and elsewhere, defendants RUNDO, BOMAN, and LAUBE, along with others known and unknown to the Grand Jury, conspired and agreed with each other to commit an offense against the United States, namely, rioting, in violation of Title 18, United States Code, Section 2101.

B. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

6.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendants RUNDO, BOMAN, and others known and unknown to the Grand Jury would use text messages and the Internet to recruit others to train for and engage in acts of violence at political rallies and organized demonstrations;

b.    Defendants RUNDO, BOMAN, and others known and unknown to the Grand Jury would use text messages and the Internet to coordinate hand-to-hand and other combat training to prepare to engage in violence at political rallies and organized demonstrations;

c.    Defendants RUNDO, BOMAN, LAUBE, and others known and unknown to the Grand Jury would engage in hand-to-hand and other combat training to prepare to engage in violence at political rallies and organized demonstrations;

d.    Defendants RUNDO, BOMAN, LAUBE, and others known and unknown to the Grand Jury would travel to political rallies and

organized demonstrations and assault individuals they identified as holding opposing political views;

     e.  Defendants RUNDO, BOMAN, and others known and unknown to the Grand Jury would use the Internet to share videos and photographs of themselves and each other committing acts of violence at political rallies and organized demonstrations to recruit more people to engage in violence at future events.

C.  <u>OVERT ACTS</u>

    7.  On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants RUNDO, BOMAN, LAUBE, and others known and unknown to the Grand Jury committed the following overt acts within the Central District of California, and elsewhere:

**March 25, 2017: Huntington Beach, California**

<u>Overt Act No. 1:</u>  Beginning no later than on a date unknown but not later than in or around October 2009, and continuing until on or about May 2018, defendants RUNDO, BOMAN, and LAUBE registered and operated social media accounts for the purpose of recruiting others to join RAM, updating members on upcoming events and trainings, and publicizing events, including depictions of RAM members engaging in violence at organized events.

<u>Overt Act No. 2:</u>  On or about March 4, 2017, a RAM associate sent a message through an online social media platform to RAM members and other associates suggesting that the group should start training "group fighting," including "3v3, 1v2, etc." Defendant RUNDO responded to the message stating, "100%. But with the newer guys they gotta get the basics down first."

4

Overt Act No. 3:   On or about March 15, 2017, defendants
RUNDO, BOMAN, and LAUBE along with others, engaged in combat training
in San Clemente, California, to prepare to engage in violence at
upcoming political events.

Overt Act No. 4:   On or about March 18, 2017, a RAM associate
sent messages through an online social media platform to RAM members
and other associates to coordinate combat training, listing defendant
RUNDO as the point of contact, to prepare RAM members and others to
engage in violence at upcoming political events in Huntington Beach,
California and Berkeley, California.

Overt Act No. 5:   On or about March 22, 2017, defendant RUNDO
sent a message on an online social media platform to another
associate stating, "I will be bring the [RAM] banner with some of the
guys I train with anyone want to take part in carting it let me kno."

Overt Act No. 6:   On or about March 25, 2017, defendants
RUNDO, BOMAN, LAUBE and other RAM members attended a political rally
in Huntington Beach, California (the "Huntington Beach Rally").

Overt Act No. 7:   On or about March 25, 2017, defendant RUNDO
committed, participated in, and aided and abetted one or more acts of
violence against individuals at the Huntington Beach Rally.

Overt Act No. 8:   On or about March 25, 2017, defendant BOMAN
committed, participated in, and aided and abetted one or more acts of
violence against individuals at the Huntington Beach Rally.

Overt Act No. 9:   On or about March 25, 2017, defendant LAUBE
committed, participated in, and aided and abetted one or more acts of
violence against individuals at the Huntington Beach Rally.

Overt Act No. 10:   On or about March 26, 2017, defendant BOMAN
posted on his Facebook account a link to an article on The Daily

Stormer titled "Trumpenkriegers Physically Remove Antifa Homos in Huntington Beach," along with the comment, "We did it fam."

Overt Act No. 11: On or about March 26, 2017, defendant BOMAN posted a photograph on his Facebook account showing himself and other RAM members at the Huntington Beach Rally, along with the comment, "Hail victory and the alt-reich."

**April 15, 2017: Berkeley, California**

Overt Act No. 12: From on or about March 27, 2017 through on or about April 3, 2017, a RAM member used interstate communications, including text messages, and Facebook and Twitter messages, to recruit individuals to attend and to provide "security" at a political event in Berkeley, California, on April 15, 2017 (the "Berkeley Rally"), where they would be prepared to engage in hand to hand combat.

Overt Act No. 13: On April 3, 2017, the RAM member posted a Twitter message to another Twitter user, stating "[t]he boys from the recent Huntington Beach rally who kicked antifa off the beach, are going to Berkely 4/15. Can you put some heart in them?"

Overt Act No. 14: On or about April 13, 2027, defendant RUNDO sent a YouTube link to other RAM members and associates on a social medial platform showing large groups of individuals engaging in hand-to-hand combat, with the following message: "I was thinking along these lines."

Overt Act No. 15: On or about April 14, 2017, a RAM member used a Visa credit card with account number ending in 0807 to rent a multi-passenger van from Airport Van Rental at the Los Angeles International Airport, and used the van to transport defendants RUNDO

6

1  and BOMAN, and other RAM members from Southern California to the
2  Berkeley Rally.

3      Overt Act No. 16:   On or about April 14, 2017, defendants RUNDO
4  and BOMAN used and caused to be used a Visa credit card belonging to
5  an associate to reserve hotel rooms for themselves at a Courtyard by
6  Marriott hotel in Richmond, California, to facilitate their
7  attendance at the Berkeley Rally.

8      Overt Act No. 17:   On or about April 15, 2017, defendant RUNDO
9  exchanged messages on a social media platform with the leader of
10 another organization to coordinate their activities at the Berkeley
11 Rally.

12     Overt Act No. 18:   On or about April 15, 2017, defendants
13 RUNDO, BOMAN, and other RAM members prepared to commit acts of
14 violence at the Berkeley Rally by wearing some combination of
15 coordinating grey shirts, goggles, mouth guards, athletic tape around
16 their wrists, and black face masks with white skeleton designs.

17     Overt Act No. 19:   On or about April 15, 2017, defendant RUNDO
18 committed, participated in, and aided and abetted one or more acts of
19 violence against individuals at the Berkeley Rally, including against
20 a Berkeley Police Department police officer.

21     Overt Act No. 20:   On or about April 15, 2017, defendant BOMAN
22 committed, participated in, and aided and abetted one or more acts of
23 violence against individuals at the Berkeley Rally.

24     Overt Act No. 21:   On or about April 15, 2017, a RAM member
25 wrote to a representative of a media company seeking footage of the
26 Berkeley Rally, "We chased over a hundre[d] of them down the street
27 for 2 blocks.  We were savage.  Give a shout out to the [Huntington
28 Beach] boys who went to Berkeley.  We'll love y[o]u forever."

Overt Act No. 22:   On or about April 16, 2017, defendant BOMAN posted a photograph on his Facebook page showing him punching persons at the Berkeley Rally along with the caption, "Oooooi vey!!! Dagoyiiiim knooooow."

Overt Act No. 23:   On or about April 16, 2017, defendant BOMAN posted a photograph on his Facebook account containing a Twitter post in which a journalist identified defendant BOMAN and another RAM member at the Berkeley Rally and accused them of shoving him. Defendant BOMAN wrote, "You come face to face with the enemy, what do you expect. . . [.]"

Overt Act No. 24:   On or about April 16, 2017, a RAM member sent a text message to a RAM associate describing his actions at the Berkeley Rally, and stating, "I was about to jump into that but our guys were just wrecking them, like not even any room to get a hit in. I was like alrite, u guys got it handled then lol."  The associate responded, "I've been looking at videos.  There's a grey-shirted storm trooper at the fucking front every, single, time.  You guys were lions."  The RAM member replied, "Total Aryan victory."

Overt Act No. 25:   On or about April 19, 2017, defendant RUNDO sent a text message to another RAM member to thank him for attending the Berkeley Rally, and then invited him to combat training and offered to buy lunch for all who attend.

Overt Act No. 26:   On or about April 20, 2017, a RAM member wrote on Facebook to defendant BOMAN and other members to request that they participate in another rally in Berkeley on April 27, 2017, stating, "Berkeley again.  Returning victors.  They're going to f[e]el like th[e] SoCal boys OWN their town," and "we can't let

8

1  antifa make a comeback.  Another shaming will break them, a victory

2  will make it like Berkeley ne[v]er happened."

3      <u>Overt Act No. 27:</u>  On or about April 21, 2017, a RAM member

4  sent a text message to another RAM member to invite him to the April

5  27, 2017, political rally in Berkeley, California, stating that he

6  was "driving up to deny antifa a face-saving victory," and intended

7  to "leave in the morning, drive fast, get up there early so we can

8  stretch out and power up, hit it hard and skip town."

9      **June 10, 2017: San Bernardino, California**

10      <u>Overt Act No. 28:</u>  On or about June 1, 2017, a RAM member sent

11  a Facebook message to a RAM associate stating that he and 30 other

12  RAM members were planning to "take over" a "normie" march and shared

13  photographs of signs that RAM members planned to carry at the march.

14      <u>Overt Act No. 29:</u>  On or about June 10, 2017, defendant RUNDO

15  and other RAM members attended a political rally in San Bernardino,

16  California (the "San Bernardino Rally") carrying several of the signs

17  had been shared via Facebook on June 1, 2017.

18      <u>Overt Act No. 30:</u>  On or about June 10, 2017, defendant RUNDO

19  and other RAM members committed, participated in, and aided and

20  abetted one or more acts of violence against persons and property at

21  the San Bernardino Rally.

22      <u>Overt Act No. 31:</u>  On or about June 11, 2017, the RAM Instagram

23  account posted a photograph of defendant RUNDO and other RAM members

24  at the San Bernardino Rally, and the comment, "Just another block

25  taken from #antifa cowards!!!!!!!"

26      <u>Overt Act No. 32:</u>  On or about June 11, 2017, defendant RUNDO

27  wrote to a RAM associate on a social media platform and offered to

28

send the associate a video recording showing "us smashing the antifa car and chas[]ing them" at the San Bernardino Rally.

Overt Act No. 33:   On or about June 13, 2017, a RAM member sent a text message to a RAM associate, stating, "We smashed some antifa as they were leaving."  The associate responded, "If it wasn't for the White Nationalists nothing would ever get done."  The RAM member replied, "This is true would've been no victory in Huntington or Berkeley."

**August 11-12, 2017: Charlottesville, Virginia**

Overt Act No. 34:   On or about June 18, 2017, two RAM members exchanged text messages regarding booking flights to the Unite the Right rally in Charlottesville, Virginia on August 11-12, 2017 (the "Charlottesville Rally").

Overt Act No. 35:   On or about July 23, 2017, defendant RUNDO used the Internet to post a RAM promotional video showing RAM members assaulting counter-protestors at the Huntington Beach Rally and the Berkeley Rally.

Overt Act No. 36:   On or about July 26, 2017, defendant RUNDO sent a Twitter message from the RAM Twitter account to another Twitter user stating, "hope we can get y'all some more commie beatdown vids soon – Antifa never learn ☺."

Overt Act No. 37:   On or about August 10, 2017, defendant BOMAN posted a photograph on his Facebook page showing himself punching a person at the Berkeley Rally.

Overt Act No. 38:   On or about August 10-11, several RAM members traveled from Los Angeles, California, to Charlottesville, Virginia to attend the Charlottesville Rally.

10

Overt Act No. 39:   On or about August 12, 2017, several RAM members attended the Charlottesville Rally, where they committed, participated in, and aided and abetted one or more acts of violence against individuals at the Charlottesville Rally.

**August 2017-May 2018: RAM Members Celebrate Their Assaults and Train For Future Events**

Overt Act No. 40:   On or about September 14, 2017, defendant RUNDO posted a Twitter message containing a photograph of other RAM members assaulting counter-protestors at the Berkeley Rally, with the accompanying text: "#antiantifa, #goodnightleftsisde, #riseabovemovement."

Overt Act No. 41:   On or about September 25, 2017, a RAM member sent a text message to another RAM member stating that he was "back in a position to go hard with activism" after having been "sidetracked after Berkeley."  The receiving RAM member replied that people were "laying a little low on account of [Charlottesville] fallout," and the sending RAM member replied that they could pursue other avenues, and he had "been working on souring Mexicans on visiting my mountain community."

Overt Act No. 42:   On or about December 17, 2017, defendant RUNDO used the Internet to post a promotional video showing defendants RUNDO, BOMAN, LAUBE, and other RAM members assaulting persons at the Huntington Beach Rally and the Berkeley Rally, combined with videos and pictures of RAM members engaging in combat training.

Overt Act No. 43:   On or about January 10, 2018, defendant RUNDO posted a Twitter message from the RAM Twitter account, stating,

"What's up with giving a shoutout to the only alt right crew that actually beats antifa senseless and wins rallies."

Overt Act No. 44:   On or about January 17, 2018, defendant RUNDO posted a Twitter message from the RAM Twitter account, stating, "From the guys that [won] every rally they ever attended and always chased out antifa."

Overt Act No. 45:   On or about February 5, 2018, defendant RUNDO posted a Twitter message from the RAM Twitter account containing a photograph of RAM members, covering their faces with books, stating, "When the squads not out smashing commies . . . #nationalist #lifestyle."

Overt Act No. 46:   On or about February 15, 2018, defendant RUNDO posted a Twitter message from the RAM Twitter account containing a photograph of RAM members, including defendants RUNDO and BOMAN and other RAM members, at the Huntington Beach Rally, standing behind a large banner with the accompanying text, "Shortly after this pic antifa was [blown the fuck out] in Huntington Beach."

Overt Act No. 47:   On or about April 18, 2018, defendant RUNDO and other RAM members traveled to Germany, Ukraine, and Italy, where they engaged in combat training with members of European white supremacist organizations.

Overt Act No. 48:   On or about May 15, 2018, defendant RUNDO sent a Twitter message from the RAM Twitter account to another Twitter user who had proposed interviewing RAM leaders on a podcast, and stated, "Maybe if there [is] enough time could mention [Berkeley] how we were the first guys to jump over the barrier and engage and how that had a huge impact."

COUNT TWO

[18 U.S.C. §§ 2101, 2(a)]

8. The allegations set forth in paragraphs 1 through 3 are incorporated by reference as if fully set forth herein.

9. Beginning on or about March 16, 2017, and continuing until on or about April 15, 2017, in Los Angeles County, within the Central District of California, defendants RUNDO and BOMAN, each aiding and abetting the other, used facilities of interstate commerce with intent to incite, participate in, and carry on a riot, and to commit an act of violence in furtherance of a riot, and to aid or abet any person in inciting and participating in and carrying on a riot and committing any act of violence in furtherance of a riot, including but not limited to:

   a.   Between March 16, 2017 and April 14, 2017, defendant BOMAN sent Facebook messages to recruit RAM members and others to attend an organized demonstration in Berkeley, California, on April 15, 2017 (the "Berkeley Rally").

   b.   Between March 18, 2017 and April 15, 2017, defendant RUNDO sent messages through the online social media platform to coordinate RAM members' attendance at the Berkeley Rally and to arrange combat training events to prepare RAM members and associates to engage in violence at the Berkeley Rally.

   c.   On or about April 14, 2017, defendants RUNDO and BOMAN used and caused to be used a Visa credit card belonging to an associate to reserve hotel rooms for themselves and others at a Courtyard by Marriott hotel in Richmond, California.

10. During the course of such use of facilities of interstate commerce and thereafter, on or about April 15, 2017, on and around

13

the grounds of Martin Luther King Jr. Civic Center Park in Berkeley, California, defendants RUNDO and BOMAN incited, participated in, and carried on a riot, committed acts of violence in furtherance of a riot, and aided and abetted other persons inciting and participating in and carrying on a riot and committing acts of violence in furtherance of a riot.

A TRUE BILL

/S/

_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

ANNAMARTINE SALICK
Assistant United States Attorney
Chief, National Security Division

SOLOMON KIM
MARIA JHAI
Assistant United States Attorneys
Terrorism and Export Crimes Section

I hereby attest and certify on __04/19/2023__
that the foregoing document is full, true
and correct copy of the original on file in
my office, and in my legal custody

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____LP_____
DEPUTY CLERK

**Exhibit B: Warrant for ROBERT RUNDO**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>ROBERT RUNDO<br><br>DEFENDANT(S) | CASE NUMBER:<br><br>CR 18-759(A)-CJC-1<br><br>---<br><br>**WARRANT FOR ARREST** |

To:     UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **ROBERT RUNDO**
and bring him/her forthwith to the nearest Magistrate Judge to answer an Indictment charging him/her with Conspiracy and Rioting, in violation of Title 18, United States Code, Sections 371 and 2101.

| | |
|---|---|
| Kiry K. Gray<br>NAME OF ISSUING OFFICER<br><br>Clerk of Court<br>TITLE OF ISSUING OFFICER<br> V. VELASCO<br><br>SIGNATURE OF DEPUTY CLERK | January 4, 2023        Los Angeles, CA<br><br>DATE AND LOCATION OF ISSUANCE<br><br>By:  KAREN STEVENSON<br>NAME OF JUDICIAL OFFICER |

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

| | |
|---|---|
| DATE RECEIVED | NAME OF ARRESTING OFFICER |
| DATE OF ARREST | TITLE |
| **DESCRIPTIVE INFORMATION FOR DEFENDANT**<br>**CONTAINED ON PAGE TWO** | SIGNATURE OF ARRESTING OFFICER |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER: |
|---|---|
| PLAINTIFF, | CR 18-759(A)-CJC-1 |
| v. | |
| ROBERT RUNDO | **WARRANT FOR ARREST** |
| DEFENDANT(S) | |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: | |
|---|---|---|---|---|---|---|---|
| YEAR OF BIRTH: **1900** | | PLACE OF BIRTH: | | SOCIAL SECURITY NO : | | DRIVER'S LICENSE NO | ISSUING STATE |
| ALIASES: | | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: | | | | | |
| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | | AUTO COLOR: | | AUTO LICENSE NO : | ISSUING STATE |
| LAST KNOWN RESIDENCE: | | | | LAST KNOWN EMPLOYMENT: | | | |
| FBI NUMBER: | | | | | | | |
| ADDITIONAL INFORMATION: | | | | | | | |

| INVESTIGATIVE AGENCY NAME: **FBI** | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|

NOTES:



I hereby attest and certify on ___4/24/2023___
that the foregoing document is full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____MZ_____
DEPUTY CLERK

**Exhibit C: Relevant Statutes**

**18 U.S. Code § 371 - Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**18 U.S. Code § 2101 – Riots**

(a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent—
(1) to incite a riot; or

(2) to organize, promote, encourage, participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot; and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph— [1]

Shall be fined under this title, or imprisoned not more than five years, or both.

(b) In any prosecution under this section, proof that a defendant engaged or attempted to engage in one or more of the overt acts described in subparagraph (A), (B), (C), or (D) of paragraph (1) of subsection (a) [2] and (1) has traveled in interstate or foreign commerce, or (2) has use of or used any facility of interstate or foreign commerce, including but not limited to, mail, telegraph, telephone, radio, or television, to communicate with or broadcast to any person or group of persons prior to such overt acts, such travel or use shall be admissible proof to establish that such defendant traveled in or used such facility of interstate or foreign commerce.

(c) A judgment of conviction or acquittal on the merits under the laws of any State shall be a bar to any prosecution hereunder for the same act or acts.

(d) Whenever, in the opinion of the Attorney General or of the appropriate officer of the Department of Justice charged by law or under the instructions of the Attorney General with

authority to act, any person shall have violated this chapter, the Department shall proceed as speedily as possible with a prosecution of such person hereunder and with any appeal which may lie from any decision adverse to the Government resulting from such prosecution.

(e) Nothing contained in this section shall be construed to make it unlawful for any person to travel in, or use any facility of, interstate or foreign commerce for the purpose of pursuing the legitimate objectives of organized labor, through orderly and lawful means.

(f) Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State, any possession or Commonwealth of the United States, or the District of Columbia, from exercising jurisdiction over any offense over which it would have jurisdiction in the absence of this section; nor shall anything in this section be construed as depriving State and local law enforcement authorities of responsibility for prosecuting acts that may be violations of this section and that are violations of State and local law.

## 18 U.S.C. § 2 - Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**Exhibit D: Affidavit of Federal Bureau of Investigation Special
Agent Scott Bierwirth**

**Exhibit E: Photograph of ROBERT RUNDO**

