# EXHIBIT PP

**FEDERAL PUBLIC DEFENDER**
CENTRAL DISTRICT OF CALIFORNIA
321 EAST 2nd STREET
LOS ANGELES, CALIFORNIA 90012-4202
213-894-2854
213-894-0081 FAX

**CUAUHTEMOC ORTEGA**                                                  **ANGELA VIRAMONTES**
*Federal Public Defender*                                              *Riverside Branch Chief*
**AMY M. KARLIN**                                                      **KELLEY MUNOZ**
*Chief Deputy*                                                         *Santa Ana Branch Chief*
                                                                       **K. ELIZABETH DAHLSTROM**
                                                                       *Chief, Capital Habeas Unit*

Direct Dial: (213) 894-5310

December 13, 2023

Kathrynne Seiden
Solomon Kim
Assistant United States Attorneys
312 North Spring Street
Los Angeles, CA 90012
Email: kathrynne.seiden@usdoj.gov
       solomon.kim@usdoj.gov

Re:     *U.S. v. Robert Paul Rundo,* CR-18-759-CJC

Dear AUSAs Seiden and Kim:

Thank you for the discovery you have provided in this case thus far. After reviewing the available discovery and information in the public domain regarding prosecutions stemming from the protests implicated in this matter and others, we believe Mr. Rundo may have a viable motion to dismiss based on selective prosecution for participating in protected First Amendment activity. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) (explaining that to prevail on a motion to dismiss for selective prosecution, the defendant bears the burden of showing "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose"). What follows is a brief summary of why we believe such discovery is merited and the discovery we request. Because your position might require us to file timely motions with the Court, we appreciate your prompt response.

## Discriminatory Purpose & Effect

When this matter was initially charged in October 2018, it appears that not a single Anti-Riot Act case was charged in the Ninth Circuit, let alone in this district, since PACER began keeping track. This is so despite numerous incidents over the preceding years that, based on the government's view of this matter, could also be categorized as a "riot."[1]

---

[1] *See, e.g.,* Hamed Aleazis and Evan Sernoffsky, *North Oakland cleans up from riot night: 'It makes no sense,'* SF GATE (Nov. 26, 2014), https://www.sfgate.com/news/article/North-Oakland-cleans-up-from-riot-night-It-

December 13, 2023
Page 2 of 5

      The discovery in this case reveals that multiple groups, including counter-protestors and left-wing political groups, engaged in violence at the incident on April 15, 2017 in Berkeley, California, alleged in Counts 1 and 2 of the First Superseding Indictment. *See*, *e.g.*, USA_201269-71 (describing how "the two groups were swarming around one another"; "both side[s] were throwing projectiles at one another"; "the Left-side [was] throwing M-80 fireworks and the Right-side throwing various objects"); *see also* USA_00028478 (describing a counter-protestor who hurled eggs at Trump supporters). The same goes for the incidents at Huntington Beach on March 25, 2017, alleged in Count 1. *See* USA_00042374 (describing assault where counter-protestor pepper sprayed a woman unprovoked).

      Based on reports produced by the government, law enforcement received intelligence about these groups. *See* USA_201269-71 (describing "'ramping up rhetoric' towards violence from groups on both sides in the days and weeks leading up to the 04/15/2017 event"); *see also* USA_00201279-80 (describing how "[l]eading up to the event, prior events and intelligence briefings, along with open source information led [the officer] to have an expectation of violence and to anticipate that the right-wing and left-wing groups were planning to engage in violence at the rally/riot that day").

      In fact, per the government's discovery, some of the other people arrested at the protest on April 15, 2017 confirmed their intent to engage in violence and property destruction at the event. For example, one young woman, Akhalia Brousard, allegedly sprayed a woman with pepper spray and punched a speaker "in an unprovoked attack" because "she felt like 'fighting a white bitch today.'" USA_00028505. Another officer described apprehending someone with "a foreign object which turned out to be a legitimate incendiary device" and that suspect admitted "he came to 'finish the riot.'" *See* USA_00201273. The same goes for the March 25, 2017 incident in Huntington Beach. *See* USA_00042375 ( "Fragosa said that he came with two of the other three people that had been arrested for pepper spraying the crowd" and that "he knew that the man and woman he came with both had pepper spray"; "Fragosa said that he came to protest fascism, not to fight personally" and "that he knew the confrontation could get violent, that's why he had the mouth guard and pepper spray, for his personal protection.").

      Yet, Mr. Rundo and other alleged members of "RAM" remain the only people charged federally in connection with these and similar incidents from this time period. The discernable controlling difference appears to be their beliefs, i.e., the government's view that they are white supremacists. This is not a proper basis to distinguish Mr. Rundo from the other similarly situated people at these or similar incidents. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) (prohibiting any prosecution "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, . . . including the exercise of protected statutory and constitutional rights"). Rather, a person's beliefs are constitutionally protected, no matter

---

5919461.php, Steve Kenny, *Protest turns violent at Donald Trump Rally in Costa Mesa, Calif.*, N.Y. TIMES (April 29, 2016), https://www.nytimes.com/2016/04/30/us/donald-trump-rally-protest-costa-mesa.html; Serna, Joseph, *Neo-Nazis didn't start the violence at state Capitol, police say*, LOS ANGELES TIMES (June 27, 2016), https://www.latimes.com/local/lanow/la-me-ln-neo-nazi-event-stabbings-capitol-20160627-snap-story.html; *30 Arrested, 3 Officers Injured in Oakland Anti-Trump Protest*, CBS Bay Area (Nov. 10, 2016), https://www.cbsnews.com/sanfrancisco/news/oakland-anti-donald-trump-protest-vandalism-arrest-officers-injured/.

December 13, 2023
Page 3 of 5

how repugnant the government might find them.  *See United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (reversing conviction because a defendant is "entitled to an acquittal if his evidence proved that the authorities purposefully discriminated against those who chose to exercise their First Amendment rights"); *see also United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) (en banc) (observing prohibition against punishing individuals more harshly for being "a member of a group unpopular with the government.").  Thus, selecting to charge Mr. Rundo-- but not other equally culpable people for the same alleged misconduct--violated his right to equal protection under the Fifth Amendment.  *See Wayte*, 470 U.S. at 608 & n.9.

For these reasons, we believe we have put forth at least a prima facie case of selective prosecution.  Accordingly, we are entitled to discovery from the government on this claim.  Here are our specific requests, although we reserve the right to supplement these requests further:

### Requests for Discovery

(1) A list by case number of all cases brought by the U.S. Attorney's Office for the Central District of California charging violations of 18 U.S.C. § 2101 in the last 10 years.

(2) Identify whether state, federal, or joint law enforcement authorities investigated each of the cases listed in response to Question 1.

(3) Explain the criteria used by the U.S. Attorney's Office for the Central District of California for deciding whether to file charges for violations of 18 U.S.C. § 2101.

(4) Explain the criteria used by the U.S. Attorney's Office for the Central District of California for deciding whether to federally prosecute a person who was investigated and/or prosecuted by the local or state authorities and/or local or state government for arson.

(5) A list of all persons who were considered by the U.S. Attorney's Office for the Central District of California for prosecution for a violation of 18 U.S.C. § 2101 in the last ten years but for whom prosecution was declined and the reason for why prosecution was declined.

(6) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls (phone log), between any attorney or employee of the U.S. Attorney's Office for the Central District of California and the local prosecuting offices for Los Angeles, San Bernardino, Orange, and Alameda counties in California, and Albemarle County, Virginia related to the decision to prosecute Robert Rundo.

(7) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls, between any federal agent or any attorney or employee of the U.S. Attorney's Office for the Central District of California and the Berkeley Police Department, as well as the police department for U.C.

December 13, 2023
Page 4 of 5

(8) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls, between any federal agent or any attorney or employee of the U.S. Attorney's Office for the Central District of California and the Huntington Police Department and/or the California Department of Parks and Recreation State Park Police related to the decision to prosecute Robert Rundo.

(9) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls, between any federal agent or any attorney or employee of the U.S. Attorney's Office for the Central District of California and the San Bernardino Police Department related to the decision to prosecute Robert Rundo.

(10) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls, between any federal agent or any attorney or employee of the U.S. Attorney's Office for the Central District of California and the Charlottesville Police Department and/or University of Virginia Police Department related to the decision to prosecute Robert Rundo.

(11) All communications, including but not limited to emails, voicemails, text messages, and records of phone calls, between and among attorneys and/or employees of the U.S. Attorney's Office for the Central District of California related to the decision to prosecute Robert Rundo.

(12) All communications, including but not limited to memorandums, emails, voicemails, text messages, and records of phone calls, between any attorney or employee of the U.S. Attorney's Office for the Central District of California and any employee or attorney of the Department of Justice related to the decision to prosecute Robert Rundo.

(13) All communications, including but not limited to memorandums, emails, voicemails, text messages, and records of phone calls, between any attorney or employee of the U.S. Attorney's Office for the Central District of California and any employee or attorney of the Department of Justice related to the decision to federally prosecute, or not prosecute, cases arising out of the following incidents:

    a. April 28, 2016 incident in Costa Mesa, California;[2]

---

[2] Steve Kenny, *Protest turns violent at Donald Trump Rally in Costa Mesa, Calif.*, N.Y. TIMES (April 29, 2016), https://www.nytimes.com/2016/04/30/us/donald-trump-rally-protest-costa-mesa.html.

December 13, 2023
Page 5 of 5

      b.      June 26, 2016 incident in Sacramento, California;[3]

      c.      February 1, 2017 incident in Berkeley, California;[4]

      d.      March 4, 2017 incident in Berkeley, California;[5]

      e.      March 15, 2017 incident in Berkeley, California (i.e., the incident surrounding Counts One and Two here);

      f.      August 11, 2017 incident in Charlottesville, Virginia;[6]

      g.      August 12, 2017 incident in Charlottesville, Virginia (i.e., the incident alleged as an Overt Act in Count One);

      h.      June 10, 2017 incident in San Bernardino, California (i.e., the incident alleged as an Overt Act in Count One);

      i.      August 20, 2017 incident in Laguna Beach, California;[7]

      j.      August 27, 2017 incident in Berkeley, California[8]

(14)    All communications, including but not limited to memorandums, emails, voicemails, text messages, and records of phone calls, between any attorney or employee of the U.S. Attorney's Office for the Central District of California and any

---

[3] Joseph Serna, *Neo-Nazis didn't start the violence at state Capitol, police say*, LOS ANGELES TIMES (June 27, 2016), https://www.latimes.com/local/lanow/la-me-ln-neo-nazi-event-stabbings-capitol-20160627-snap-story.html

[4] Thomas Fuller, Christopher Mele, *Berkeley Cancels Milo Yiannopoulos Speech, and Donald Trump Tweets Outrage*, N.Y. TIMES (Feb. 1, 2017), https://www.nytimes.com/2017/02/01/us/uc-berkeley-milo-yiannopoulos-protest.html.

[5] Amy B. Wang, *Pro-Trump rally in Berkeley turns violent as protestors clash with the president's supporters*, THE WASHINGTON POST (March 5, 2017), https://www.washingtonpost.com/news/post-nation/wp/2017/03/05/pro-trump-rally-in-berkeley-turns-violent-as-protesters-clash-with-the-presidents-supporters/.

[6] Stefan Becket, *Torch-wielding white nationalists march through University of Virginia campus*, CBS News (Aug. 12, 2017), https://www.cbsnews.com/news/torch-carrying-white-nationalists-march-through-university-of-virginia-ahead-of-rally/.

[7] Bryce Alderton, *Thousands of counter-protestors oppose America First! rally in Laguna Beach*, LA Times (Aug. 20, 2017), https://www.latimes.com/socal/daily-pilot/news/tn-dpt-me-lb-america-first-rally-20170820-story.html; *see also* Erika I. Ritchie, *Laguna Beach police make 4th arrest stemming from America First! Rally*, THE ORANGE COUNTY REGISTER (Aug. 23, 2017), https://www.ocregister.com/2017/08/23/laguna-beach-police-make-4th-arrest-stemming-from-america-first-rally/.

[8] James Queally, Paige St. John, Benjamin Oreskes, David Zahniser, *Violence by far-left protesters in Berkeley sparks alarm*, LOS ANGELES TIMES (Aug. 28, 2017), https://www.latimes.com/local/lanow/la-me-ln-berkeley-protests-20170827-story.html.

December 13, 2023
Page 6 of 5

    employee or attorney of the Department of Justice and/or local law enforcement about other individuals involved in the incidents listed in Request No. 13 and the decision to prosecute, or not prosecute those individuals.

  Please cc our assistants, Jessica_Ruvalcaba@fd.org, and Ingrid_Perez@fd.org, on all production correspondence, including any invitations to USAfx.

  We appreciate your prompt provision of discovery and assistance on these requests. If any part of this letter is unclear, or you feel you are not obligated to produce any of the above, please contact me so that we may discuss it.

        Sincerely,

        */s/ Erin M. Murphy*
        ERIN M. MURPHY
        Deputy Federal Public Defender