E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
SOLOMON KIM (Cal. Bar No. 311466)
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorneys
Terrorism and Export Crimes Section
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2450/0631
        Facsimile: (213) 894-2979
        E-mail:     solomon.kim@usdoj.gov
                    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>              v.<br><br>ROBERT RUNDO, and<br>ROBERT BOMAN<br><br>        Defendants. | No. CR 18-00759(A)-CJC<br><br>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT<br><br>Hearing Date: 2/21/2024<br>Hearing Time: 9:00 A.M.<br>Location:     Courtroom of the<br>              Hon. Cormac J.<br>              Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the undersigned Assistant United States Attorneys, hereby files its Opposition to Defendants' Motion to Dismiss the Indictment.

//

//

This Opposition is based upon the attached memorandum of points and authorities and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 5, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division


_____/s/_____
SOLOMON KIM
KATHRYNNE N. SEIDEN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  PROCEDURAL AND STATUTORY BACKGROUND............................2

     A.   Original Indictment and Dismissal........................2

     B.   Ninth Circuit Reversal...................................2

     C.   The First Superseding Indictment.........................3

III. ARGUMENT.......................................................4

     A.   Defendants' Vagueness Challenge is Barred................4

     B.   The ARA Is Not Vague As Applied to Defendants............6

     C.   The ARA is Not Facially Vague............................9

          1.   The term "riot" is not vague........................9

          2.   The terms "participate in or carry on a riot" are
               not vague.........................................12

          3.   Overt Act after the use of interstate commerce is
               not vague.........................................14

     D.   Count Two Sufficiently Alleges a Violation of the ARA....17

IV.  CONCLUSION....................................................21

i

**TABLE OF AUTHORITIES**

**CASES:**

<u>Brandenburg v. Ohio</u>,
    395 U.S. 444 (1969).........................................9, 10

<u>Borden v. School Dist. of Tp. of East Brunswick</u>,
    523 F.3d 153 (3rd Cir. 2008)..................................13

<u>Expressions Hair Design v. Schneiderman</u>,
    581 U.S. 37 (2017)............................................5

<u>Grayned v. City of Rockford</u>,
    408 U.S. 104 (1972)..........................................13

<u>Hill v. Colorado</u>,
    530 U.S. 703 (2000)..........................................16

<u>Holder v. Humanitarian Law Project</u>,
    561 U.S. 1 (2010)............................................13

<u>Iannelli v. United States</u>,
    420 U.S. 770 (1975)..........................................22

<u>In re Shead</u>,
    302 F. Supp. 560 (N.D. Cal. 1969)........................10, 12

<u>Johnson v. United States</u>,
    135 S. Ct. 2551 (2015)...................................13, 14

<u>National Mobilization Committee to End the War in Vietnam v. Foran,
et al.</u>,
    411 F.2d 934 (7th Cir. 1969)..........................7, 8, 11

<u>Sessions v. Dimaya</u>,
    138 S.Ct. 1204 (2018).......................................12

<u>United States v. Ayers Berger</u>,
    924 F.2d 1468 (9th Cir. 1991)................................8

<u>United States v. Betts</u>,
    509 F. Supp. 3d 1053 (C.D. Ill. 2020).......................9

<u>United States v. Daley</u>,
    378 F. Supp. 539 (W.D. Va. 2019)............................9

<u>United States v. Dellinger</u>,

472 F.2d 340 (7th Cir. 1972)...............................10, 16

United States v. Griefen,
    200 F.3d 1256 (9th Cir. 2000)................................10

United States v. Lanier,
    502 U.S. 259 (1997)..........................................10

United States v. Markiewicz,
    978 F.2d 786 (2d Cir. 1992)..................................15

United States v. Miselis,
    972 F.3d 518 (4th Cir. 2020)..................................9

United States v. Rundo,
    990 F.3d 709 (9th Cir. 2021)..................................3

United States v. Sheldon,
    755 F.3d 1047 (9th Cir. 2014)...........................passim

United States v. Williams,
    553 U.S. 285 (2008).....................................passim

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
    455 U.S.489 (1982)......................................passim

Virginia v. Black,
    538 U.S. 343 (2003)..........................................10

**STATUTES:**

18 U.S.C. § 2101...............................................10

18 U.S.C. § 2101(a)..........................................4, 16

18 U.S.C. § 2102(a)..........................................7, 12

18 U.S.C. § 2102(b)..........................................8, 16

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3        Defendants and their co-conspirators traveled to various

4   protests to violently oust those whose viewpoints they found

5   objectionable.  In doing so, defendants not only spoke about

6   violence, they actively pursued it.  They not only threatened

7   physical attacks, they executed them.  This case is not about what

8   defendants said.  It is about what they did.

9        Despite defendants' repeated acts of violence, defendants have

10  continuously sought to shield their conduct under the guise of the

11  First Amendment, simply because their conduct occurred within the

12  broader context of demonstrations.  The Anti-Riot Act of 1968

13  ("ARA"), as refined by the Ninth Circuit, provides no such immunity,

14  and, in fact, criminalizes defendants' exact behavior: the

15  participation in a riot.

16       Having failed in their attempt to dismiss the case on

17  overbreadth grounds, defendants now request that this case be

18  dismissed because the ARA is unconstitutionally vague and the

19  indictment fails to state a claim under the statute.  To date, every

20  court that has analyzed the ARA for vagueness has rejected such a

21  challenge.  Defendants' claims fare no better here.  The Supreme

22  Court has made it clear that an individual whose conduct is clearly

23  proscribed by a statute cannot raise a vagueness challenge of any

24  kind -- whether as applied or facial.  Because the ARA clearly

25  prohibits defendants' acts of violence at demonstrations, their

26  vagueness challenge fails at the outset.  Even assuming defendants

27  could overcome this bar, their vagueness challenge fails on the

28

1

merits.  The majority of their vagueness argument rests on a flawed understanding of the vagueness doctrine that seeks to relitigate overbreadth issues that the Ninth Circuit already conclusively resolved.  The terms that defendants challenge as being vague are also specifically defined, narrowly tailored, and subject to a scienter requirement.  In addition, defendants' failure-to-state-a-claim argument relies on a tortured reading of the statute that ignores its plain language.  Defendants' arguments challenging the vagueness of the ARA and sufficiency of the indictment are therefore meritless, and this Court should deny defendants' motion.

## II.  PROCEDURAL AND STATUTORY BACKGROUND

### A.  Original Indictment and Dismissal

The original indictment charged defendants with conspiracy to violate the ARA, and rioting in violation of the ARA.  (Dkt. 47.) Defendants subsequently moved to dismiss the indictment on several grounds, including that the ARA was overbroad and vague, and that the indictment failed to state a claim against.  (Dkts. 134, 142.)

In June 2019, this Court dismissed the indictment, finding that the ARA was unconstitutionally overbroad on its face.  (Dkt. 145.) Because that finding alone was sufficient to dismiss the indictment, this Court did not rule on defendants' other arguments, including those concerning constitutional vagueness.  (Id. at 12 n.3.)

### B.  Ninth Circuit Reversal

Two years later, the Ninth Circuit reversed this Court's order in part, holding that portions of the ARA were overbroad, but that they were severable from the remaining constitutional portions of the statute.  United States v. Rundo, 990 F.3d 709 (9th Cir. 2021).  In doing so, the Ninth Circuit issued two important holdings.

1    First, the Ninth Circuit directly addressed defendants'
2  contention that, under the statute, the use of an interstate facility
3  (or travel in interstate commerce) was too far removed in time from
4  the four overt rioting acts specified in the statute (the "Overt
5  Acts") to satisfy <u>Brandenburg v. Ohio</u>'s imminence requirement.  <u>Id.</u>
6  at 715 (citing 395 U.S. 444 (1969)).  The Ninth Circuit resolved this
7  issue by holding that the Overt Acts were themselves required overt
8  acts to be satisfied, not mere goals towards which an incremental
9  step can be taken.  <u>Id.</u> at 715-16.  In doing so, the Ninth Circuit
10 conclusively resolved any <u>Brandenburg</u> imminence concerns by holding
11 that this interpretation of the statute satisfied the requirement.
12 <u>Id.</u>  At no point did the Ninth Circuit ever suggest, let alone hold,
13 that the Overt Acts must be completed both during <u>and</u> after the use
14 of an interstate facility or interstate travel to satisfy the
15 imminence requirement.

16    Second, the Ninth Circuit severed the terms "organize,"
17 "promote," or "encourage" completely from the ARA and held that such
18 a revision of the statute satisfied <u>Brandenburg</u>'s imminence
19 requirement such that that the statute, as revised, no longer
20 prohibited a substantial amount of protected speech.  <u>Id.</u> at 716-19.
21 Having conclusively resolved any overbreadth concerns stemming from
22 <u>Brandenburg</u>'s imminence requirement, the only issue that it did not
23 reach and left open, as relevant here, was defendants' vagueness
24 challenge.  <u>Id.</u> at 712 n.3.

25    **C.   The First Superseding Indictment**

26    Following the Ninth Circuit's decision, the government filed a
27 first superseding indictment ("FSI").  (Dkt. 209).  The FSI charges
28 defendants with conspiracy in violation of Title 18, United States

3

1    Code, Section 371, and rioting, in violation of Title 18, United

2    States Code, Sections 2101 and 2(a).  (Id.)  The conspiracy count

3    charges that beginning on or about March 2017 and continuing until

4    or about May 2018, defendants, along with others, conspired and

5    agreed to engage in the crime of rioting.  In support of that charge,

6    the conspiracy count sets forth 48 overt acts, ranging from October

7    2019 to May 15, 2018.  (Id.)  In particular, the FSI alleges both the

8    use of interstate facilities, including text messages and Internet

9    messages, and the commission of overt acts in furtherance of a riot,

10   namely acts of violence.  (See e.g., id. ¶¶ 2-3, 6, 7 Overt Acts

11   ("OA") 1-9, OA 12-20, OA 28-30.)

12       The rioting count charges that beginning on or about March 16,

13   2017 and continuing until on or about April 15, 2017, defendants,

14   each aiding and abetting the other, used facilities of interstate

15   commerce with the intent to incite, participate in, and carry on a

16   riot, and to commit an act of violence in furtherance of a riot.

17   (Id. ¶ 9.)  The rioting count charges that during the course of such

18   use of interstate facilities and thereafter, defendants in fact

19   committed violent acts.  (Id.)

20   **III. ARGUMENT**

21       **A.   Defendants' Vagueness Challenge is Barred**

22       Defendants' vagueness challenge -- both as applied and facial --

23   fails at the outset because defendants engaged in conduct plainly

24   proscribed by the ARA, namely the use of violence in furtherance of a

25   riot.  The Supreme Court has repeatedly held that "even to the extent

26   a heightened vagueness standard applies, a [defendant] whose speech

27   is clearly proscribed cannot raise a successful vagueness claim under

28   the Due Process Clause of the Fifth Amendment for lack of notice."

                                    4

1  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010).  This "rule

2  makes no exception for conduct in the form of speech."  *Id.*;

3  *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 48-49 (2017)

4  (rejecting as-applied vagueness challenge because plaintiffs' conduct

5  was clearly proscribed by the applicable statute).

6       There can be no dispute in this case that defendants' conduct

7  clearly falls within the scope of the ARA.  The FSI charges

8  defendants with committing actual acts of violence at multiple

9  rallies, not mere threats of violence.  (*See* FSI ¶ 7 OA 6-8, 19-20,

10  29-30.)  The FSI also alleges several instances of defendants' use of

11  interstate commerce, namely the use of text messages and online

12  social media, both prior and subsequent to their violent conduct.

13  For example, the FSI alleges that just two days before the Berkeley

14  rally, defendant Rundo circulated a YouTube link to other RAM members

15  on social media showing large groups of individuals engaging in hand-

16  to-hand combat, with the message; "I was thinking along these lines."

17  (*Id.* OA 14.)  Likewise, the FSI alleges that, in the weeks and days

18  leading up to the Berkeley rally, defendant Boman sent Facebook

19  messages to recruit RAM members and others to attend the Berkeley

20  rally, where defendants and other RAM members engaged in numerous

21  acts of violence.  (*Id.* ¶ 9.)  These allegations and others

22  demonstrate defendants' intent to incite, participate in, and commit

23  violence at multiple demonstrations.  (*See id.* ¶ 6.)  Defendants'

24  as-applied and facial challenges therefore fail at the outset.  *See*

25  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

26  489, 495 (1982) ("A plaintiff who engages in some conduct that is

27  clearly proscribed cannot complain of the vagueness of the law as

28  applied to the conduct of others.").

**B.   The ARA Is Not Vague As Applied to Defendants**

Even assuming defendants can somehow overcome this bar, their vagueness challenge fails on the merits.  The ARA is not vague as applied to defendants for the reasons discussed above, namely because they used facilities of interstate commerce with the intent to commit violence in furtherance of a riot, and then they in fact committed violence in furtherance of a riot.  Defendants present four reasons in support of their as-applied vagueness challenge, all of which fail.

First, defendants argue that the FSI continues to charge defendants solely for organizing, promoting, and encouraging a riot, acts the Ninth Circuit held should be severed from the ARA, and is therefore vague.  (Dkt. 22.)  That is plainly untrue.  As outlined above, the FSI charges defendants with inciting, participating in, carrying on, and committing acts of violence at multiple riots, which the ARA clearly prohibits.  (See FSI ¶ 7 OA 3, 6-8, 19-20, 29-30.)

Second, defendants argue that the FSI allegations relate to the use of facilities of interstate commerce that is too far removed in time before any act of violence was committed.  (Dkt. 286 at 22.)  They argue that this raises imminence concerns under the First Amendment.  (See id.)  However, as outlined further below, defendants' argument is merely an attempt to relitigate First Amendment issues that the Ninth Circuit already resolved in Rundo.  On appeal, the Ninth Circuit reviewed the ARA and revised the statute to eliminate any Brandenburg imminence concerns.  In doing so, it never imposed any immediacy requirement between the use of interstate commerce and the Overt Act beyond that which the statute already states in its plain language (i.e., the Overt Act occurring during or

6

1   after such use).  Rundo, 990 F.3d at 716.  All that the ARA requires

2   therefore is for defendant to use interstate commerce with the intent

3   to commit an Overt Act and to complete the Overt Act thereafter with

4   the same intent.  Id.  Defendants' conduct clearly falls within this

5   proscription.

6        Even assuming the Ninth Circuit left this issue unresolved,

7   which it did not, the FSI, as outlined above, provides sufficient

8   notice to defendants because their use of interstate commerce and

9   their acts of violence were in fact close in time.  Just two days

10  before the Berkeley rally, for example, defendant Rundo circulated a

11  YouTube video regarding fighting formation.  (FSI ¶ 7 OA 14.)  On the

12  day of the rally, defendant Rundo then exchanged messages with the

13  leader of another organization to coordinate their activities at the

14  rally.  (Id. OA 17.)  On that same day, defendant Rundo attended the

15  Berkeley Rally where he and his co-conspirators engaged in violence.

16  (Id. OA 19.)  These allegations provide sufficient notice that

17  defendants used interstate commerce[1] and then completed an Overt Act,

18  with the specific intent to commit such an act.  That is all the

19  notice the constitution requires.  While defendants may argue that

20  the government fails to meet its burden of proof under these

21  circumstances, such an argument goes to the weight of the evidence,

22  not the sufficiency of the allegations.  See Williams, 553 U.S. at

23  306 ("What renders a statute vague is not the possibility that it

24  will sometimes be difficult to determine whether the incriminating

25

26

27

28        [1] The allegations pertaining to the use of interstate commerce
    do not constitute Overt Acts themselves, but rather the intent to
    commit an Overt Act.

                                        7

1   fact it establishes has been proved; but rather the indeterminacy of

2   precisely what that fact is.").

3       Lastly, defendants incorrectly argue that the FSI's allegations

4   concerning the use of interstate commerce after defendants' overt

5   riotous acts somehow render the ARA vague as applied to their

6   particular facts. (Dkt. 286 at 23-24.) Not so. These allegations

7   only serve to further bolster the allegations that defendants had the

8   intent to commit an Overt Act at the time they used interstate

9   commerce and completed the Overt Act. Defendants do not cite a

10  single case to support their proposition that allegations of a

11  defendant's actions following the criminal conduct in question cannot

12  be used as further indication and notice of his criminal intent. In

13  fact, courts frequently admit evidence of a defendant's subsequent

14  conduct to establish intent in a criminal conspiracy. See United

15  States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991) (evidence of

16  subsequent acts admissible to prove intent to commit the underlying

17  crime in a conspiracy charge). Furthermore, these allegations are

18  overt acts in furtherance of a conspiracy, not the ARA. Mere

19  assertion of these overt acts does not render the ARA vague as

20  applied to defendants. See Rundo, 990 F.3d at 715 (distinguishing

21  between overt acts in furtherance of the ARA and section 371

22  conspiracy because the ARA is not a conspiracy statute). Given that

23  defendants' conduct falls squarely within prohibition of the ARA,

24  defendants' as-applied challenge must fail. See Parker v. Levy, 417

25  U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies

26  may not successfully challenge it for vagueness.").

27

28

**C.   The ARA is Not Facially Vague**

Even assuming defendants can raise a facial vagueness challenge, their challenge to the statute also fails on the merits.  The terms "riot," and "participate in, or carry on a riot" of the ARA and the completion of an Overt Act after the use of interstate commerce do not render the statute vague because these terms are specifically defined, narrowly tailored by other provisions in the act, and subject to a scienter requirement.  In fact, every court that has reviewed the ARA for vagueness have held that it provides sufficient notice of its meaning.  See United States v. Miselis, 972 F.3d 518, 545 (4th Cir. 2020); United States v. Betts, 509 F. Supp. 3d 1053, 1062 (C.D. Ill. 2020); United States v. Daley, 378 F. Supp. 539, 551 (W.D. Va. 2019); Nat'l Moblization Comm. To End War in Viet Nam v. Foran, 411 F.2d 934, 938-39 (7th Cir. 1969); In re Shead, 302 F. Supp. 560, 567 (N.D. Cal. 1969).

1.   The term "riot" is not vague

The term "riot" is specifically defined by the ARA itself, avoiding any vagueness concerns.  The statute in essence defines "riot" as a public disturbance involving either: (1) acts of violence resulting in property damage or personal injury; or (2) threats to commit acts of violence that would constitute a clear and present danger to property or person.  18 U.S.C. § 2102(a); Rundo, 990 F.3d at 719; (Dkt. 145 at 5-6).  This definition is consistent with its settled legal definition.  According to Black's Law Dictionary, a "riot" is (1) "[a]n assemblage of three or more persons in a public place taking concerted action in a turbulent and disorderly manner for a common purpose . . .; and (2) [a]n unlawful disturbance of the peace by an assemblage of usu. three or more persons acting with a

9

common purpose in a violent or tumultuous manner that threatens or terrorizes the public or an institution." Daley, 378 F. Supp. at 549 n.6 (quoting Riot, Black's Law Dictionary (10th ed. 2014)). The terms "violence" and "threat" also have settled legal meanings. See Virginia v. Black, 538 U.S. 343, 359 (2003) ("True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). Defendants fail to articulate how this term "riot" is "so vague that men of common intelligence must necessarily guess at its meaning." United States v. Lanier, 502 U.S. 259, 266 (1997).

The term is further narrowed by other portions of the ARA. Most notably, section 2102(b) of the statute, as refined by the Ninth Circuit, specifically excludes protected First Amendment speech from the term's definition, namely the "mere oral or written (1) advocacy of ideas or (2) expression of belief." Rundo, 990 F.3d at 721; Daley, 378 F Supp. 3d at 550-51 ("riot" is not vague due to its narrowing context). Section 2102(a) of the ARA also requires that any rioting activity "be committed by someone who forms part of a group of at least three people, thereby ensuring that more ordinary instances of violence, accomplished by less than a crowd of three, don't rise to the level of riotous conduct." Miselis, 972 F.3d at 545 (4th Cir. 2020). The context of the broader statute provides sufficient notice of the term's meaning.

In addition, the Supreme Court has repeatedly held that a statute's scienter requirement alleviates vagueness concerns. Humanitarian L. Project, 561 U.S. at 21 ("[T]he knowledge requirement of the statute further reduces any potential for vagueness[.]");

10

<u>Vill. of Hoffman Estates</u>, 455 U.S. 499 ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice ... that [the] conduct is proscribed."). Here, the statute requires an individual to have the specific intent to riot. Therefore, the statute provides adequate notice of the conduct it prohibits by excluding from prosecution those who violate its terms by mistake or accident.

Defendants' only counter-argument is that interpreting the term "riot" requires a subjective risk assessment of what constitutes a "true threat," rendering the term vague. (Dkt. 286 at 16.) In support, defendants cite a string of Supreme Court cases invalidating the "residual clause" of various federal criminal statutes. (<u>Id.</u>) All these cases are inapposite. In these cases, the Supreme Court held that the residual clause was void for vagueness when assessed under the categorical approach. However, it did so not because the residual clause required a risk assessment, but because the assessment was tied "to a judicially imagined [idealized] 'ordinary case' of a crime, not to real-world facts or statutory elements." <u>Miselis</u>, 972 F.3d at 546 (collecting cases). In other words, the application of the categorical approach to the residual clause is what rendered the clause vague, not a subjective determination of facts. In fact, the Supreme Court, including in the very cases defendants cite, has repeatedly rejected the notion that a statute is vague merely because it calls for subjective determinations of fact. See <u>Sessions v. Dimaya</u>, 138 S.Ct. 1204, 1214 (2018) ("[Johnson] emphasized that [risk assessments] alone would not have violated the void-for-vagueness doctrine: Many perfectly constitutional statutes use imprecise terms like 'serious potential risk' . . . or

11

1  'substantial risk. . . .' The problem came from layering such a

2  standard on top of the [categorical approach].");  <u>United States v.</u>

3  <u>Williams</u>, 553 U.S. 285, 306 (2008) ("Whether someone held a belief or

4  had an intent is a true-or-false determination, not a subjective

5  judgment such as whether conduct is 'annoying" or "indecent' and

6  juries regularly pass judgement on issues concerning knowledge,

7  belief, and intent).  Defendants ultimately fail to establish that

8  the term "riot" invites "wholly subjective judgments without

9  statutory definitions, narrowing context, or settled legal meanings."

10  <u>Williams</u>, 553 U.S. at 305.[2]

11           2.    <u>The terms "participate in or carry on a riot" are not</u>

12                <u>vague</u>

13      Similarly, the terms "participate in or carry on a riot" also

14  have well-settled legal meanings.  According to Black's Law

15  Dictionary, "participate" means to "tak[e] part in something, such as

16  a . . . crime."  <u>Participation</u>, Black's Law Dictionary (11th ed.

17  2019).  Merriam-Webster's Dictionary defines "carry on" to mean "to

18  continue doing, pursuing or operating."  Merriam-Webster,

19  https://www.merriam-webster.com/dictionary/carry-on (last visited

20  Feb. 5, 2024).  Defendants fail to articulate how either term fails

21  to provide reasonable notice of the conduct the ARA prohibits,

22  particularly when these terms are tied to the statutorily defined

23  term of "riot."  <u>See Borden v. School Dist. of Tp. of East Brunswick,</u>

24  523 F.3d 153, 173 (3rd Cir. 2008) (holding "participate" is not

25

26          [2] Indeed, the very <u>Brandenburg</u> imminence requirement that
    defendants so heavily and improperly rely on in support of its
27  vagueness challenge likewise calls for a subjective assessment of
    risk.  <u>Brandenburg v. Ohio</u>, 395 U.S. 444, 447 (1969) (requiring an
28  inquiry into the "imminence and magnitude" as well as the
    "likelihood" of the risk of injury posed by violence).

1  unconstitutionally vague in context); <u>United States v. Griefen</u>, 200

2  F.3d 1256 (9th Cir. 2000) (the terms "carry on" and "maintain" are

3  neither vague nor cryptic); <u>see also</u> <u>Grayned v. City of Rockford</u>, 408

4  U.S. 104, 108-11 (1972) (ordinance prohibiting "any noise or

5  diversion which disturbs or tends to disturb the peace or good order

6  of such school session or class thereof" was not vague).

7      Defendants object to this conclusion because these terms do not

8  define with greater specificity the conduct they prohibit.

9  Defendants point to a string of hypotheticals, such as an individual

10  cheering on the fighting during a riot and an individual who is

11  initially attacked but fights back in self-defense, as examples where

12  the statute fails to provide greater precision about the prohibited

13  conduct.  (Dkt. 286 at 17.)  However, "[t]he problem that poses is

14  addressed, not by the doctrine of vagueness, but by the requirement

15  of proof beyond a reasonable doubt," which juries use to evaluate the

16  sufficiency of evidence in every criminal case.  <u>Williams</u>, U.S. 553

17  at 306.  While there may be cases where violation of the ARA may be a

18  close question, this alone is insufficient to render a statute vague.

19  The constitution does not require exact precision from a statute's

20  wording, as all words inherently carry some degree of uncertainty.

21  <u>See</u> <u>id</u>. at 304 ("[P]erfect clarity and precise guidance have never

22  been require even of regulations that restrict expressive activity."

23  (citation omitted)).  That is exactly the reason the Supreme Court

24  has rejected any vagueness test that requires a statute to have

25  "mathematical certainty its nature," <u>Hill v. Colorado</u>, 530 U.S. 703,

26  733 (2000), and why defendants' arguments fail here.  <u>See</u> <u>Williams</u>,

27  553 U.S. at 306 ("What renders a statute vague is not the possibility

28  that it will sometimes be difficult to determine whether the

13

1  incriminating fact it establishes has been proved; but rather the

2  indeterminacy of precisely what that fact is.").[3]

3          3.   Overt Act after the use of interstate commerce is not

4               vague

5          The requirement of a completion of an Overt Act after the use of

6  an interstate facility also does not render the ARA vague because the

7  statute requires specific intent for both elements.  As all parties

8  agree, the ARA requires the use of an interstate facility with a

9  certain intent and the completion of an Overt Act with a certain

10 intent during or following such use.  (See dkt. 145 at 5; dkt. 286 at

11 18.)  One without the other is insufficient.  The statute, in turn,

12 avoids any vagueness by requiring specific intent to commit an Overt

13 Act at the time of the use of interstate commerce and at the time of

14 the Overt Act itself.  Requiring intent at both junctures avoids

15 "wholly subjective judgments," Williams, 553 U.S. at 306, about the

16 scope of the proscribed conduct because an individual cannot violate

17 the ARA merely by using interstate commerce or performing an Overt

18 Act.  He must complete both acts and have specific intent at both

19 points.  In addition, although the ARA "does not require that the

20 situation, nature, and details of the riot contemplated at the time

21 of travel remain exactly identical until the time of the overt act,"

22 they must be "sufficiently similar so that it is reasonable to say

23 the later is the same as or the evolving product of the one intended

24

25

_____

26        [3] To the extent the Court finds any portion of the ARA to be
   vague, the appropriate remedy is to sever any problematic portion
27 rather than invalidating the entire statute.  See Champlin Refining
   Co. v. Corporation Comm'n of Okla., 286 U.S. 210, 234
28 (1932) ("[I]nvalid part may be dropped if what is left is fully
   operative as a law").

1    earlier." <u>United States v. Markiewicz</u>, 978 F.2d 786, 813 (2d Cir.

2    1992) (quoting <u>Dellinger</u>, 472 F.2d 340, 393-94 (7th Cir. 1972)).

3          Requiring the two elements -- interstate commerce and the Overt

4    Act -- to occur at exactly the same time, as defendants demand, is

5    the type of mathematical formulary that the Supreme Court has

6    rejected as the basis for vagueness challenges. <u>See</u> <u>Hill</u>, 530 U.S.

7    at 733. Every court to address this argument has agreed that the

8    completion of the Overt Act at some point after the use of interstate

9    commerce provides sufficient constitutional notice. <u>See Daley</u>, 378

10    F. Supp. 3d 551-52 (rejecting defendant's arguments that the

11    attenuation between the <u>mens rea</u> and <u>actus reus</u> renders the ARA

12    vague); <u>Miselis</u>, 972 F.3d at 472 F.2d at 546 (same); <u>United States v.</u>

13    <u>Hoffman</u>, 334 F. Supp. 504, 509 (D.D.C. 1971) (same); <u>see</u> also

14    <u>Markiewicz</u>, 978 F.2d at 813 (ARA requires proof of intent for both

15    elements); <u>Dellinger</u>, 472 F.2d at 393 (same).

16          Nonetheless, defendants contend that any interpretation of the

17    statute that does not require the Overt Act to occur both at the time

18    of the use of interstate commerce <u>and</u> after such use renders the

19    statute vague because it, in essence, fails <u>Brandenburg</u>'s imminence

20    requirement. (Dkt. 286 at 18-20.) Defendants' reliance on the

21    imminence requirement to supports its vagueness challenge is flawed

22    at its core. <u>Brandenburg</u>'s imminence requirement is grounded in the

23    constitutional guarantees of the First Amendment. It protects

24    against the punishment of protected speech. <u>Brandenburg</u>, 395 U.S. at

25    449. The law ceases to protect speech, however, when the speech is

26    directed to inciting imminent lawless action and is likely to incite

27    such action, hence the imminence requirement. <u>Id.</u> at 447. On the

28    other hand, "the [v]agueness doctrine is an outgrowth not of the

1    First Amendment, but of the Due Process Clause of the Fifth

2    Amendment." Williams, 553 U.S. at 304.  Therefore, "a Fifth

3    Amendment vagueness challenge does not turn on whether a law applies

4    to a substantial amount of protected expression," but rather whether

5    a law provides sufficient notice of its proscribed conduct to the

6    average citizen.  Humanitarian L. Project, 561 U.S. at 20 ("Otherwise

7    the doctrines would be substantially redundant.").  Put simply, a

8    statue's vagueness does not turn on Brandenburg's imminence

9    requirement.

10        In fact, the Supreme Court has made clear that it is reversible

11   error to combine the two analyses.  In Humanitarian L. Project, the

12   Court reversed the Ninth Circuit's decision to void the material-

13   support-for-terrorism statute for vagueness because the court

14   improperly "merged plaintiffs' vagueness challenge with their First

15   Amendment claims, holding that portions of the material-support

16   statute were unconstitutionally vague because they applied to protect

17   speech -- regardless of whether those applications were clear."  561

18   U.S. at 19 (rejecting vagueness challenge because statutory terms

19   were sufficiently defined, narrowly tailored, and guided by a

20   scienter requirement).  Despite this clear guidance, defendants

21   invite this Court to commit the same error here by voiding the ARA

22   for vagueness on First Amendment imminence grounds.

23        Even assuming the Brandenburg imminence requirement governed the

24   vagueness analysis, which it does not, defendants' argument still

25   fails.  As explained above and further below, the Ninth Circuit in

26   Rundo already conclusively established that the ARA, as revised,

27   satisfies the imminence requirement.  The Circuit held that the

28   completion of an Overt Act either during or after the use of

1  interstate commerce was constitutional under the First Amendment.

2  990 F.3d at 715-16.  Nowhere in its opinion did the Circuit require

3  the Overt Act to be completed both during and after the use of

4  interstate commerce, as defendants argue.  (Dkt. 286 at 18-20.)

5  Defendants' vagueness challenge, which seeks to relitigate binding

6  Ninth Circuit case law, therefore fails entirely.[4]

7      **D.    Count Two Sufficiently Alleges a Violation of the ARA**

8      Count Two of the FSI adequately alleges that defendants violated

9  the ARA by using interstate commerce with the intent to commit an

10 Overt Act.[5]  Defendants' entire claim is based on an unsupported and

11 tortured reading of the Ninth Circuit's opinion in Rundo and the ARA.

12 Defendants argue that the Ninth Circuit interpreted the ARA such that

13 the ARA requires the completion of an Overt Act at two points: one

14 that occurs during the use of interstate commerce and the other

15 during afterwards.  (Dkt. 286 at 25-26.)  In other words, under

16 defendants' interpretation, the ARA requires an Overt Act to occur

17 both during and after the use of interstate commerce.

18     The Ninth Circuit never reached such a conclusion.  In fact, it

19 held the exact opposite.  In analyzing the Overt Acts of the ARA, the

20 _____

21     [4] Defendants' flawed reasoning is made all the clearer by their
   reliance on the Ninth Circuit's citation of the Brandenburg imminence

22 requirement to support their vagueness challenge.  Defendants
   correctly and openly acknowledge that the Ninth Circuit never

23 addressed the ARA's vagueness in its decision.  (See Dkt. 286 at 12.)

   [5] Defendants indiscriminately argue that the FSI in its entirety
24 fails to state a claim.  (Dkt. 286 at 25-32.)  However, the only
   basis for defendants' argument is that the FSI fails to adequately

25 allege the requisite interstate commerce element of the ARA.  (Id. at
   30.)  Count One, which charges conspiracy, need only sufficiently

26 allege the substantive intent required under the ARA -- the intent to
   commit an ARA -- not any use of interstate commerce.  See United

27 States v. Andreen, 628 F.2d 1236, 1248 (9th Cir. 1980) (section 371
   conspiracy only requires proof of the requisite intent to commit the

28 substantive crime).  Defendants therefore do not and cannot argue
   that Count One of the FSI fails to state a claim.

                                    17

1    Ninth Circuit held that the Overt Acts must be interpreted to mean
2    required overt acts themselves, not merely goals, to satisfy
3    Brandenburg's imminence requirement.  Rundo, 990 F.3d at 716.  Read
4    this way, the Ninth Circuit concluded that the Overt Acts' portion of
5    the statute satisfied the imminence requirement.  Id.  The Ninth
6    Circuit never suggested, let alone held, that Brandenburg required
7    even greater imminence such that the Overt Act needed to be completed
8    both during and after the use of interstate commerce.  In fact, the
9    Ninth Circuit explicitly rejected the contention that the use of
10   interstate commerce must occur any closer in time to the actual
11   completion of an Overt Act to satisfy the imminence requirement.  Id.
12   at 715 (rejecting defendant's argument that use of commerce was "too
13   far removed in time from any riot to satisfy Brandenburg's imminence
14   requirement").  Defendants cannot point to anywhere in the Ninth
15   Circuit's opinion holding otherwise because the court never in fact
16   made such a conclusion.
17        In addition, defendants' tortured reading of the ARA also
18   directly contravenes the very statutory interpretation principles
19   upon which defendants rely to support their interpretation of the
20   statute.  By reading the statute as requiring an Overt Act to occur
21   both during and after the use of interstate commerce, defendants
22   advance an interpretation that completely rewrites the statute.  The
23   plain language of the ARA explicitly states that an Overt Act need
24   only be completed "either during the course of any such [use of
25   interstate commerce] or thereafter . . . ."  18 U.S.C. § 2101.
26   Defendant in essence asks the Court to rewrite the statute to read:
27   "both during the course of any such [use of interstate commerce] and
28   thereafter . . . ."  There is no basis or authority for such a

                                    18

1  revision.  See Connecticut Nat'l Bank v. Germain, 503 U.S,.249, 253-

2  54 (1992) ("[In interpreting a statute[,] a court should always turn

3  first to one, cardinal canon before all others . . . presum[ing] that

4  a legislature says in a statute what it means and means in

5  a statute what it says there."); Preston v. Heckler, 734 F.2d 1359,

6  1370 (9th Cir. 1984) ("[W]e possess no power to rewrite legislation."

7  (citation omitted)).  The word "or" has a specific and definitive

8  meaning in the statute that cannot and should not be ignored.  See

9  United States v. Sheldon, 755 F.3d 1047, 1050 (9th Cir. 2014) ("In

10  construing a statute, a court should interpret subsections written in

11  the disjunctive as setting out separate and distinct alternatives."

12  (citation omitted)).  Defendants' sufficiency claim must therefore

13  fail.

14      Defendants rely on the Travel Act, 18 U.S.C. § 1952, to support

15  their erroneous reading of the ARA, arguing that the use of the word

16  "other" in front of "overt act" in the ARA (unlike the Travel Act)

17  somehow indicates that an Overt Act of the ARA must be completed at

18  two points in time.  (Dkt. 286 at 20-21.)  This is baseless.  A plain

19  reading of the ARA makes clear that use of "other" is merely a

20  reference to the only other act mentioned in the statute, aside from

21  the four Overt Acts: the travel in or use of interstate commerce

22  itself.  See Miselis, 972 F.3d at 546 (pointing out that the ARA

23  requires two overt acts: one of the four riotous acts and either

24  interstate travel or use of a facility of interstate commerce);

25  Dellinger, 472 F.2d at 393 (same).

26      Defendants also rely on United States v. Dubin, 599 U.S. 110

27  (2023) to argue that the "use" of interstate commerce must be at the

28  "crux" of the Overt Act, meaning that an Overt Act must be completed

19

1    both during _and_ after the use of interstate commerce under the ARA.

2    (Dkt. 286 28-30.)  In doing so, defendants conveniently ignore that

3    _Dubin_'s holding involved the Supreme Court's analysis of a completely

4    different statute (aggravated identity theft), with an entirely

5    different structure and text than the ARA.  Aside from the broad

6    overbreadth principles underlying _Dubin_'s decision, which defendants

7    attempt to use to relitigate the issue of overbreadth even though the

8    Ninth Circuit squarely addressed such concerns in _Rundo_, defendants

9    fail to explain how _Dubin_ has any bearing on the ARA.  Indeed,

10   without providing any context, defendants cherry-pick a few choice

11   quotes from two cases -- one of which again pertains to an entirely

12   different statute and the other which actually undermines defendants'

13   interpretation of the ARA -- to further bolster their claim.  (Dkt.

14   286 at 29 (quoting _United States v. Fernandez_, 388 F.3d 1119, 1218

15   (9th Cir. 2004) (analyzing the jurisdictional requirements of the

16   RICO statute and Hobbs act); _Markiewicz_, 978 F.2d at 813 (nature and

17   details of Overt Act need not be identical at both the interstate and

18   riotous act stage)).  Because defendants' sufficiency claim

19   ultimately rests entirely on an unfounded interpretation of the ARA,

20   this Court should deny their motion.

21   //

22   //

23   //

24

25

26

27

28

**IV.   CONCLUSION**

For the foregoing reasons, defendants' Joint Motion to Dismiss the Indictment should be denied.

Dated: February 5, 2024        Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney

                               CAMERON L. SCHROEDER
                               Assistant United States Attorney
                               Chief, National Security Division


                                     /s/
                               _____
                               SOLOMON KIM
                               KATHRYNNE N. SEIDEN
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA