CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JULIA DEIXLER (Bar No. 301954)
(E-Mail: julia_deixler@fd.org)
ERIN M. MURPHY (Bar No. 285087)
(E-Mail: erin_murphy@fd.org.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT RUNDO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT RUNDO,<br><br>　　　　Defendant. | Case No. CR 18-759-CJC<br><br>**REPLY IN SUPPORT OF DEFENDANT ROBERT RUNDO'S MOTION TO DISMISS UNDER THE DUE PROCESS CLAUSE AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)**<br><br>Hearing Date: February 21, 2024<br><br>Hearing Place: Courtroom of the Hon. Cormac J. Carney |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A.    The Defendants' Vagueness Challenge is Not Barred ................................ 2

    B.    The ARA is Unconstitutionally Vague Because the Term "Thereafter" Does Not Impose a Temporal Limit Between the Use of Interstate Commerce and the Second Overt Act Element. ...................... 5

    C.    The ARA is Vague as Applied to Defendants' Conduct. ............................ 8

    D.    The FSI Fails to State a Claim Because it Does Not Adequately Allege a Prohibited Use of Any Facility of Interstate Commerce. ............. 10

        1.    The Ninth Circuit Interpreted the ARA to Require Two Completed Acts of Rioting. ..................................................... 10

        2.    The FSI Fails to State a Claim as to Count One and Count Two ....... 14

III. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States v. Betts*,
　509 F. Supp. 3d 1053 (C.D. Ill. 2020) ................................................................ 13

*Brandenburg v. Ohio*,
　395 U.S. 444 (1969) ............................................................................................ 4, 14

*Brown v. Gardner*,
　513 U.S. 115 (1994) ............................................................................................ 11

*United States v. Dubin*,
　599 U.S. 110 (2023) ............................................................................................ 2

*Expressions Hair Design v. Schneiderman*
　581 U.S. 37 (2017) .............................................................................................. 3

*Gentile v. State Bar of Nev.*,
　501 U.S. 1030 (1991) .......................................................................................... 4

*Grayned v. City of Rockford*,
　408 U.S. 104 (1972) ............................................................................................ 7

*United States v. Harris*,
　705 F.3d 929 (9th Cir. 2013) .............................................................................. 9

*Holder v. Humanitarian L. Project*,
　561 U.S. 1 (2010) ................................................................................................ 2, 3, 6, 7

*United States v. McFadden*,
　739 F.2d 149 (4th Cir. 1984) ............................................................................. 10

*United States v. Miselis*,
　972 F.3d 518 (4th Cir. 2020) ............................................................................. 7, 10, 11

*United States v. Rundo*,
　990 F.3d 709 (9th Cir. 2021) ............................................................................. *passim*

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
　455 U.S. 489, 499 (1982) ................................................................................... 5

**Federal Statutes**

18 U.S.C. § 1028A ................................................................................................... 12

18 U.S.C. § 2421 et seq. ......................................................................................... 15

# I. INTRODUCTION

There are only two plausible ways to interpret the Ninth Circuit's opinion salvaging the Anti-Riot Act. One way, which the government embraces in its opposition, is that there is no "immediacy requirement between the use of interstate commerce and the Overt Act" to riot. *See* Opp. (Dkt. 306) at 6-7. If true, the statute is unconstitutionally vague, as no ordinary person could determine what conduct would violate it, and the statute grants too much enforcement discretion to the government. Under this paradigm, *any* phone call, text message, or social media post made with the requisite intent (even those as benign as "practice is at 7pm tonight") would transform a state assault, vandalism, or public disturbance charge into a federal rioting offense, even if the call, text, or post was made weeks, months, or even years before any riot occurred.

The other plausible interpretation of the Ninth Circuit's opinion is that the use of interstate commerce must be both imminent to the riot and itself an act to incite, participate in, or carry on a riot. This interpretation may not have been within Congress's original intent. Indeed, the defendants, this Court, and the Ninth Circuit agree that the ARA, as originally drafted, impermissibly targeted speech that was *not* imminent to a riot, rendering it unconstitutional. But in an effort to save at least portions of the statute, the Ninth Circuit interpreted the ARA to apply to a much narrower range of speech and conduct. It explicitly ruled that the ARA *only* prohibits "unprotected speech that instigates (incites, participates in, or carries on) an imminent riot." *United States v. Rundo*, 990 F.3d 709, 721 (9th Cir. 2021). It is that interpretation by which the parties and this Court are now bound. It is not an impossible standard for the government to meet—several charges brought under the ARA in the past few years allege that the defendant used the internet to actually incite or carry on a riot. But the government has failed to allege that here. It has also failed to allege that the defendants conspired to use a facility of interstate commerce to instigate an imminent riot.

Either the ARA has no temporal limit between speech and action, rendering it irreparably vague, or it requires the government to allege use of a facility of interstate commerce that actually instigates a riot, which it has failed to do here. Under either interpretation, the FSI must be dismissed in its entirety.

## II. ARGUMENT

Either the ARA is irredeemably vague in the conduct it prohibits, or, accepting the Ninth Circuit's limiting construction, the statute only applies to use of interstate commerce that the government has not alleged. Regardless, both counts must be dismissed; either for vagueness or because the government fails to allege—and cannot possibly prove at trial—that the defendants used (or conspired to use) a facility of interstate commerce to instigate a riot, as required under the Ninth Circuit's interpretation of the law.

### A.   The Defendants' Vagueness Challenge is Not Barred.

The government argues that the defendants are barred from challenging the ARA on vagueness grounds because their conduct "clearly" falls within the scope of the statute. Opp. at 4-5 (relying on *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)). It believes this is the case because the defendants purportedly: (1) committed acts of violence at rallies; and (2) "use[d] [] interstate commerce, namely the use of text messages and online social media, both prior and subsequent to their violent conduct." Opp. at 10. But that second prong is not what the ARA proscribes. Not any mere use of interstate commerce will do. And the government's suggestion as much—including its apparent belief that texts and social media posts "*subsequent to* their violent conduct" fits the bill—itself demonstrates the vagueness problem of the ARA. Not even the federal agents and prosecutors who investigated and charged this case appear to understand when or how the use of a facility of interstate commerce triggers an ARA violation, as they assert that subsequent uses of the internet demonstrate that the first element of the ARA has been alleged in the FSI.

2

1    The cases the government relies on for the proposition that a vagueness challenge
2 may not be brought by a litigant whose conduct is clearly proscribed by the statute rest
3 on completely different footing than the defendants' challenge here.  In *Holder v.*
4 *Humanitarian Law Project*, plaintiffs brought a pre-enforcement challenge to a
5 criminal statute barring material support to terrorist organizations.  561 U.S. 20 (2010).
6 The challenged terms (including "training," "expert advice or assistance," "service,"
7 and "personnel") were defined within the text of the statute and the scope of the law
8 was narrowed by Congress over time, "increasing the clarity of its terms."  *Id*. at 21.
9 Plaintiffs themselves asserted that they wanted to "train" and "teach" members of
10 groups covered by the statute, and "repeatedly used the terms 'training' and 'expert
11 advice' throughout this litigation to describe their own proposed activities,
12 demonstrating that these common terms readily and naturally cover plaintiffs'
13 conduct."  *Id*.  Similarly, in *Expressions Hair Design v. Schneiderman*, plaintiffs filed a
14 pre-enforcement challenge to a statute banning a practice they conceded they intended
15 to engage in.  581 U.S. 37 (2017).  The law at issue there barred merchants from
16 charging customers with a fee for purchases made with a credit card.  *Id*. at 40.
17 Plaintiffs' claim that the term "surcharge" was vague was easily dismissed by the Court
18 because the term clearly encompassed their practice of posting "a single sticker price
19 and charg[ing] a credit card user more than that sticker price."  *Id*. at 46.
20    Conversely here, the sources of vagueness within the ARA are not readily
21 defined terms but concepts that require "untethered, subjective judgments."
22 *Humanitarian L. Project*, 561 U.S. at 21.  Most prominently, the application of the
23 interstate commerce element creates a vagueness problem that the government fails to
24 overcome in its opposition brief.[1]  This element is essential to an ARA claim, and to the

---

[1] The defense maintains its arguments that the terms "riot," "participate in," and "carry on" also render the ARA unconstitutionally vague, for the reasons stated in the motion, but focus this reply on addressing the complex issue of the facility of interstate commerce element of the offense.  Although some definitions could ostensibly be

3

1  Court's analysis here, as it is the only element that separates this federal felony offense
2  from a state assault case.  As explained in the motion, the vagueness problem stems
3  from the term "thereafter," which fails to notify people of reasonable intelligence how
4  long after their use of a facility of interstate commerce a simple assault offense would
5  transform into a federal rioting crime.  The government's opposition does nothing to
6  overcome this problem, asserting with little analysis that the defendants clearly meet
7  this element because the statute sets no temporal limit between the use of interstate
8  commerce and a riotous act committed "thereafter."  But this interpretation of
9  "thereafter" is by no means obvious.  To the contrary, First Amendment jurisprudence
10 dictates that speech—which is broadly encompassed in the interstate commerce
11 element of this statute through the use of the telephone and internet—is *not* criminal
12 unless it constitutes "incitement to imminent lawless action."  *Brandenburg v. Ohio*,
13 395 U.S. 444, 448-49 (1969).

14       Under this legal framework, Defendants' use of interstate commerce is *not*
15 clearly proscribed by the ARA, and they maintain every right to challenge the statute
16 on vagueness grounds.  *See Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) (state
17 bar rule struck down on vagueness grounds where attorney had reason to believe that
18 his particular conduct would not violate the rule, yet was disciplined nonetheless).

---

crafted to bring greater clarity to these vague terms, the confusing structure of the ARA overall exacerbates the vagueness problem with the terms "riot," "participate in," and "carry on," because the scope of the statue's reach remains so unclear.  Notably, for example, the Black's Law Dictionary definition of "riot," cited by the government, differs from the ARA definition in a critical way, because it requires that those participating in the riot "tak[e] concerted action in a turbulent and disorderly manner for a common purpose" and "act with common purpose in a violent or tumultuous manner …" Opp. at 9.  But the ARA's definition of "riot" does not require any concerted action or common purpose.  This is critical to the vagueness concern, because the ARA seems then to cover a broad swath of conduct at any gathering at which a public disturbance breaks out.  The scienter requirement does not solve this ambiguity, because it too relies on the term "riot."

4

B.  **The ARA is Unconstitutionally Vague Because the Term "Thereafter" Does Not Impose a Temporal Limit Between the Use of Interstate Commerce and the Second Overt Act Element.**

The ARA is void for vagueness because it fails to provide notice to an ordinary person when use of a credit card, email, or social media post will transform otherwise entirely intrastate conduct into a federal ARA charge. This remains true even after the Ninth Circuit opinion and severed language of the statute. The government's response ignores *Brandenburg* to conclude simply that there is no time limit. Opp. at 6 (Ninth Circuit "never imposed any immediacy requirement between the use of interstate commerce and the Overt Act"). In other words, the government believes there is no requirement that an individual's text message, email, or social media post be close in time to an actual act of rioting for it to establish an offense under the ARA. Even the hypothetical individuals discussed in Mr. Rundo's motion—such as the woman who posts on Facebook that she's going to "cause some trouble" at an election six months before it occurs—would be subject to federal prosecution under the government's reading. *See* Mot. (Dkt. 286) at 13. But if that is the case, the ARA fails to notify individuals of what it prohibits.

The government suggests the ARA is not vague because it requires that a defendant possess a criminal intent both at the time of the use of interstate commerce and at the time of the riotous act, supposedly solving the need for a temporal limit. *See* Opp. at 14. But the length of time between internet use and rioting is a completely different question than intent, and requires "wholly subjective judgments" about what constitutes, as the Ninth Circuit requires, "closely connect[ed] speech and action." *Rundo*, 990 F.3d at 716. Without prescribed guidance on the temporal link between the two overt acts, there is no distinguishing the ARA between a state assault or vandalism charge. While a person may reasonably expect that getting in a fistfight or looting a store would subject them to state criminal liability, there is no similarly fair warning that text messages, phone calls, or internet posts made weeks, months, or even years

before an act of violence would trigger a federal rioting charge, even if the person had a riotous intent at the time the message was sent. This is because all other guidance under the law notifies individuals of exactly the opposite—that there *must* be a close temporal connection between speech and violence for that speech to be rendered unlawful.

In this way, the government's opposition misconstrues the motion's discussion of First Amendment principles. The government argues that the motion improperly conflates a First Amendment overbreadth claim with its vagueness claim.[2] But the motion never argues that *Brandenburg* sets the standard for vagueness, or that the ARA is vague simply because it covers protected speech. Rather, the defense's position is that the term "thereafter" renders the statute vague because there is no telling how long after the use of a facility of interstate commerce a simple assault becomes an ARA offense. The term is vague because its proscriptions are unclear, both to ordinary individuals and to the officials enforcing the law. The imminence requirement established by *Brandenburg* is itself a principle by which the public is informed of the line between permissible and verboten speech. The fact that the government's interpretation of the term "thereafter" violates *Brandenburg* is offered to demonstrate that, given the Ninth Circuit's intention to bring the statute into compliance with *Brandenburg*, the government's interpretation is one that is not readily apparent.

Further, the obvious First Amendment concerns raised by the ARA are relevant to the vagueness evaluation because "when a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'"

---

[2] The government cites *Holder v. Humanitarian Law Project*, which held that the district court improperly merged those challenges because the district court found "that portions of the material-support statute were unconstitutionally vague because they applied to protected speech—regardless of whether those applications were clear." 561 U.S. 1, 19 (2010). Indeed, the district court there assumed, *arguendo*, that people of ordinary intelligence could understand the meaning of the statute, but still dismissed on vagueness grounds. That is not the case here, where Defendants are specifically challenging the term "thereafter" (along with "riot," "participate in," and "carry on") on vagueness grounds because they fail to provide adequate notice to the public and open the door to arbitrary enforcement by the government.

*Humanitarian L. Project*, 561 U.S. at 19 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 499 (1982)). The perils of a vague statute are especially pronounced where it "abuts upon sensitive areas of basic First Amendment freedoms" because ambiguity "inevitably lead[s] citizens to steer far wider of the unlawful zone than if the boundaries ... were clearly marked," thereby chilling protected speech. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (cleaned up). Here, the Court cannot ignore the First Amendment concerns raised by the ARA (concerns that virtually every court analyzing the statute has acknowledged, even if it upheld it) in evaluating whether the statute is unconstitutionally vague.

      The government relies on non-binding and inapposite authority to prop up its claim that the lack of temporal limitation between the interstate commerce element and the second rioting element presents no vagueness concern. The Court should not be persuaded by these citations. The Fourth Circuit in *United States v. Miselis*, for example, applied a completely different interpretation of the term "overt act" than the Ninth Circuit did in *Rundo*. *See* 972 F.3d 518 (4th Cir. 2020). While *Rundo* defined "overt act" to require a completed act of rioting, *Miselis* defined it within the meaning of an attempt statute, that is, to be a mere step that falls short of a completed act. *Id*. at 534-35. The Ninth Circuit explicitly rejected the Fourth Circuit's conclusion, finding that it "sidesteps—and ultimately fails to address—the need to construe the 'overt act' provision in such a way that satisfies *Brandenburg*'s imminence requirement." *Rundo*, 990 F.3d at 716 n.8. *Miselis* is thus not only not *binding*, it is not even *persuasive* authority in this Circuit. Worse still, *Miselis* does not even address the question of whether the lack of temporal scope between the two overt act elements renders the statute vague (despite the government's improper citation suggesting that it does). *See* Opp. at 15. *Miselis* only held that the specific intent to riot must be present during both overt acts, not that there is no constitutional problem with having *no* time limit between the two overt acts. *See Miselis*, 972 F.3d at 546. The *Hoffman, Markiewicz,* and *Dellinger* decisions are all similarly miscited by the government, as none of them

7

address the temporal vagueness question presented here. *See* Opp. at 15 (citing cases). These decisions stand for the proposition that both overt act elements require the specific intent to riot, which is not the issue here.

As this Court is already aware, the Ninth Circuit did not take up any challenge to the ARA on vagueness grounds, so there is no binding authority on this point. If the Court adopts the government's theory that there is "no immediacy requirement" between the two overt acts required under the statute, the ARA is irredeemably vague and therefore unconstitutional.

### C. The ARA is Vague as Applied to Defendants' Conduct.

Under the most reasonable reading of *Brandenburg* and *Rundo*, the only type of speech that violates the ARA is speech imminently related to instigating a riot. Otherwise, the ARA is vague as applied to the defendants' conduct in this case. Without a temporal limit to connect the statute's two overt acts, defendants are left without clear guidance on what uses of interstate commerce violate the law. And without that temporal limit, First Amendment-protected conduct forms the basis of the federal jurisdiction in this case. There are no overt acts in the FSI alleging that any of use of the internet or other facility of interstate commerce incited or instigated an imminent riot.

The government, while maintaining its position that there is no imminence requirement under the ARA, offers an alternative argument that the ARA is not vague as applied because the defendants sent messages over the internet just two days before or the same day as the Berkeley rally. Opp. at 7 (citing FSI ¶ 7 OA 14, 17). This argument fails because these messages are decidedly constitutionally protected activity, as determined by the Ninth Circuit. Specifically, the Ninth Circuit has held that "organizing" or "promoting" a riot is protected speech. Importantly, the FSI does not allege that these messages were made with riotous intent. Indeed, the vast majority of allegations in the FSI are made up of First Amendment protected messages and social medial postings, raising a concern that even after the Ninth Circuit's ruling, the

8

government continues to fail in distinguishing constitutionally protected speech and "speech that instigates (incites, participates in, or carries on) an imminent riot." *Rundo*, 990 F.3d at 721.[3]

Further, the government claims that the defense improperly cites to the allegations in the FSI that occurred after the rallies, because those allegations are made only to "further bolster the allegations that defendants had the intent to commit an Overt Act at the time they used interstate commerce and completed the Overt Act." Opp. at 8. But this is belied by the government's own statements, made elsewhere in its opposition, that defendants had clear notice that their conduct fell within the statute because of their "use of text messages and online social media, both prior *and subsequent to* their violent conduct." Opp. at 5.

The government's repeated assurances that defendants had notice that their conduct is prohibited under the ARA do not make it so. If any mere use of a facility of interstate commerce is sufficient to meet the first overt act element of the statute, then the ARA fails to provide adequate notice to defendants that their alleged conduct here was proscribed. *See United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). The FSI should be dismissed on these grounds.

---

[3] The government falsely asserts that the motion claims the FSI charges the defendants "solely for organizing, promoting, and encouraging a riot." Opp. at 6. The motion only claims that this protected speech makes up the "vast majority" of the FSI's allegations. Mot. at 1-2; 15. But none of the overt acts the government cites to contest this point involve the use of a facility of interstate commerce, which is the element in dispute here. *See* FSI ¶ 7, Overt Act 3 (engaged in combat training in San Clemente, CA), 6-8 (participated in and committed acts of violence at Huntington Beach rally), 19-20 (participated in and committed acts of violence at Berkeley rally); 29-30 (participated in and committed acts of violence at San Bernardino rally).

**D.     The FSI Fails to State a Claim Because it Does Not Adequately Allege a Prohibited Use of Any Facility of Interstate Commerce.**

**1.     The Ninth Circuit Interpreted the ARA to Require Two Completed Acts of Rioting.**

The motion explained why the Ninth Circuit must have interpreted the ARA to require that the use of interstate commerce under the statute must be an act that itself instigates (incites, participates in, or carries on) a riot. This is the only interpretation of the Ninth Circuit's opinion that saves the ARA from being facially vague, *see supra* II.B-II.C, as well as substantially overbroad under the First Amendment. The Ninth Circuit went to great pains to bring the ARA within the confines of *Brandenburg*. To do so, it held that the term "overt act" within the statute did not take on the meaning of a conspiracy overt act, nor an attempt, but rather "acts that fulfill the elements themselves, and not mere steps toward, or related to, one or more of those elements." *Id*. In other words, the Ninth Circuit interpreted the term "overt act" to mean a completed act that fulfills one of the goals listed in subparagraphs (1)-(4) (to incite, participate in, carry on, commit any act of violence in furtherance of, or aid or abet any person in a riot).

From this holding, the Court should conclude that the interstate commerce element of the offense—i.e., the *first* overt act element of the statute—also must refer to acts that fulfill the goals of subparagraphs (1)-(4). This is made evident by the plain meaning of the term "any other overt act," as there can be no "other overt act" without an initial overt act. *See* Mot. at 19. Notably, the Fourth Circuit in *Miselis* agreed that the ARA requires *two* overt act elements, meaning it interpreted the interstate commerce element to constitute an overt act, just like the second element. *See Miselis*, 972 F.3d at 534 (stating ARA had "an overt-act element (or two, in fact)"). But it interpreted the ARA to be drafted as an attempt offense, and therefore interpreted *both* overt act elements to require only "some overt act which tends toward but falls short of the consummation of the crime." *Id*. at 534-35 (quoting *United States v. McFadden*,

10

739 F.2d 149, 152 (4th Cir. 1984)).  Just as the *Miselis* court applied the same definition of "overt act" to both elements, so too did the *Rundo* court in defining "overt act" as a completed act.  That is, although the two Circuits differed in the definition they applied, both consistently applied one definition to the same terms within the statute.  This makes good sense.  "[T]here is a presumption that a given term is used to mean the same thing throughout a statute, . . . a presumption surely at its most vigorous when a term is repeated within a given sentence . . . ." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  If "the overt act described in paragraph (1) of subsection (a)" means a completed act that actually fulfills one of the purposes in (a)(1)-(4)," then that requirement must also apply to the interstate commerce element the clause describes.  The government's opposition wholly ignores this argument.

This result is also evident from the Ninth Circuit's overarching goal to "closely connect speech and action" within the ARA.  *Rundo*, 990 F.3d at 716.  After excising the terms "organize," "promote," and "encourage," the remaining part of the ARA that implicates speech is the interstate commerce element.  That is the element for which the government repeatedly alleges (in this and other cases) that defendants used text messages, phone calls, and social media posts to commit the offense.  But these allegations are pure speech, and therefore cannot be punished unless they themselves "instigate" a riot.  See *id*. at 721.

The government does little to rebut this argument.  It starts by confusing the Ninth Circuit's opinion, arguing the court "explicitly rejected" the defense's argument on this point.  That is simply false.  The government cites to a completely different proposition in the *Rundo* opinion that was responding to a different argument made by the appellees—that *both* overt acts could be completed before any riot ever occurred, in violation of *Brandenburg*'s imminence requirement.  See *Rundo*, 990 F.3d at 715 ("The Defendants argue that the travel in or use of any facility of interstate or foreign commerce ***and*** "any other overt act …" are too far removed in time from any riot to satisfy *Brandenburg*'s imminence requirement.  They liken the "overt act" in the Act to

11

an overt act for a conspiracy. However, the Act is not a conspiracy statute.") (emphasis added).

Next, the government attempts to employ statutory interpretation to argue that the defense has rewritten the statute. (In fact, it was the Ninth Circuit that rewrote the ARA, and this Court must now apply those revisions). In particular, the government complains that the defense now reads the statute to say "both during the course of any such use of interstate commerce and thereafter," rather than "either during … or thereafter." Opp. at 18. But the "either/or" framework in the statute applies only to the second overt act element. When the interstate commerce act is read to have the same meaning as an "overt act," there is no need to rewrite this clause. The statute simply requires: (1) use of interstate commerce that incites/participates in/carries on a riot; (2) the intent to do the same; and (3) any other overt act, either during or thereafter, that completes the same goals (with the same intent).

Finally, the government complains that the defense analogizes the ARA to "a completely different statute," namely, the aggravated identity theft statute, 18 U.S.C. § 1028A. The motion never purports that the two statutes are identical. Rather, it analogizes *Dubin*'s holding regarding the application of the "use of identification" element with the ARA's "use of a facility of interstate commerce element." Mot. at 21-22 (citing *United States v. Dubin*, 599 U.S. 110 (2023)). Other than pointing out that these are different statutes, the government fails to engage with the point the motion made regarding this analogy: that like the use of an ID, the use of a facility of interstate commerce is at the crux of the ARA offense, and the ARA must be interpreted as such. Mot. at 21-22. The government seeks to do away with the facility of interstate commerce element as a mere box to be checked to confer federal jurisdiction, but it is in fact an essential element of the claim and must be closely connected to the riotous conduct alleged under the ARA.

The requirement that the ARA contains two "overt act" provisions, one of which must confer federal jurisdiction through interstate travel or the use of interstate

commerce, indeed may not have been Congress's initial intent. But there were several portions of the statute that the Ninth Circuit struck or modified outside of that apparent initial intent to bring the statute into compliance with First Amendment jurisprudence. And that is exactly what the Ninth Circuit did when it interpreted the term "overt act" to mean a fulfilled act of rioting (and why it rejected the approaches taken by other circuits). This is the only interpretation of the ARA that "closely connects speech and action" and ensures that it only punishes "unprotected speech that instigates (incites, participates in, or carries on) a riot." *Rundo*, 990 F.3d at 721.

      What the government does not say in its opposition, but what appears to be true, is that it rejects this interpretation of the Ninth Circuit's ruling because it cannot meet its burden of proof here under that standard. That is not to say that no case could ever meet this requirement. Indeed, one of the very cases cited by the government in its opposition, *United States v. Betts*, demonstrates how this standard is implemented. In that case, the indictment alleged that the defendant posted a flyer on Facebook stating "RIOT @MarketPlace Mall" featuring an image of a burning vehicle and asking people to bring bricks. *See United States v. Betts*, 509 F. Supp. 3d 1053, 1056 (C.D. Ill. 2020). The indictment further alleged that as the riot began, and while a group of 50-75 people were damaging property and looting stores at the mall, the defendant began streaming a live video over Facebook that "further incited, promoted, and encouraged the riot." *Id*. Finally, the indictment alleged that the defendant participated in the riot by looting from the vandalized businesses at the mall. *Id*. Those allegations clearly meet the standard to only prosecute the uses of interstate commerce that instigate a riot, as those uses occurred imminently before and during the riot and even furthered the riot.

      The government's claim that there is "no immediacy requirement" between the use of interstate commerce and the second overt act cannot possibly be what the Ninth Circuit claims is an offense that "closely connects speech and action," *Rundo*, 990 F.3d at 716, and satisfies *Brandenburg*'s requirement that speech only be criminalized if it constitutes "incitement to imminent lawless action," *Brandenburg*, 395 U.S. at 448-49.

13

In order to salvage the obvious First Amendment issues with the ARA, the Ninth Circuit narrowed its scope and held that the interstate commerce element (i.e., the element that most broadly implicates speech through the use of the internet and phones) must itself instigate a riot.

2.  **The FSI Fails to State a Claim as to Count One and Count Two.**

Under the Ninth Circuit's narrowed reading of the interstate commerce element of the ARA, the FSI plainly fails to adequately allege a violation of the Act. At no point does the FSI allege that defendants used a facility of interstate commerce that instigated an imminent riot. *See* Mot. at 23-24. The allegations that the defendants used social media and text messages to meet up for "combat trainings," coordinate travel, or otherwise discuss upcoming political rallies, without any incitement to violence, plainly fail to allege the first element of the offense as established by the standard set forth in *Rundo*. This is not simply a matter of what the government can prove at trial; accepting all the allegations in the FSI as true, it has not alleged a violation of the ARA.

The FSI also fails to state a claim as to the conspiracy charge for the same reasons. The government suggests in a footnote that even if Count Two fails to state a claim, the conspiracy charge in Count One should stand because the FSI "need only sufficiently allege the substantive intent required under the ARA – the intent to commit an ARA – not any use of interstate commerce." Opp. at 17 n.5. The government misstates the standard for a conspiracy charge; it must prove that the defendants formed an agreement to commit the crime charged in the indictment. *See* Ninth Cir. Model Jury Instruction 11.1 (Conspiracy -- Elements). Here, the offense is not just a conspiracy to commit violence, it is a conspiracy to violate the ARA, which includes as an essential element the use of a facility of interstate commerce to instigate a riot. The government therefore must charge that the defendants formed an agreement to commit the entire offense, not just part of it. For example, in charging a conspiracy to violate the Mann Act, 18 U.S.C. § 2421 et seq., it would not be sufficient to simply allege that

14

defendants agreed to traffic a person for illegal sexual activity, as that would not constitute a federal offense. Rather, the defendants must have also agreed to transport a person across state lines for the purpose of sex trafficking. So too here, the government must adequately allege the element of the offense that confers federal jurisdiction and constitutes an essential element of the ARA charge. To properly allege that the defendants conspired to violate the ARA, the FSI must allege an agreement as to the entire offense, including the use of the internet or another facility of interstate commerce that instigates a riot.

Because the FSI fails to allege that Defendants used a facility of interstate commerce in imminent furtherance of a riot, it has not alleged an essential element and therefore fails to state an offense. The conspiracy count also fails because the government has not alleged that Defendants formed an agreement to use interstate commerce to incite a riot. The FSI must therefore be dismissed in its entirety.

### III. CONCLUSION

For the foregoing reasons, Mr. Rundo respectfully requests that the Court dismiss the First Superseding Indictment in its entirety.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 12, 2024    By  /s/ Julia Deixler
ERIN M. MURPHY
JULIA DEIXLER
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO