UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ROBERT RUNDO AND ROBERT BOMAN,**<br><br>Defendants. | Case No.: CR 18-00759-CJC<br><br>**ORDER RELEASING ROBERT RUNDO** |

Now before the Court is Robert Rundo's oral request for an arraignment or some type of "process" to challenge his unlawful rearrest and detention. (*See* Dkt. 356.)

The parties are familiar with the facts of this case. At the hearing in which the Court dismissed the First Superseding Indictment and ordered Mr. Rundo released forthwith, the government requested the Court stay its order pending appeal and keep Mr. Rundo detained. The Court denied the government's request because the Court

-1-

believes Mr. Rundo was unconstitutionally prosecuted, and "it would run completely afoul of the Constitution for the court to order that a person sit in jail because at some unknown point in the future an appellate court might reverse the court order that dropped the charges." *United States v. Chavarria*, 2023 WL 5984381, at *3 (D.N.M. Sept. 14, 2023) (citation omitted); (Dkt. 335.) The Court ordered Mr. Rundo released forthwith and issued a judgment of discharge. (Dkt. 336.) The government appealed to the Ninth Circuit minutes after the Court's order. (Dkt. 334.)

Before the Ninth Circuit, the government filed an emergency request "to stay the Court's release order pending appeal." (Dkt. 342 at ¶ 4.) The next day, on February 22, 2024, the Ninth Circuit issued an order that stated in full,

> The district court's February 21, 2024 judgment of discharge authorizing appellee Robert Rundo's immediate release is temporarily stayed pending resolution of appellant's motion to stay release pending appeal. *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). The schedule for the motion to stay will be set by separate order.

(*Id.* Ex. 1.) In *Doe #1 v. Trump*, the Ninth Circuit explained that "[a] temporary stay in this context (sometimes referred to as an administrative stay) is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." 944 F.3d at 1223.

But before the Ninth Circuit issued its order temporarily staying this Court's judgment of discharge, Mr. Rundo *had already been released*. (*Id.* ¶ 2.) Thus, the status quo at the time of the Ninth Circuit's order was that Mr. Rundo was not detained and the Ninth Circuit's order was moot. According to the Deputy Federal Public Defender, the government did not inform the Ninth Circuit that the status quo had changed, despite

knowing that Mr. Rundo had been released, either before or shortly after the Ninth Circuit issued its administrative stay.

Even though Mr. Rundo had already been released, the government applied to the magistrate judge on duty, Magistrate Judge Steve Kim, *ex parte* under seal, for the issuance of an arrest warrant based on the Ninth Circuit's administrative stay of his release (a release which had already taken place). (Dkt. 342.) The government cited no law in support of its application. Instead, it stated that "[i]n light of the Ninth Circuit's stay, the August 2, 2023 detention order of defendant RUNDO is the operative order now in effect." (*Id.* ¶ 6.) The government went on to mischaracterize the Ninth Circuit order as a "stay of the Court's dismissal order." (*Id.* ¶ 7.) Notably, the Ninth Circuit did *not* stay this Court's dismissal of the First Superseding Indictment—it stayed only the judgment of discharge.

After a Zoom hearing, (*see* Dkt. 346), Magistrate Judge Kim issued a warrant for Mr. Rundo's arrest, (Dkt. 345). As everyone recognizes, the circumstances were complicated. Magistrate Judge Kim later explained that, despite a lack of briefing from the government, he believed he had authority to issue an arrest warrant based on "the Federal Rules of Criminal Procedure under Rule 4, the All Writs Act, the Bail Reform Act, and [his] inherent authority to allow him to administer process and give effect to what the Ninth Circuit was trying to do" and that "some combination of those things allowed [him] to issue an arrest warrant as a mechanism to try to restore status quo." Understandably, Magistrate Judge Kim's analysis "was without any confidence . . . that [he] was correct." The warrant stated that the United States Marshal was to bring Mr. Rundo to the nearest magistrate judge "to answer an Indictment charging him with Conspiracy and Riots, in violation of Title 18, United States Code, Sections 371, 2101." (*Id.*) In other words, Magistrate Judge Kim issued an arrest warrant based on the First

Superseding Indictment, which this Court had dismissed one day earlier.[1]  According to the Deputy Federal Public Defender, Magistrate Judge Kim issued the warrant, in part, based on the government's representation that Mr. Rundo would receive some process, such as the ability to challenge his detention.  But after receiving the arrest warrant and using that to arrest Mr. Rundo,[2] the government then went back to the Ninth Circuit and requested an order that would deny Mr. Rundo that process.  In response to that request, the Ninth Circuit issued a further order acknowledging that Mr. Rundo had been arrested and stating that "Rundo is to remain in custody pending resolution of appellant's motion to stay release pending appeal.  *No lower court may order his release absent further order of this Court*."  (Emphases added.)

Apparently in response to the government's request to the Ninth Circuit for an order that would deny Mr. Rundo any process to contest his detention, Magistrate Judge Kim held a second hearing with the government and Mr. Rundo's counsel.  At a hearing later the same day before this Court, the Deputy Federal Public Defender represented

---

[1] At a later hearing before this Court, the Deputy Federal Public Defender commended Magistrate Judge Kim for holding a hearing, allowing Mr. Rundo's counsel to be present, and building a record before issuing an arrest warrant pursuant to the government's unorthodox request.  So too does this Court commend Magistrate Judge Kim.  He was placed in a difficult position, and at least according to the government, there is no binding authority in this situation.  He was faced with a Ninth Circuit administrative stay that was intended to maintain a status quo that no longer existed and the government's argument that a dismissed indictment is still operative because it was appealed.  He did his best to preserve Mr. Rundo's rights despite the tremendous pressure the government placed on him to act immediately.  While this Court disagrees with Magistrate Judge Kim's ultimate decision to issue an arrest warrant for Mr. Rundo because the charges against him were no longer pending, it cannot fault Magistrate Judge Kim's deliberative process and effort to faithfully apply the law and the Ninth Circuit's administrative stay.  Again, Magistrate Judge Kim was put in what may well be an entirely unique position for a magistrate judge and he acted judiciously.

[2] The Court notes that Mr. Rundo appears to have been arrested without incident and was in the process of self-surrendering.  In its papers to the Ninth Circuit, the government appeared to argue that Mr. Rundo was preparing to flee by way of the southern border.  According to the Deputy Federal Public Defender, Mr. Rundo was instead simply staying in the area where he had lived prior to his prosecution in this case.

that Magistrate Judge Kim felt that the government had misled him when it represented Mr. Rundo would have the ability to challenge his detention.

Fortunately, Magistrate Judge Kim had transcripts from the hearings before him made available for this Court. If anything, the Deputy Federal Public Defender's representation underrepresented Magistrate Judge Kim's findings. At the second hearing, Magistrate Judge Kim laid out his grave concerns with how the United States Attorney's office conducted itself after this Court ordered Mr. Rundo released. At this time, a final transcript is not available on the docket, but the parties have provided the Court with a preliminary transcript. Per that transcript, Magistrate Judge Kim was uncomfortable with the government's shifting positions and lack of legal authority to justify its request. Magistrate Judge Kim was also troubled by how the government went about seeking an arrest warrant—treating it as a "routine duty matter" rather than the extraordinary request that it was—and doing it *ex parte* without the involvement of Mr. Rundo's counsel. Most shocking are what Magistrate Judge Kim described as "flat out misrepresentations." These misrepresentations "rang[e] from at one end of the spectrum, they exude a level of condescension and contempt for the Court, and at the other side of the spectrum it actually shows an abuse of power." It is impossible to succinctly summarize Magistrate Judge Kim's position, but to put it simply, he was stunned by the government's the-ends-justify-the-means attitude even though "the difference between what we do in this country and what other countries do is we don't just arrest people because it seems like it's the right thing to do. There's a process through which we have to get that, and sometimes that might mean that it takes longer." At the conclusion of the hearing, Magistrate Judge Kim ordered the government to "discuss the transcripts with the front office of the U.S. Attorney's Office." (Dkt. 355.)

Later that day, this Court held a status conference in response to Mr. Rundo's request for an arraignment. (*See* Dkt. 356.) At that hearing, Mr. Rundo explained that

he wanted some kind of process that would typically accompany an arrest. However, the Court explained that it was not comfortable proceeding as requested because there were no pending charges or indictment. Further, the Ninth Circuit foreclosed any kind of relief related to his detention, meaning that this Court could not even conduct a hearing pursuant to the Bail Reform Act. The Deputy Federal Public Defender also expressly accused the government of engaging in prosecutorial misconduct with regards to its efforts to rearrest Mr. Rundo. The Deputy Federal Public Defender identified the following as the basis for the allegation of prosecutorial misconduct:

1. While seeking an emergency stay, the government did not update the Ninth Circuit that Mr. Rundo had been released, altering the status quo;
2. The government did not correct the record immediately after the Ninth Circuit issued an administrative stay based on a status quo that was no longer accurate;
3. The government then went to Magistrate Judge Kim *ex parte* and applied for an arrest warrant based on a moot administrative stay of a release order that had already been effectuated;
4. The government did not inform the Ninth Circuit that Mr. Rundo, who was being monitored by law enforcement, was not actively attempting to flee the country; and
5. Despite its representations to Mr. Rundo and Magistrate Judge Kim, the government submitted a status report to the Ninth Circuit requesting that the Ninth Circuit issue an order providing no mechanism through which Mr. Rundo could challenge his detention.

As indicated at the February 23, 2024 hearing, the Court, like Magistrate Judge Kim, is troubled by the chain of events that led to Mr. Rundo's rearrest. In the Court's experience, it is rare for the Federal Public Defender's Office to explicitly accuse the

United States Attorney's Office of engaging in prosecutorial misconduct. Such an accusation is particularly troubling when it relates directly to, as this Court found, selective prosecution.

But the Court is also troubled by the conduct Magistrate Judge Kim described. To put it in Magistrate Judge Kim's words, the United States Attorney must be above "think[ing] that the end justifies any means." The United States Attorney's Office is not just another litigant. It wields an awesome power—it can deprive people of their liberty on behalf of the United States of America. In other words, "[a] prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *United States v. Maloney*, 755 F.3d 1044, 1046 (9th Cir. 2014) (internal quotation marks and citation omitted). Based on the transcripts of the hearings before Magistrate Judge Kim, the government failed to meet its solemn obligations. In general, Magistrate Judge Kim's words speak for themselves, and this Court is not in a position to review the government's actions and determine whether its conduct was merely negligent or an intentional overstep. But the Court is disappointed that the government's zeal to detain Mr. Rundo and its apparent frustration with the Court's ruling led it to proceed in a manner less than befitting of the United States Attorney's Office.

Setting aside the accusation of prosecutorial misconduct, the Court is obligated to address Mr. Rundo's request for an arraignment or other process related to his present detention. At the hearing before this Court, Mr. Rundo orally requested that this Court arraign him and provide some amount of the process ordinarily accompanying an arrest. As the Court explained on the record, the Court is not comfortable proceeding with an arraignment based on an indictment the Court dismissed. The government also has

made clear that it does not believe the Court may provide the Defendant even the opportunity to argue for bail pending appeal, despite the government's previous representations to Mr. Rundo and Magistrate Judge Kim. And, finally, the Ninth Circuit's order forecloses that process even though the opportunity to request bail accompanies an arrest. But the Court does find that Mr. Rundo's arrest was unlawful.

First, the arrest warrant Magistrate Judge Kim issued is invalid because it was based on an indictment that this Court had dismissed. Rule 9 of the Federal Rules of Criminal Procedure provides that "[t]he court must issue a warrant . . . for each defendant named in indictment." Magistrate Judge Kim issued a warrant based on the First Superseding Indictment. But this Court dismissed that indictment and there is no other charging document that could serve as the basis for an arrest warrant. At this time, there are no charges pending against Defendant. The government argues that the First Superseding Indictment is somehow still in effect despite this Court's dismissal because of the government's pending appeal. But the Court is unaware of any legal basis for such an argument. *See Chavarria*, 2023 WL 5984381, at *4 ("The United States contends that because it has appealed this Court's dismissal of the superseding indictment, there remains a charge pending against defendants. The United States offers no statute or case law supporting its contention that an appeal nullifies the effect of this Court's order. Although the case remains open, there is no pending charge against defendants."). The Federal Rules of Criminal Procedure—which provide various mechanisms by which the government may arrest a person—are not simply technical checkboxes the government must follow. Rather, they implement fundamental constitutional rights, such as the Fourth Amendment. *See Jones v. United States*, 357 U.S. 493, 498 (1958); *United States v. Ventresca*, 380 U.S. 102, 105 n.1 (1965); *see also United States v. Vargas-Amaya*, 389 F.3d 901, 905 n.3 (9th Cir. 2004) ("[T]he rules implement the Fourth Amendment's requirements and are instructive of the requirements for issuing warrants generally."). The Rules also ensure that individuals

who face the loss of their liberty—the most significant deprivation short of the deprivation of life—receive adequate due process. *See Smith v. United States*, 360 U.S. 1, 9 (1959) ("[T]he substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules."). The government treated the Fourth Amendment, due process, and the Federal Rules of Criminal Procedure as advisory guidelines instead of foundational constitutional protections and fundamental rules of criminal procedure.

Second, this Court lacks the legal authority to continue to hold Mr. Rundo in custody. The Court dismissed the First Superseding Indictment because it found that the government's prosecution of Defendants violated the Constitution. The fact that the government appealed the Court's dismissal order does not change the fact that there are no charges pending against Defendants at this time. "It would run completely afoul of the Constitution for the Court to simply order that a person sit in jail because at some unknown point in the future an appellate court might reverse the court order that dropped the charges against him." *United States v. Hudson*, 3 F. Supp. 3d 772, 790 (C.D. Cal.)*, rev'd on other grounds and remanded sub nom. United States v. Dunlap*, 593 F. App'x 619 (9th Cir. 2014).

To the extent the government argues that Section 3143(c) of the Bail Reform Act allows the Court to detain Mr. Rundo pending the government's appeal, the Court is unpersuaded. Another district court rejected that very argument less than sixth months ago after a careful review of the applicable statute and precedent. *See Chavarria*, 2023 WL 5984381, at *5 (explaining when "a court directs its attention to Section 3142 [pursuant to Section 3143(c)] and discovers that it does not apply because the defendant no longer is 'charged with an offense,' the court's authority to detain a defendant cannot be found therein"); *see also United State v. Arteaga-Centeno*, 360 F. Supp. 3d 1022 (N.D. Cal. 2019) (holding the same); *Hudson*, 3 F. Supp. 3d at 790 (same). In short,

Section 3143(c) explains that the Court should treat a defendant in a case in which the United States has taken an appeal in accordance with Section 3142. But for Section 3142 to apply, the defendant must be "charged with an offense." Here there is no "charged offense." The Court dismissed the First Superseding Indictment and ordered Mr. Rundo immediately released—there are no longer any charges or detention order against Mr. Rundo. Accordingly, Section 3143(c) cannot serve as a basis to hold Mr. Rundo pending appeal.

The Court recognizes that the Ninth Circuit clearly intended Mr. Rundo to *remain* in custody until it could hear from both parties regarding the government's emergency motion to hold Mr. Rundo in custody during the pendency of the government's appeal. This Court cannot and does not question that order. But that is all the Ninth Circuit did—it did not authorize Mr. Rundo's rearrest *after* he had already been released. The Ninth Circuit's administrative stay was moot as soon as it was issued because Mr. Rundo had already been released. To be sure, this is an unusual procedural posture. But it is clear to the Court that Mr. Rundo should not have been rearrested based on an invalid arrest warrant and that this Court lacks any authority to continue to hold him in detention. Had the Ninth Circuit been properly and timely informed of the actual status quo—that Mr. Rundo had already been released—it may have either allowed him to remain out of custody (maintaining the status quo) or identified another acceptable basis to detain him. But the government deprived the Ninth Circuit of the opportunity to address that issue. Instead, the government came back to the district court, which would normally have lost jurisdiction, to request an arrest warrant. That act created much of the procedural uncertainty that now confronts the parties and the courts. Magistrate Judge Kim erroneously, but understandably, issued an arrest warrant leading to Mr. Rundo's present detention.

For all these reasons, this Court **ORDERS** that Mr. Rundo be released. However, because of the Ninth Circuit's most recent order, the Court cannot release Mr. Rundo. Therefore, the Court **STAYS** this order releasing Mr. Rundo pending further direction from the Ninth Circuit.

DATED:     February 26, 2024

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE