Name  AUSA Solomon Kim

Address  312 N. Spring St.

City, State, Zip  Los Angeles, CA 90012

Phone  (213) 894-2450

Fax  (213) 894-0141

E-Mail  solomon.kim@usdoj.gov

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CR 18-00759-CJC |
| v. | |
| ROBERT RUNDO, | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____United States of America_____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

~~**Civil Matter**~~

☒ Order (specify):
  "Order Releasing Robert Rundo"; CR No. 363; Filed on
  2-26-24; Related to Appeal No. CA 24-932
☐ Judgment (specify):


☐ Other (specify):

Imposed or Filed on _____2-26-24_____. Entered on the docket in this action on  2-26-24 .

A copy of said judgment or order is attached hereto.

2-27-24 _____     /s/ Solomon Kim _____

Date                                                Signature

                    ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10            **SOUTHERN DIVISION**

11

12   **UNITED STATES OF AMERICA,**            ) **Case No.: CR 18-00759-CJC**
                                              )
13                                            )
                                              )
14            **Plaintiff,**                  )
                                              )
15        **v.**                              ) **ORDER RELEASING ROBERT**
                                              ) **RUNDO**
16   **ROBERT RUNDO AND ROBERT**              )
     **BOMAN,**                               )
17                                            )
                                              )
18            **Defendants.**                 )
                                              )
19                                            )
                                              )
20                                            )

21

22       Now before the Court is Robert Rundo's oral request for an arraignment or some

23   type of "process" to challenge his unlawful rearrest and detention.  (*See* Dkt. 356.)

24

25       The parties are familiar with the facts of this case.  At the hearing in which the

26   Court dismissed the First Superseding Indictment and ordered Mr. Rundo released

27   forthwith, the government requested the Court stay its order pending appeal and keep

28   Mr. Rundo detained.  The Court denied the government's request because the Court

-1-

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 2 of 11   Page ID #:3181

1    believes Mr. Rundo was unconstitutionally prosecuted, and "it would run completely

2    afoul of the Constitution for the court to order that a person sit in jail because at some

3    unknown point in the future an appellate court might reverse the court order that dropped

4    the charges." *United States v. Chavarria*, 2023 WL 5984381, at *3 (D.N.M. Sept. 14,

5    2023) (citation omitted); (Dkt. 335.)  The Court ordered Mr. Rundo released forthwith

6    and issued a judgment of discharge.  (Dkt. 336.)  The government appealed to the Ninth

7    Circuit minutes after the Court's order.  (Dkt. 334.)

8

9          Before the Ninth Circuit, the government filed an emergency request "to stay the

10   Court's release order pending appeal."  (Dkt. 342 at ¶ 4.)  The next day, on February 22,

11   2024, the Ninth Circuit issued an order that stated in full,

12

13          The district court's February 21, 2024 judgment of discharge
            authorizing appellee Robert Rundo's immediate release is temporarily
14          stayed pending resolution of appellant's motion to stay release
            pending appeal.  *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir.
15          2019).  The schedule for the motion to stay will be set by separate
16          order.

17   (*Id.* Ex. 1.)  In *Doe #1 v. Trump*, the Ninth Circuit explained that "[a] temporary stay in

18   this context (sometimes referred to as an administrative stay) is only intended to

19   preserve the status quo until the substantive motion for a stay pending appeal can be

20   considered on the merits, and does not constitute in any way a decision as to the merits

21   of the motion for stay pending appeal."  944 F.3d at 1223.

22

23         But before the Ninth Circuit issued its order temporarily staying this Court's

24   judgment of discharge, Mr. Rundo *had already been released*.  (*Id.* ¶ 2.)  Thus, the status

25   quo at the time of the Ninth Circuit's order was that Mr. Rundo was not detained and the

26   Ninth Circuit's order was moot.  According to the Deputy Federal Public Defender, the

27   government did not inform the Ninth Circuit that the status quo had changed, despite

28

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 3 of 11   Page ID #:3182

1   knowing that Mr. Rundo had been released, either before or shortly after the Ninth

2   Circuit issued its administrative stay.

3

4        Even though Mr. Rundo had already been released, the government applied to the

5   magistrate judge on duty, Magistrate Judge Steve Kim, *ex parte* under seal, for the

6   issuance of an arrest warrant based on the Ninth Circuit's administrative stay of his

7   release (a release which had already taken place).  (Dkt. 342.)  The government cited no

8   law in support of its application.  Instead, it stated that "[i]n light of the Ninth Circuit's

9   stay, the August 2, 2023 detention order of defendant RUNDO is the operative order

10  now in effect."  (*Id.* ¶ 6.)  The government went on to mischaracterize the Ninth Circuit

11  order as a "stay of the Court's dismissal order."  (*Id.* ¶ 7.)  Notably, the Ninth Circuit did

12  *not* stay this Court's dismissal of the First Superseding Indictment—it stayed only the

13  judgment of discharge.

14

15       After a Zoom hearing, (*see* Dkt. 346), Magistrate Judge Kim issued a warrant for

16  Mr. Rundo's arrest, (Dkt. 345).  As everyone recognizes, the circumstances were

17  complicated.  Magistrate Judge Kim later explained that, despite a lack of briefing from

18  the government, he believed he had authority to issue an arrest warrant based on "the

19  Federal Rules of Criminal Procedure under Rule 4, the All Writs Act, the Bail Reform

20  Act, and [his] inherent authority to allow him to administer process and give effect to

21  what the Ninth Circuit was trying to do" and that "some combination of those things

22  allowed [him] to issue an arrest warrant as a mechanism to try to restore status quo."

23  Understandably, Magistrate Judge Kim's analysis "was without any confidence . . . that

24  [he] was correct."  The warrant stated that the United States Marshal was to bring Mr.

25  Rundo to the nearest magistrate judge "to answer an Indictment charging him with

26  Conspiracy and Riots, in violation of Title 18, United States Code, Sections 371, 2101."

27  (*Id.*)  In other words, Magistrate Judge Kim issued an arrest warrant based on the First

28

1    Superseding Indictment, which this Court had dismissed one day earlier.[1]  According to

2    the Deputy Federal Public Defender, Magistrate Judge Kim issued the warrant, in part,

3    based on the government's representation that Mr. Rundo would receive some process,

4    such as the ability to challenge his detention.  But after receiving the arrest warrant and

5    using that to arrest Mr. Rundo,[2] the government then went back to the Ninth Circuit and

6    requested an order that would deny Mr. Rundo that process.  In response to that request,

7    the Ninth Circuit issued a further order acknowledging that Mr. Rundo had been arrested

8    and stating that "Rundo is to remain in custody pending resolution of appellant's motion

9    to stay release pending appeal.  *No lower court may order his release absent further*

10   *order of this Court*."  (Emphases added.)

11

12       Apparently in response to the government's request to the Ninth Circuit for an

13   order that would deny Mr. Rundo any process to contest his detention, Magistrate Judge

14   Kim held a second hearing with the government and Mr. Rundo's counsel.  At a hearing

15   later the same day before this Court, the Deputy Federal Public Defender represented

16

17

---

18   [1] At a later hearing before this Court, the Deputy Federal Public Defender commended Magistrate Judge
19   Kim for holding a hearing, allowing Mr. Rundo's counsel to be present, and building a record before
     issuing an arrest warrant pursuant to the government's unorthodox request.  So too does this Court
20   commend Magistrate Judge Kim.  He was placed in a difficult position, and at least according to the
     government, there is no binding authority in this situation.  He was faced with a Ninth Circuit
21   administrative stay that was intended to maintain a status quo that no longer existed and the
     government's argument that a dismissed indictment is still operative because it was appealed.  He did
22   his best to preserve Mr. Rundo's rights despite the tremendous pressure the government placed on him
     to act immediately.  While this Court disagrees with Magistrate Judge Kim's ultimate decision to issue
23   an arrest warrant for Mr. Rundo because the charges against him were no longer pending, it cannot fault
     Magistrate Judge Kim's deliberative process and effort to faithfully apply the law and the Ninth
24   Circuit's administrative stay.  Again, Magistrate Judge Kim was put in what may well be an entirely
     unique position for a magistrate judge and he acted judiciously.
25

26   [2] The Court notes that Mr. Rundo appears to have been arrested without incident and was in the process
     of self-surrendering.  In its papers to the Ninth Circuit, the government appeared to argue that Mr.
27   Rundo was preparing to flee by way of the southern border.  According to the Deputy Federal Public
     Defender, Mr. Rundo was instead simply staying in the area where he had lived prior to his prosecution
28   in this case.

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 5 of 11   Page ID #:3184

1    that Magistrate Judge Kim felt that the government had misled him when it represented

2    Mr. Rundo would have the ability to challenge his detention.

3

4        Fortunately, Magistrate Judge Kim had transcripts from the hearings before him

5    made available for this Court.  If anything, the Deputy Federal Public Defender's

6    representation underrepresented Magistrate Judge Kim's findings.  At the second

7    hearing, Magistrate Judge Kim laid out his grave concerns with how the United States

8    Attorney's office conducted itself after this Court ordered Mr. Rundo released.  At this

9    time, a final transcript is not available on the docket, but the parties have provided the

10    Court with a preliminary transcript.  Per that transcript, Magistrate Judge Kim was

11    uncomfortable with the government's shifting positions and lack of legal authority to

12    justify its request.  Magistrate Judge Kim was also troubled by how the government

13    went about seeking an arrest warrant—treating it as a "routine duty matter" rather than

14    the extraordinary request that it was—and doing it *ex parte* without the involvement of

15    Mr. Rundo's counsel.  Most shocking are what Magistrate Judge Kim described as "flat

16    out misrepresentations."  These misrepresentations "rang[e] from at one end of the

17    spectrum, they exude a level of condescension and contempt for the Court, and at the

18    other side of the spectrum it actually shows an abuse of power."  It is impossible to

19    succinctly summarize Magistrate Judge Kim's position, but to put it simply, he was

20    stunned by the government's the-ends-justify-the-means attitude even though "the

21    difference between what we do in this country and what other countries do is we don't

22    just arrest people because it seems like it's the right thing to do.  There's a process

23    through which we have to get that, and sometimes that might mean that it takes longer."

24    At the conclusion of the hearing, Magistrate Judge Kim ordered the government to

25    "discuss the transcripts with the front office of the U.S. Attorney's Office."  (Dkt. 355.)

26

27        Later that day, this Court held a status conference in response to Mr. Rundo's

28    request for an arraignment.  (*See* Dkt. 356.)  At that hearing, Mr. Rundo explained that

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 6 of 11   Page ID #:3185

1  he wanted some kind of process that would typically accompany an arrest.  However, the

2  Court explained that it was not comfortable proceeding as requested because there were

3  no pending charges or indictment.  Further, the Ninth Circuit foreclosed any kind of

4  relief related to his detention, meaning that this Court could not even conduct a hearing

5  pursuant to the Bail Reform Act.  The Deputy Federal Public Defender also expressly

6  accused the government of engaging in prosecutorial misconduct with regards to its

7  efforts to rearrest Mr. Rundo.  The Deputy Federal Public Defender identified the

8  following as the basis for the allegation of prosecutorial misconduct:

10      1. While seeking an emergency stay, the government did not update the Ninth

11          Circuit that Mr. Rundo had been released, altering the status quo;

12      2. The government did not correct the record immediately after the Ninth

13          Circuit issued an administrative stay based on a status quo that was no

14          longer accurate;

15      3. The government then went to Magistrate Judge Kim *ex parte* and applied

16          for an arrest warrant based on a moot administrative stay of a release order

17          that had already been effectuated;

18      4. The government did not inform the Ninth Circuit that Mr. Rundo, who was

19          being monitored by law enforcement, was not actively attempting to flee

20          the country; and

21      5. Despite its representations to Mr. Rundo and Magistrate Judge Kim, the

22          government submitted a status report to the Ninth Circuit requesting that

23          the Ninth Circuit issue an order providing no mechanism through which

24          Mr. Rundo could challenge his detention.

26      As indicated at the February 23, 2024 hearing, the Court, like Magistrate Judge

27  Kim, is troubled by the chain of events that led to Mr. Rundo's rearrest.  In the Court's

28  experience, it is rare for the Federal Public Defender's Office to explicitly accuse the

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 7 of 11   Page ID #:3186

1  United States Attorney's Office of engaging in prosecutorial misconduct.  Such an

2  accusation is particularly troubling when it relates directly to, as this Court found,

3  selective prosecution.

4

5       But the Court is also troubled by the conduct Magistrate Judge Kim described.  To

6  put it in Magistrate Judge Kim's words, the United States Attorney must be above

7  "think[ing] that the end justifies any means."  The United States Attorney's Office is not

8  just another litigant.  It wields an awesome power—it can deprive people of their liberty

9  on behalf of the United States of America.  In other words, "[a] prosecutor is the

10  representative not of an ordinary party to a controversy, but of a sovereignty whose

11  obligation to govern impartially is as compelling as its obligation to govern at all; and

12  whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that

13  justice shall be done."  *United States v. Maloney*, 755 F.3d 1044, 1046 (9th Cir. 2014)

14  (internal quotation marks and citation omitted).  Based on the transcripts of the hearings

15  before Magistrate Judge Kim, the government failed to meet its solemn obligations.  In

16  general, Magistrate Judge Kim's words speak for themselves, and this Court is not in a

17  position to review the government's actions and determine whether its conduct was

18  merely negligent or an intentional overstep.  But the Court is disappointed that the

19  government's zeal to detain Mr. Rundo and its apparent frustration with the Court's

20  ruling led it to proceed in a manner less than befitting of the United States Attorney's

21  Office.

22

23       Setting aside the accusation of prosecutorial misconduct, the Court is obligated to

24  address Mr. Rundo's request for an arraignment or other process related to his present

25  detention.  At the hearing before this Court, Mr. Rundo orally requested that this Court

26  arraign him and provide some amount of the process ordinarily accompanying an arrest.

27  As the Court explained on the record, the Court is not comfortable proceeding with an

28  arraignment based on an indictment the Court dismissed.  The government also has

1    made clear that it does not believe the Court may provide the Defendant even the

2    opportunity to argue for bail pending appeal, despite the government's previous

3    representations to Mr. Rundo and Magistrate Judge Kim.  And, finally, the Ninth

4    Circuit's order forecloses that process even though the opportunity to request bail

5    accompanies an arrest.  But the Court does find that Mr. Rundo's arrest was unlawful.

6

7         First, the arrest warrant Magistrate Judge Kim issued is invalid because it was

8    based on an indictment that this Court had dismissed.  Rule 9 of the Federal Rules of

9    Criminal Procedure provides that "[t]he court must issue a warrant . . . for each

10   defendant named in indictment."  Magistrate Judge Kim issued a warrant based on the

11   First Superseding Indictment.  But this Court dismissed that indictment and there is no

12   other charging document that could serve as the basis for an arrest warrant.  At this time,

13   there are no charges pending against Defendant.  The government argues that the First

14   Superseding Indictment is somehow still in effect despite this Court's dismissal because

15   of the government's pending appeal.  But the Court is unaware of any legal basis for

16   such an argument.  *See Chavarria*, 2023 WL 5984381, at \*4 ("The United States

17   contends that because it has appealed this Court's dismissal of the superseding

18   indictment, there remains a charge pending against defendants.  The United States offers

19   no statute or case law supporting its contention that an appeal nullifies the effect of this

20   Court's order.  Although the case remains open, there is no pending charge against

21   defendants.").  The Federal Rules of Criminal Procedure—which provide various

22   mechanisms by which the government may arrest a person—are not simply technical

23   checkboxes the government must follow.  Rather, they implement fundamental

24   constitutional rights, such as the Fourth Amendment.  *See Jones v. United States*, 357

25   U.S. 493, 498 (1958); *United States v. Ventresca*, 380 U.S. 102, 105 n.1 (1965); *see also*

26   *United States v. Vargas-Amaya*, 389 F.3d 901, 905 n.3 (9th Cir. 2004) ("[T]he rules

27   implement the Fourth Amendment's requirements and are instructive of the

28   requirements for issuing warrants generally.").  The Rules also ensure that individuals

1    who face the loss of their liberty—the most significant deprivation short of the

2    deprivation of life—receive adequate due process.  *See Smith v. United States*, 360 U.S.

3    1, 9 (1959) ("[T]he substantial safeguards to those charged with serious crimes cannot be

4    eradicated under the guise of technical departures from the rules.").  The government

5    treated the Fourth Amendment, due process, and the Federal Rules of Criminal

6    Procedure as advisory guidelines instead of foundational constitutional protections and

7    fundamental rules of criminal procedure.

8

9         Second, this Court lacks the legal authority to continue to hold Mr. Rundo in

10   custody.  The Court dismissed the First Superseding Indictment because it found that the

11   government's prosecution of Defendants violated the Constitution.  The fact that the

12   government appealed the Court's dismissal order does not change the fact that there are

13   no charges pending against Defendants at this time.  "It would run completely afoul of

14   the Constitution for the Court to simply order that a person sit in jail because at some

15   unknown point in the future an appellate court might reverse the court order that dropped

16   the charges against him."  *United States v. Hudson*, 3 F. Supp. 3d 772, 790 (C.D. Cal.)*,*

17   *rev'd on other grounds and remanded sub nom. United States v. Dunlap*, 593 F. App'x

18   619 (9th Cir. 2014).

19

20        To the extent the government argues that Section 3143(c) of the Bail Reform Act

21   allows the Court to detain Mr. Rundo pending the government's appeal, the Court is

22   unpersuaded.  Another district court rejected that very argument less than sixth months

23   ago after a careful review of the applicable statute and precedent.  *See Chavarria*, 2023

24   WL 5984381, at *5 (explaining when "a court directs its attention to Section 3142

25   [pursuant to Section 3143(c)] and discovers that it does not apply because the defendant

26   no longer is 'charged with an offense,' the court's authority to detain a defendant cannot

27   be found therein"); *see also United State v. Arteaga-Centeno*, 360 F. Supp. 3d 1022

28   (N.D. Cal. 2019) (holding the same); *Hudson*, 3 F. Supp. 3d at 790 (same).  In short,

Case 2:18-cr-00759-CJC   Document 363   Filed 02/26/24   Page 10 of 11   Page ID #:3189

1   Section 3143(c) explains that the Court should treat a defendant in a case in which the

2   United States has taken an appeal in accordance with Section 3142.  But for Section

3   3142 to apply, the defendant must be "charged with an offense."  Here there is no

4   "charged offense."  The Court dismissed the First Superseding Indictment and ordered

5   Mr. Rundo immediately released—there are no longer any charges or detention order

6   against Mr. Rundo.  Accordingly, Section 3143(c) cannot serve as a basis to hold Mr.

7   Rundo pending appeal.

8

9        The Court recognizes that the Ninth Circuit clearly intended Mr. Rundo to *remain*

10  in custody until it could hear from both parties regarding the government's emergency

11  motion to hold Mr. Rundo in custody during the pendency of the government's appeal.

12  This Court cannot and does not question that order.  But that is all the Ninth Circuit

13  did—it did not authorize Mr. Rundo's rearrest *after* he had already been released.  The

14  Ninth Circuit's administrative stay was moot as soon as it was issued because Mr.

15  Rundo had already been released.  To be sure, this is an unusual procedural posture.  But

16  it is clear to the Court that Mr. Rundo should not have been rearrested based on an

17  invalid arrest warrant and that this Court lacks any authority to continue to hold him in

18  detention.  Had the Ninth Circuit been properly and timely informed of the actual status

19  quo—that Mr. Rundo had already been released—it may have either allowed him to

20  remain out of custody (maintaining the status quo) or identified another acceptable basis

21  to detain him.  But the government deprived the Ninth Circuit of the opportunity to

22  address that issue.  Instead, the government came back to the district court, which would

23  normally have lost jurisdiction, to request an arrest warrant.  That act created much of

24  the procedural uncertainty that now confronts the parties and the courts.  Magistrate

25  Judge Kim erroneously, but understandably, issued an arrest warrant leading to Mr.

26  Rundo's present detention.

27

28

1   For all these reasons, this Court **ORDERS** that Mr. Rundo be released.  However,

2   because of the Ninth Circuit's most recent order, the Court cannot release Mr. Rundo.

3   Therefore, the Court **STAYS** this order releasing Mr. Rundo pending further direction

4   from the Ninth Circuit.

5

6

7   DATED:     February 26, 2024

8   _____

9   CORMAC J. CARNEY

10   UNITED STATES DISTRICT JUDGE