E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
SOLOMON D. KIM (Cal. Bar No. 311466)
ANNA P. BOYLAN (Cal. Bar No. 322791)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0631/2450/2170
     Facsimile: (213) 894-0141
     E-mail:    kathrynne.seiden@usdoj.gov
                solomon.kim@usdoj.gov
                anna.boylan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:18-00759(B)-CJC-3 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT TYLER LAUBE |
| v. | Hearing Date: April 4, 2024 |
| TYLER LAUBE, | Hearing Time: 11:00 a.m. |
| Defendant. | Location:    Courtroom of the Hon. Cormac J. Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kathrynne N. Seiden, Solomon D. Kim, and Anna P. Boylan, hereby files its Sentencing Position for Defendant Tyler Laube.

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit. The government respectfully requests the right to supplement this

Sentencing Position with additional information as needed, including to respond to defendant's Sentencing Position.

Dated: March 21, 2024               Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    CAMERON L. SCHROEDER
                                    Assistant United States Attorney
                                    Chief, National Security Division


                                          /s/
                                    _____
                                    SOLOMON D. KIM
                                    KATHRYNNE N. SEIDEN
                                    ANNA P. BOYLAN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In March 2017, while still on probation for an armed robbery, defendant Tyler Laube ("defendant") repeatedly punched a journalist in the face during a political rally.  In October 2023, defendant pled guilty to a superseding information charging him with one count of interference with a federally protected right without bodily injury, a Class A misdemeanor, in violation of 18 U.S.C. § 245(b)(3). (Dkts. 265, 268.)  In January 2024, the United States Probation and Pretrial Services Office ("Probation") issued its Presentence Investigation Report ("PSR") and Recommendation Letter, in which it correctly calculated defendant's total offense level as 8 and his criminal history category as III, for a Guidelines range of six to 12 months.  (Dkt. 297 (PSR) ¶ 119.)  Probation recommended that defendant be sentenced to a low-end Guidelines sentence of six months' imprisonment, a one-year term of supervised release, a mandatory $25 special assessment, and a $2,000 fine.  (Dkt. 296 (Recommendation) at 1-2, 7.)  The government agrees with Probation's recommendation and requests that the Court sentence defendant accordingly.

**II.   BACKGROUND**

Between January and April 2017, while still on probation for an armed robbery involving a semiautomatic firearm, defendant became involved in an organization originally known as the "DIY Division," which was later rebranded as the "Rise Above Movement," or "RAM." (PSR ¶¶ 21, 47; Dkt. 262 (Plea Agreement) ¶ 9.)  RAM represented itself as a combat-ready, militant group of a new nationalist white supremacy and identity movement.  (Id.)  RAM regularly held hand-to-

hand and other combat training for RAM members and associates to prepare to engage in violent confrontations with protestors and other individuals at political rallies. (Id.) Defendant's coconspirators maintained a RAM Twitter account through which they posted videos and photographs of RAM members, including defendant, training in hand-to-hand combat and assaulting people at political events with their faces partially obscured by skeleton or American flag masks. (PSR ¶ 22.)

On March 15, 2017, defendant attended a combat training event in San Clemente, California. (Plea Agreement ¶ 9.) Ten days later, and while still on probation for armed robbery, defendant and several of his coconspirators attended a political rally in Huntington Beach, California, organized by supporters of then-President Donald Trump. (Id. ¶¶ 22, 47.) Defendant and his coconspirators carried signs that read "Defend America" and "Da Goyim Know," a phrase used by white supremacist extremists to refer to their knowledge of a purported Jewish conspiracy to control world affairs. (Id. ¶ 24.)

At the event, a riot ensued during which defendant and his associates assaulted counter-protestors and other persons. (Plea Agreement ¶ 9.) Specifically, several rally attendees confronted, pushed, and then punched F.T., a journalist reporting on the rally, and his colleague. (PSR ¶ 24.) As F.T. stumbled backward, defendant approached F.T., grabbed his shoulder, and punched him several times in the head and body[1] before a counter-protestor released pepper spray, causing the crowd to momentarily disperse. (Id.; Plea Agreement ¶ 9.)

---

[1] Fortunately, F.T. was not injured. (Plea Agreement ¶ 9.)

2

Undeterred, defendant and his coconspirators then pursued a group of approximately three to five counter-protestors as they walked north along the beach, away from the crowd and away from defendant and his coconspirators. (Dkt. 1 (Compl.) ¶ 23.) Defendant's coconspirators proceeded to kick a counter-protestor repeatedly in the back, punch another in the face, and punch a third in the back of the head. (Id. ¶¶ 24-26.) Eventually, coconspirator Robert Rundo ("Rundo") held a counter-protestor on the ground, punching him repeatedly in the head while other RAM members looked on, cheered, and prevented others from intervening. (Id. ¶ 26.)

During and after those confrontations, the majority of the rally attendees continued peacefully marching south down the beach, while defendant and his coconspirators remained in the same area with a group of other rally attendees. (Id. ¶ 28.) Approximately twenty minutes later, defendant and his coconspirators led a group of approximately 15 to 20 men in pursuing counter-protestors for over a minute as they continued north along the beach, towards the parking lot. (Id. ¶ 28; PSR ¶ 25.)

In November 2018, defendant was charged with conspiring to riot, in violation of 18 U.S.C. § 371. (Dkt. 47.) Defendant initially pled guilty, but later withdrew his plea after the Court dismissed the indictment. (Dkts. 147, 151.) After the Ninth Circuit reversed dismissal of the indictment, defendant was charged in a superseding indictment with conspiring to riot. (Dkts. 161, 209.) On October 23, 2023, defendant pled guilty to a second superseding information charging him with interference with a federally protected right without bodily injury, a misdemeanor, in violation of 18 U.S.C. § 245(b)(3). (Dkts. 265, 268.) In doing so, defendant admitted that

in repeatedly punching F.T., he intentionally and willfully interfered with and intimidated F.T.  (Plea Agreement ¶ 9.)

**III. PROBATION'S GUIDELINES CALCULATIONS AND RECOMMENDATION**

Based on the foregoing, Probation determined that defendant's base offense level is 10 under U.S.S.G. § 2H1.1(a)(3) and that defendant is entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), for a total offense level of 8.  (PSR ¶¶ 32-41.)  Probation further determined that defendant has 6 criminal history points, for a criminal history category of III.  (Id. ¶¶ 51-53.)  Based on a total offense level of 8 and a criminal history category of III, Probation calculated defendant's Guidelines range as six to 12 months' imprisonment and a one-year term of supervised release.  (Id. ¶¶ 199, 122.)  Probation correctly determined that defendant's term of imprisonment and term of supervised release are statutorily capped at one year.  (Id. ¶¶ 118, 121.)  Probation identified no factors that would warrant a departure or variance from the applicable Guidelines range.  (Id. ¶¶ 132-33.)

**IV. SIX MONTHS' IMPRISONMENT AND A ONE-YEAR TERM OF SUPERVISED RELEASE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACCOUNT FOR THE § 3553(A) FACTORS**

The government respectfully requests that the Court adopt Probation's factual findings and Guidelines calculations and sentence defendant to a low-end Guidelines sentence of six months' imprisonment, a one-year term of supervised release, a $2,000 fine, and a $25 special assessment.

**A. Defendant's History and Characteristics and the Need For Deterrence and to Promote Respect For the Law**

Defendant's history and characteristics and the need for deterrence and to promote respect for the law all warrant a within-

4

Guidelines sentence. 18 U.S.C. §§ 3553(a)(1), (2)(A)-(B). Defendant's illegal conduct in this case was not a one-off incident; rather, defendant has amassed a significant number of criminal convictions, despite being only 27 years old. Specifically, after sustaining numerous juvenile convictions, at 19 years old defendant was convicted of second-degree robbery because he and a friend used a semi-automatic handgun to rob a 7-11 convenience store and a gas station. (PSR ¶ 47.) That same year, he was also convicted of possession of a switchblade and resisting arrest, all based on separate incidents. (Id. ¶¶ 48-49.) Each time, defendant was sentenced to a term of probation, which he repeatedly violated. (Id. ¶¶ 47-49.) Some of those violations involved additional arrests beyond those reflected in his convictions, including arrests for fighting in public and driving under the influence in May and June of 2016. (Id. ¶¶ 56-57.) Defendant was still on probation when he committed the instant crime. (Id.) And despite his storied criminal history, up until he was charged in this case, defendant had spent only 21 days in jail. (Id. ¶ 47.)

Moreover, even defendant's federal indictment in this case, or the brief period he spent in custody as a result, was not sufficient to deter him from quickly reverting to his illegal conduct. Just months after withdrawing his guilty plea in this case, defendant was arrested for driving under the influence, for which he was convicted. (Id. ¶ 50.) Defendant was once again sentenced to a term of probation. (Id.)

Given defendant's pattern of recidivism, his repeated violent conduct, and his failure to appreciate the leniency he has been shown thus far, a within-Guidelines sentence is necessary to deter him and

other similarly situated defendants from engaging in future criminal conduct, especially violence, and to promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A)-(B).

**B.     The Nature and Circumstances of the Crime**

A low-end Guidelines sentence is further supported by defendant's conduct in this case. Admittedly, defendant's involvement with RAM was brief and the conduct to which he pled guilty was primarily confined to his preparation for and behavior at a single protest. But those facts have already been taken into consideration, given that defendant was permitted to plead guilty to a misdemeanor offense, rather than the felony conspiracy for which he was charged. Defendant's conduct -- intentionally committing an act of violence at a political rally -- was something he trained for and willfully engaged in. (PSR ¶ 23; Plea Agreement ¶ 9.) And defendant's conduct was less excusable given that he committed it against a journalist documenting the free expression of ideas. Particularly given that defendant's violence here echoed numerous other instances of violence in his past, the government submits that a conservative, low-end Guidelines sentence is warranted to capture the nature and circumstances of defendant's crime. See 18 U.S.C. § 3553(a)(1).

**C.     The Need to Avoid Unwarranted Sentencing Disparities**

Finally, a within-Guidelines sentence is further appropriate because it will accomplish the goal avoiding unwarranted sentencing disparities among similarly situated defendants. Nationwide, defendants with similar criminal histories to defendant's who willfully interfere with or intimidate others during a civil disorder can expect to serve between six to twelve months' imprisonment. This

6

is true even for defendants who do not take the extra step of actually engaging in violence. See 18 U.S.C. § 245(b) (prohibiting the use of force or threats). Although defendant went further than other defendants facing the same sentence by actually engaging in violence, the government is still recommending a low-end Guidelines sentence. By sentencing defendant within the Guidelines, the Court will minimize sentencing disparities among similarly situated defendants. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

**V.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to six months' imprisonment, a one-

year term of supervised release, a $2,000 fine, and a mandatory $25 special assessment.

```
Dated: March 21, 2024            Respectfully submitted

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 CAMERON L. SCHROEDER
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                       /s/
                                 KATHRYNNE N. SEIDEN
                                 SOLOMON D. KIM
                                 ANNA P. BOYLAN
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA
```