CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JULIA DEIXLER (Bar No. 301954)
(E-Mail: julia_deixler@fd.org)
ERIN M. MURPHY (Bar No. 285087)
(E-Mail: erin_murphy@fd.org.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ROBERT RUNDO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT RUNDO,<br><br>    Defendant. | Case No. CR 18-759-CJC<br><br>**BRIEF IN SUPPORT OF BAIL PENDING APPEAL**<br><br>Hearing Date: April 30, 2024<br>Proposed Hearing Time: 10:00 a.m.<br><br>Courtroom of the Hon. Cormac J. Carney |

Robert Rundo, by and through his counsel of record, Deputy Federal Public Defenders Erin M. Murphy, Julia Deixler and Caroline S. Platt, hereby files this motion for bail pending appeal pursuant to 18 U.S.C. §§3142 and 3143(c).

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED: April 12, 2024        By  */s/ Julia Deixler*
                                      ERIN M. MURPHY
                                      JULIA DEIXLER
                                      CAROLINE S. PLATT
                                      Deputy Federal Public Defenders
                                      Attorneys for ROBERT RUNDO

# I. INTRODUCTION

The Court is familiar with this case, and with Mr. Rundo. The indictment has been dismissed, and yet Mr. Rundo remains detained at the Metropolitan Detention Center. The court of appeals has now stayed this Court's dismissal order.[1] The court of appeals also sua sponte expedited briefing before that court, and has set argument on the merits of the appeal for June 18, 2024.[2]

During the pendency of the United States's appeal of this Court's dismissal order, Mr. Rundo requests that this Court issue bond pending appeal under the Bail Reform Act, in accordance with the recent Order of the Ninth Circuit stating that Mr. Rundo "shall remain in custody pending a bail determination hearing under the Bail Reform Act." *See* Order, Ninth Circuit Case No. 24-932 (March 13, 2024, Doc. 33).

# II. LEGAL STANDARD

Because of the "importance and fundamental nature" of the right to liberty, "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 750, 755 (1987). "Federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail" and that "[o]nly in rare cases should release be denied." *United States v. Townsend*, 897 F.2d 989, 993-94 (9th Cir. 1990) (citations omitted). In a case such as this, in which an appeal has been taken by the United States, section 3143(c) dictates that the Court shall treat Mr. Rundo in accordance with 18 U.S.C. § 3142 of the Bail Reform Act ("BRA"). The presumption of release espoused by the Supreme Court in *Salerno* is encapsulated in that section, which states that the Court "shall order" pretrial release except in certain narrow circumstances. 18 U.S.C. § 3142(b). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), as

---

[1] *See* Order, Ninth Circuit Case No. 24-932 (March 13, 2024, Doc. 33).
[2] *See* Order, Ninth Circuit Case No. 24-932 (March 25, 2024, Doc. 36).

reprinted in 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

Based on the (dismissed) charges in this case, no presumption against Mr. Rundo applies and the government's typical burden remains in place. 18 U.S.C. § 3142(e). The government must therefore overcome the presumption of release by showing with clear and convincing evidence that <u>no conditions</u> can reasonably assure the safety of the community, *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992), or by a preponderance of the evidence that <u>no conditions</u> can reasonably assure Mr. Rundo's appearance, *United States v. Motamedi*, 767 F.2d 1403, 1405-07 (9th Cir. 1985).

### III. MR. RUNDO SHOULD BE RELEASED WITH CONDITIONS

There are several conditions that the Court can impose to reasonably mitigate any alleged risk of nonappearance or danger to the community posed by Mr. Rundo's release. In accordance with the Ninth Circuit's order that the Court consider Mr. Rundo's release under the Bail Reform Act, the defense proposes that the Court impose the following conditions of release:

1. Unsecured appearance bond with affidavits of surety of third parties.[3]
2. Submit to United States Probation and Pretrial Services supervision as directed by Supervising Agency.
3. Surrender all passports and travel documents to Supervising Agency immediately, sign a Declaration re Passport and Other Travel Documents (*Form CR-37*), and do not apply for a passport or other travel document during the pendency of this case.
4. Travel is restricted to the Central District of California unless prior permission is granted by Supervising Agency to travel to a specific other

---

[3] The proffered sureties will be provided to Pretrial Services to be included in the updated Pretrial Services report in advance of the hearing.

2

      location. Court permission is required for international travel as well as for any other domestic travel.

5. Reside as approved by Supervising Agency and do not relocate without prior permission from Supervising Agency.[4]

6. Maintain or actively seek employment unless excused by Supervising Agency for schooling, training, or other reasons approved by Supervising Agency. Verification to be provided to Supervising Agency.

7. Do not possess any firearms, ammunition, destructive devices, or other dangerous weapons. In order to determine compliance, you agree to submit to a search of your person and property by Supervising Agency.

8. Do not use or possess any identification, mail matter, access device, or any identification-related material other than in your own legal or true name without prior permission from Supervising Agency. In order to determine compliance, you agree to submit to a search of your person and property by Supervising Agency.

9. Participate in a Location Monitoring program and abide by all of the requirements of the program and any indicated restrictions, under the direction of the Supervising Agency. Location Monitoring technology at the discretion of the Supervising Agency.

This combination of stringent conditions will reasonably assure both safety to the community and Mr. Rundo's further appearance in this case.

**A. The Government Cannot Show that No Condition or Combination of Conditions Will Reasonably Assure Mr. Rundo's Appearance.**

Mr. Rundo's history and characteristics, the nature and circumstances of the case, and the imposition of the stringent terms of pretrial release proposed above will

---

[4] Mr. Rundo has completed a screening and has been conditionally approved for admittance to the Salvation Army Anaheim facility, which offers a 6-12 month residential program with residential restrictions. *See* Ex. B.

reasonably assure Mr. Rundo's appearance at future proceedings in this case. Mr. Rundo is a United States citizen who was born and raised in New York and moved to Southern California in his mid-twenties. In the years proceeding his initial arrest in this case, he completed a two-year certification program in Heating Ventilation and Air Condition (HVAC) and maintained stable employment as an HVAC technician.[5] Throughout that time, he also maintained stable residence in Orange County, California. Each of Mr. Rundo's prior addresses in Southern California were verified by Pretrial Services and DMV records. *See* 2018-10-22 PSA Report at 2. After the initial indictment in this case was dismissed in June 2019, Mr. Rundo left Southern California and eventually sought to build a new life for himself in Europe. At the time that he left the United States, he was not subject to any warrant, probation, parole, or pretrial supervision. There was no court order preventing him from travelling outside the country. In short, Mr. Rundo was free to leave. The government ignores this critical fact in its claim that Mr. Rundo's prior foreign travel makes him an undeterrable flight risk.

The nature of the charges against Mr. Rundo, the present procedural posture, and Mr. Rundo's conduct since this Court's dismissal of the First Superseding Indictment on February 21, 2024 also demonstrate that conditions can be set to reasonably assure Mr. Rundo's future appearance. In determining whether to release Mr. Rundo, the Court must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Mr. Rundo's dismissed charges are none of these. Indeed, in the scheme of federal offenses, the Anti-Riot Act charge dismissed against Mr. Rundo is relatively unserious, carrying a base offense level of 14. U.S.S.G. § 2A2.2(a); *see also* Dkt. Nos. 59 at ¶ 11 (2018 Laube plea agreement); 222 at ¶ 12

---

[5] If released, Mr. Rundo intends to again seek employment as an HVAC technician.

(2023 Boman plea agreement). Indeed, the government requested just a six-month custodial sentence for one of Mr. Rundo's co-defendants (who ultimately pleaded to a related misdemeanor offense for assaulting a journalist at a political rally), and the Court sentenced him to time-served (35 days) and 12 months of supervised release. *See* Dkt. Nos. 377, 385. Despite the fact that the Anti-Riot Act charges have been dismissed against Mr. Rundo twice, by the time of his bail hearing, he will have already served nearly 16 months (482 days) in federal custody and over 4 months in Romania awaiting extradition. If the government is unsuccessful in its appeal of this Court's dismissal order, Mr. Rundo will of course face no more time in custody. The fact that Mr. Rundo faces little, if any, additional time in custody for the dismissed charge also suggests that he is not likely to flee. This is demonstrated by the fact that, when he learned that an arrest warrant was issued the day after he had been released from custody, Mr. Rundo did not flee but instead attempted to self-surrender back into federal custody.[6]

Perhaps most importantly, the Court can impose stringent conditions of pretrial release that will allow it to closely monitor Mr. Rundo pending the government's appeal. These include: (1) supervision of Pretrial Services; (2) location monitoring; (3) residential restrictions; (4) travel restrictions; (5) search conditions; and (6) Pretrial verification of residence and employment, among others. These proposed conditions, none of which were in place when Mr. Rundo previously travelled outside the country

---

[6] In a recent filing with the Ninth Circuit, the government appears to assert, without any basis, that Mr. Rundo *did not* attempt to self-surrender, and was instead attempting to flee to the Mexican border. *See United States v. Rundo*, C.A. No. 24-1054 (9th Cir. Mar. 30, 2024). Dkt. No. 5.1 at 2 ("The Release Order … stated without support that defendant was 'in the process of self-surrendering' when he was re-arrested; appeared to endorse defense counsel's *ipse dixit* assertion that when defendant traveled toward the southern border immediately upon his release, he was 'simply staying in the area where he had lived prior to his prosecution'"). The government offers no evidence to support its claim that Mr. Rundo was attempting to flee, and its unsubstantiated assertions plainly fail to meet its burden to demonstrate risk of nonappearance under 18 U.S.C. § 3142. Defense counsel submits a declaration with this motion detailing Mr. Rundo's efforts, through counsel, to arrange for his self-surrender before he was taken back into custody on February 22. 2024.

(because he was under no legal order or obligation to remain in the country), will allow Pretrial Services to monitor Mr. Rundo's whereabouts in real time and to significantly restrict his travel. Mr. Rundo's proposed residence at the Salvation Army imposes even greater restrictions than other housing options, as residents are subject to "restriction status" in the first 30 days of residence, are not permitted to leave the County during the first six months of residence, and may only leave the premises with pre-approved day passes for court, medical, or work-related activities. *See* Ex. B. Pretrial Services will be able to monitor and verify Mr. Rundo's activities even further through regular check-ins, home visits, and work visits. They will also be authorized to search Mr. Rundo's person and property for contraband such as weapons or false identification. Collectively, these conditions will significantly minimize any risk that Mr. Rundo would flee or otherwise violate the terms of his court supervision.

But the Court need not take counsel's word on the strength of these Pretrial Services conditions. A survey conducted by the Administrative Office of the United States Courts itself confirmed the extraordinarily low rates of bond violations where supervision conditions are imposed. *See* Exhibit A at 2.[7] The survey found that in the 12-month period ending in September 2023, 2,003 people were on release status in our district. *See* Ex. A In that same period, there were only 13 violations for failures to appear. That means that less than 0.65% of people released last year failed to appear for court.[8] In other words, release conditions work in deterring flight.

The universally low rates of non-appearance significantly undermine the government's assertion that <u>no conditions</u> can be set to reasonably assure Mr. Rundo's appearance at a future court date. "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's

---

[7] Available at https://www.uscourts.gov/statistics/table/h-15/judicial-business/2023/09/30.

[8] For all violations recorded in this District, 92% of them (273 of 295) were for "technical violations." *See id*.

6

appearance cannot be read to require guarantees against flight." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). As in every case, there is *some* risk that Mr. Rundo would not appear, and this Court can never truly *guarantee* appearance.[9] But no good evidence suggests that the stringent conditions proposed here by the defense—including pretrial supervision, location monitoring with an ankle monitor, residential and travel restrictions, search conditions, and verified employment and residence—will not "*reasonably* assure" Mr. Rundo's appearance in this case. 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

**B.     The Government Cannot Show by Clear and Convincing Evidence that No Condition or Combination of Conditions Will Reasonably Assure Safety to the Community.**

The government also cannot show by clear and convincing evidence that no condition or combination of conditions will reasonably assure safety to any other person and the community. The government has previously argued that Mr. Rundo is a danger to society because of his now-dismissed criminal charges and a prior criminal conviction for assault. *See United States v. Rundo et al.*, C.A. No. 24-932, Dkt. No. 3.1 at 3. But the charges in this case are based on two fistfights at political rallies nearly 7 years ago, and Mr. Rundo's prior conviction is nearly 15 years old, when he was just 19 years old. There is no evidence that Mr. Rundo has engaged in any other violence since this case was initiated. This Court is prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . .

---

[9] Although the standard for pretrial release applies here, Mr. Rundo is in a different procedural posture in that the indictment against him has already been dismissed. If the government is ultimately unsuccessful in its appeal of the dismissal order, there will of course be no future court dates at which Mr. Rundo's appearance is even required.

7

release conditions." *Id.* Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

Here, the risk of danger to the community is minimal, given the nature of the allegations against Mr. Rundo and the length of time that has passed since his only prior criminal conviction. And the bevy of conditions that this Court can impose to monitor Mr. Rundo while on bond significantly mitigate any risk that Mr. Rundo would engage in any violence. The Court should release Mr. Rundo with these proposed conditions.

## IV. CONCLUSION

For the foregoing reasons, Mr. Rundo should be released under the supervision of Pretrial Services, with conditions, for the duration of the government's appeal.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 12, 2024        By  */s/ Julia Deixler*
ERIN M. MURPHY
JULIA DEIXLER
CAROLINE S. PLATT
Deputy Federal Public Defenders
Attorneys for ROBERT RUNDO

# **DECLARATION OF JULIA DEIXLER**

I, Julia Deixler, declare:

1. I am an attorney at the Office of the Federal Public Defender in the Central District of California. Along with my co-counsel DFPDs Erin Murphy and Caroline Platt, I am appointed to represent defendant Robert Rundo in *United States v. Robert Rundo, et al.*, 18-CR-759-CJC.

2. Mr. Rundo was released from custody on February 21, 2024 after the district court dismissed the charges against him. *See* Order re: Mots. to Dismiss, ECF No. 333; *see also* Gov't's Emergency Mot. to Authorize Def. Rundo's Arrest and Return To Custody, Ninth Circuit Case No. 24-932, Docket No. 6.

3. The next day, on the afternoon of February 22, 2024, the Honorable Steve Kim, United States Magistrate Judge, issued an arrest warrant for Mr. Rundo.

4. After learning of the arrest warrant and conferring with Mr. Rundo, Ms. Murphy and I contacted government counsel by telephone to advise them that Mr. Rundo wished to self-surrender to federal custody. We discussed the logistical details of a self-surrender over the course of two or three phone calls, as government counsel stated that they needed to confer with case agents regarding some of the details.

5. In particular, during one of our phone calls with government counsel, I stated that I believed Mr. Rundo was, at the time, in the Southern District of California. I also asked whether the parties could arrange for Mr. Rundo to surrender to the U.S. Marshals, BOP, or some other law enforcement custody within the Central District so that he could have an immediate initial appearance in this district, rather than be required to first appear in the Southern District before being transported here.

6. Government counsel stated that if Mr. Rundo self-surrendered in the Southern District, the case agents would themselves transport him to the Central District so that he could have his initial appearance and bail hearing here the following

day.[10] I asked where Mr. Rundo should surrender. Counsel said they would speak with the case agents and call us back.

7. Government counsel promptly called us back and stated that federal agents were monitoring Mr. Rundo's location and were in the parking lot just outside of a store that Mr. Rundo had entered. Government counsel suggested that I call Mr. Rundo to tell him to simply "step outside of the store that he's currently in" and "surrender" to the agents' custody.

8. Before I could do so, I received another call from government counsel informing me that Mr. Rundo exited the store and was taken into custody without incident. They told me that Mr. Rundo would spend the night at the FBI's West Covina office and would be transported to MDC-LA the following morning and placed on the Los Angeles initial appearance calendar. According to my phone records, I received that phone call at 5:15 p.m.

9. Approximately two minutes later, at 5:17 p.m., the government filed a "Status Report" in the Ninth Circuit arguing that Mr. Rundo was not entitled to an initial appearance or bail hearing and that he must remain in custody pending resolution of the government's motion to stay Mr. Rundo's release. *See United States v. Rundo, et al.*, Case No. 24-932, Docket No. 7-1 ("Defendant should simply be returned to the Central District of California and remain in custody while the government's motion to stay his release and continue his detention pending appeal is adjudicated.").

10. At 5:41 p.m. that evening, at my request, government counsel emailed me and Ms. Murphy the address where Mr. Rundo was arrested, which was in Ramona, California. According to Google Maps, Ramona is approximately 50 miles north of the San Ysidro Border Crossing at the U.S.-Mexico border, and approximately 35-40 miles north of downtown San Diego.

---

[10] Government counsel confirmed this during a hearing before this Court, stating, "[W]e took an out-of-an-abundance caution approach to ensure that Mr. Rundo would have his time in court. We explicitly told Ms. Deixler over the phone yesterday night that is what the Government intended to do." Tr. (2024-02-23) at 38:09-12.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on April 12, 2024, at Los Angeles, California.

                                           */s/ Julia Deixler*
                                           JULIA DEIXLER
                                           Deputy Federal Public Defender

3